ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS,** 3: 48
**DALLAS DIVISION**

DEPUTY CLERK

54781

| | |
|---|---|
| RICHARD LUCARELLI, <br> On behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CARRIER IQ, INC.; HTC CORPORATION; and HTC AMERICA, INC., <br><br> Defendants. | ) No. <br> ) <br> ) CLASS ACTION COMPLAINT <br> ) <br> ) <br> ) <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) **3-11CV3483-M** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

    Plaintiff Richard Lucarelli ("Plaintiff"), on behalf of himself and all others similarly

situated, by and through his undersigned counsel, alleges the following on information and

belief:

## I.      INTRODUCTION

    1.      This class action lawsuit arises out of the unauthorized and unlawful interception

of private electronic communications from cellular devices in violation of the Federal Wiretap

Act as amended by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, *et. seq.* and

the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et. seq.* by Defendants Carrier IQ, Inc.

("Carrier IQ"); HTC Corporation; and HTC America, Inc. ("HTC Defendants") (collectively

"Defendants").

2.      Carrier IQ develops and supplies performance monitoring software that is preinstalled and embedded on over 141 million cellular devices or handsets manufactured by the HTC Defendants and others.  Publicly, Carrier IQ states that its software is designed as a tool for cellular carriers and device manufacturers to "gather and manage information from end users... [that] provide[s] detailed insight into service delivery and user experience...."[1] Publicly, Carrier IQ states that the Carrier IQ Software does not log keystrokes and does not intercept, store, and transmit user's private electronic communications to third parties, including cellular carriers.

3.      However, Carrier IQ Software does much more than "provide detailed insight into service delivery." Through the software, Carrier IQ surreptitiously logs keystrokes, thereby intercepting, storing and transmitting detailed user information to third parties.  This private information includes but is not limited to the content of the text messages sent and received by the user of the device.

4.      The unsuspecting consumers, including the Plaintiff and the Class, are not notified that the Carrier IQ Software has been embedded and is actively running on their cellular devices manufactured by the HTC Defendants.  These consumers have not given consent for their private communications to be intercepted, stored, and transmitted to third parties. Defendants' unauthorized and illegal conduct violates federal law.

## II.     PARTIES

5.      Plaintiff Richard Lucarelli is an individual residing in Dallas, Texas.   Mr. Lucarelli purchased and operated an HTC EVO 4G cellular device in the Northern District of Texas.  When he purchased the cellular device, Mr. Lucarelli was unaware that it was equipped with Carrier IQ Software and that it recorded private information pertaining to his use and

---

[1] http://carrieriq.com as accessed on 12/12/11.

operation of the cellular device on the Sprint mobile network.  Mr. Lucarelli regularly sends and receives SMS (text) messages on his HTC EVO 4G cellular device.  Mr. Lucarelli did not authorize the HTC Defendants or Carrier IQ to embed or install the Carrier IQ Software on his cellular device; nor did he authorize the Defendants to utilize the Carrier IQ Software on the cellular device to intercept, store and transmit his private information to third parties.  By virtue of the unauthorized, unknown, and automatic functions of the Carrier IQ Software, which cannot be removed from the cellular device, Mr. Lucarelli's private information and personal communications have been illegally intercepted and transmitted by Defendants.

6.     Defendant Carrier IQ, Inc. is a Delaware corporation, with its principal place of business and headquarters located at 1200 Villa Street, Suite 200, Mountain View, California 94041.  Carrier IQ has, at all material times, conducted business in the Northern District of Texas.

7.     Defendant HTC Corporation is a Taiwan corporation and cellular device manufacturer located at 23 Xinghua Road, Taoyuan 330, Taiwan, Republic of China.  HTC Corporation has offices within the United States and sells its products throughout the United States, including throughout Texas. It also is the parent to Defendant HTC America, Inc.

8.     Defendant HTC America, Inc. is a Washington corporation with its principal place of business located at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. HTC America, Inc. sells its products throughout the United States, including throughout Texas.

### III.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as Plaintiff alleges violations of federal law, specifically the Federal Wiretap Act as amended by

3

the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq*. and the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et. seq.*

10.     This Court has personal jurisdiction over the Defendants in this action by way of the fact that Defendants are licensed to do business in the state of Texas or otherwise conduct business in the state of Texas.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as unlawful practices are alleged to have been committed in this federal judicial district and Defendants reside or regularly conduct business in this district.  Plaintiff purchased and used his cellular device in this district and Defendants intercepted his private information in this district.

12.     Assignment to the Dallas division of this Court is appropriate because Defendants all conduct business in this division and Plaintiff resides in this division.  Also, it is believed and therefore alleged that many members of the proposed Class reside or do business in the Dallas division of the Northern District of Texas as well.

## IV.     FACTUAL ALLEGATIONS

**A.     Carrier IQ, the Carrier IQ Software and the HTC Defendants**

13.     Carrier IQ developed and supplies performance monitoring software that is preinstalled and embedded on over 141 million cellular devices or handsets manufactured by the HTC Defendants and others.  The HTC Defendants have admitted that their phones include the Carrier IQ Software.  Carrier IQ Software allows Carrier IQ and others to obtain information as to the manner in which owners of cellular devices utilize these devices.

14.     Carrier IQ, on its website, describes its "mission" as "provid[ing] mobile carriers and device OEMs with unprecedented insight into service performance and usability and so enable them to deliver higher quality products and service to their customers."[2]

15.     Carrier IQ further touts itself as "unique in the wireless industry because we are the only company embedding diagnostic software in millions of subscribers' phones...This is Actionable Intelligence...." *Id.*

16.     Under the heading, "What we do," on its website, Carrier IQ states:

> Carrier IQ is the market leader in Mobile Service Intelligence solutions that have revolutionized the way mobile operators and device vendors *gather and manage information from end users*. With Carrier IQ's *unique ability to provide detailed insight* into service delivery and user experience, you can achieve your strategic goals more efficiently and effectively, *based on data drawn directly from your subscribers' devices –* the place where your customer actually experiences the service.
>
> The Carrier IQ solution goes beyond traditional point offerings that address a single business problem, to provide a comprehensive Mobile Service Intelligence platform which builds upon underlying customer experience data to enable all areas of your business to operate more effectively: from planning to operations, from marketing to customer care.
>
> Recognizing the phone as an integral part of a mobile service delivery, and using the device to measure key parameters of service quality and usage, the Carrier IQ *solution gives you the unique ability to analyze in detail usage scenarios and fault conditions by type, location, application and network performance while providing you with a detailed insight into the mobile experience as delivered at the handset rather than simply the state of the network components carrying it. Id.* (emphasis added.)

17.     Carrier IQ Software is preinstalled on cellular devices, including cellular devices manufactured by the HTC Defendants.

18.     Carrier IQ Software is a "rootkit" which means that it is hidden from the user in the background of the cellular device but accesses the user's data. The software functions at the

---

[2] http://carrieriq.com/company/index.htm as accessed on 12/12/11.

time the cellular device is enabled but without the user's knowledge or authorization. Moreover, the user does not have any opportunity at any time to review privacy disclosures from the Defendants, nor to reject the Carrier IQ Software and its illegal interception, storage and transmission of the user's private electronic communications.

19. Carrier IQ claims that when its "products are deployed, data gathering is done in a way where the end user is informed or involved."[3] However, in fact, end users *are not* "informed or involved" as to the existence of the Carrier IQ Software preinstalled or embedded in their cellular devices. Even if a user discovers the Carrier IQ Software on the device, there is no way for the user to remove or turn off the software from the cellular device. Similarly, all users including Plaintiff were not informed, did not know and indeed had no reasonable way of knowing that Carrier IQ Software was intercepting, storing and transmitting their electronic communications including their keystrokes on their cellular device.

20. The Carrier IQ Software, once embedded on the cellular device, engages in the unauthorized interception, storage and transmission of the following private information: the content of text messages sent and received by the user; the content of emails sent and received by the user; data transmitted and received through websites; keystrokes made on the cellular device; the telephone numbers dialed and received by the user; and the location of the user. This unauthorized interception, storage and transmission violates federal law.

21. The Carrier IQ Software, which is always operating and cannot be shut off, decreases the battery life of the cellular device. The software decreases the overall performance of the cellular device as it uses system resources.

---

[3] http://carrieriq.com/company/privacy.htm as accessed on 12/12/11.

22. In a recent interview, Carrier IQ's Vice President of Marketing, Andrew Coward, attempted to pin some of the blame for the illegal interception and transmission of private information on the device manufacturers, including the HTC Defendants. He claimed that the insecure logs or the data that is collected is copied on the cellular device. This information may be available to other third party applications on the device and presents a serious security issue. Mr. Coward stated that the manufacturers including the HTC Defendants are responsible for creating this copy of the logfile that is kept on the device. The HTC Defendants recently admitted that they were "investigating the option to allow consumers to opt-out of data collection by the Carrier IQ application." The implication is clear: the HTC Defendants, aside from manufacturing the cellular devices and pre-installing or embedding the Carrier IQ Software, are also illegally intercepting, storing and transmitting the private information and electronic communications of Plaintiff and the Class in violation of federal law.

## B. The Illegal Activity is Exposed

23. The Defendants' illegal activity has recently been exposed to the public. In November 2011, Trevor Eckhart, a software developer and technology blogger, published on the web his discovery of the Carrier IQ Software on his HTC cellular device.

24. Mr. Eckhart revealed on his blog that the Carrier IQ Software on his cellular device was virtually impossible to deactivate, and that it provided no disclosure or notice to the user that it was embedded and operating and was capable of logging virtually everything he did on his device, including keystrokes, text messages, numbers dialed, and secure (HTTPS) website log-ins and search terms.[4]

---

[4] http://androidsecuritytest.com/features/logs-and-services/loggers/carrieriq/ as accessed on 12/12/11.

25.    After Mr. Eckhart's revelation, Carrier IQ sent Mr. Eckhart a cease and desist letter demanding in part that he retract his description of the Carrier IQ Software as a rootkit and threatened him with a copyright infringement action for posting materials he found on Carrier IQ's own website. Shortly thereafter, the Electronic Frontier Foundation, in defense of Mr. Eckhart, demanded, through its own correspondence, that Carrier IQ withdraw its letter or face legal action.

26.    Subsequently, on November 23, 2011, Carrier IQ issued a press release apologizing to Mr. Eckhart and withdrew the cease and desist letter.[5] The press release also included denials from Carrier IQ as follows:

-Does not record your keystrokes.

-Does not provide tracking tools.

-Does not inspect or report on the content of your communications, such as the content of emails and SMSs.

-Does not provide real-time data reporting to any customer.

-Finally, we do not sell Carrier IQ data to third parties.

27.    However, Carrier IQ did not deny *intercepting, storing or transmitting* the content of its user's communications.

28.    Rather than accept Carrier IQ's denials, Mr. Eckhart performed further analysis on his cellular device and released a 17 minute video demonstrating that Carrier IQ recorded text messages, recorded dialed numbers, monitored keystrokes and tracked website use.[6]

---

[5] http://www.carrieriq.com/company/PR.EckhartStatement.pdf
[6] http://androidsecuritytest.com/features/logs-and-services/loggers/carrieriq/carrieriq-part2/
 as accessed on 12/12/11.

29.     On November 30, 2011, The United States Senate Judiciary Committee, which

has launched its own investigation into Carrier IQ's illegal activity, through the Chairman of the

Subcommittee on Privacy Technology and the Law, Senator Al Franken, sent a letter to Larry

Lenhart, Carrier IQ's President and CEO, which stated in part:

> I am very concerned by recent reports that your company's software – pre-installed on smartphones used by millions of Americans – is logging and may be transmitting extraordinarily sensitive information from consumers' phones, including:
>
> - when they turn their phones on;
> - when they turn their phones off;
> - the phone numbers they dial;
> - the contents of text messages they receive;
> - the URLs of the websites they visit;
> - the contents of their online search queries – even when those searches are encrypted; and
> - the location of the customer using the smartphone – even when the customer has *expressly denied* permission for an app that is currently running to access his or her location.
>
> It appears that this software runs automatically every time you turn your phone on.  It also appears that an average user would have no way to know that this software is running – and that when that user finds out, he or she will have no reasonable means to remove or stop it.
>
> These revelations are especially concerning in light of Carrier IQ's public assertions that it is "not recording keystrokes or providing tracking tools" (November 16), "[d]oes not record your keystrokes," and "[d]oes not inspect or report on the content of your communications, such as the content of emails and SMSs" (November 23).
>
> ...it appears that Carrier IQ's software captures a broad swath of extremely sensitive information from users that would appear to have nothing to do with diagnostics – including who they are calling, the *contents* of the texts they are receiving, the *contents* of their searches, and the websites they visit.
>
> These actions may violate federal privacy laws, including the Electronic Communications Privacy Act and the Computer Fraud and Abuse Act.  This is potentially a very serious matter.

In the letter, Senator Franken requested that Carrier IQ provides answers to several questions regarding the information it collects by December 14, 2011.

30.     On December 8, 2011 Google's Executive Chairman Eric Schmidt, speaking at an internet freedom conference in The Hague in the Netherlands, confirmed Mr. Eckhart's revelation, stating, Carrier IQ "actually does keep your keystrokes...we certainly don't work with them and don't support it." Referencing Google's Android operating system as "an open platform" and the presence of Carrier IQ on millions of Android phones despite Google's lack of support for the software, Mr. Schmidt stated, "it's possible for people to build software that's actually not very good for you, and this appears to be one."

## V.     CLASS ALLEGATIONS

31.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a proposed Class consisting of:

> All persons in the United States that own or owned HTC brand cellular devices on which Carrier IQ software was installed or embedded.

Excluded from the proposed Class are: Defendants; Defendants' affiliates, subsidiaries, current or former officers and employees; the judge to whom this case is assigned, as well as the judge's immediate family members; and all persons who elect to be excluded from the proposed Class.

32.     The exact number of the members of the proposed Class is unknown and is not available to the Plaintiff at this time, but individual joinder in this case is impracticable. Based on Carrier IQ's representation that its software is installed on over 141 million devices, it is likely that the proposed Class consists of millions of members.

33.     There are numerous questions of law and fact common to the claims of the Plaintiff and members of the proposed Class. These include:

a.      Whether Defendants recorded, intercepted, stored and/or transmitted Plaintiff's and proposed Class members' keystrokes, text messages, telephone numbers, web sites accessed, and other private information, all without the users' knowledge or authorization, and whether it continues to do so;

b.      Whether Defendants have violated the Federal Wiretap Act, 18 U.S.C. § 2511 *et seq.*;

c.      Whether Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et. seq.*;

d.      Whether Defendants have unlawfully profited from their conduct, and whether they must disgorge profits to Plaintiff and members of the proposed Class; and

e.      Whether Plaintiff and members of the proposed Class are entitled to statutory and other damages, civil penalties, punitive damages, restitution, and/or declaratory or injunctive relief.

34.      Plaintiff's claims are typical of the claims of the members of the proposed Class. The factual and legal bases of Defendants' liability to Plaintiff and members of the proposed Class are the same and resulted in injury to Plaintiff and all other members of the proposed Class.

35.      Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff's counsel is competent and experienced in complex class-action litigation and has the necessary financial resources to effectively and efficiently prosecute this proposed class action. Neither Plaintiff nor his counsel has adverse interests to those of the proposed Class which they seek to represent.

36.     Plaintiff and the proposed Class have all suffered harm and damages as a result of the Defendants' illegal conduct and will continue to do so.  The questions of law or fact common to Class members predominate over any questions affecting only individual members.  Class proceedings on these facts and this law are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all proposed Class members is impracticable.  The prosecution of thousands or millions of individual actions would create the risk of inconsistent adjudications with respect to individual Class members, thereby establishing inconsistent standards of conduct for the Defendants.  Prosecuting the actions on a class basis will provide the benefit of a single adjudication and significantly reduce the delays and expenses to all parties given the complex nature of the factual and legal issues present.  This proposed class action is appropriate for certification.

## VI.     CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FEDERAL WIRETAP ACT (18 U.S.C. §§ 2511, *et seq.*)

37.     Plaintiff incorporates the above allegations by reference as if set forth in full herein.

38.     Plaintiff brings this cause of action on his own behalf and on behalf of each member of the proposed Class.

39.     Defendants, through the installation or embedding of Carrier IQ Software have intentionally intercepted, endeavored to intercept, or procured others to intercept or endeavor to intercept, wire and/or electronic communications as described herein including but not limited to keystrokes, text messages, telephone numbers, web sites accessed and other private information, all without the knowledge, consent or authorization of Plaintiff and the proposed Class, in

violation of the Federal Wiretap Act as amended by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, *et. seq.*

40.    Defendants have intentionally used, or endeavored to use, the private contents of electronic communications of Plaintiff and the Class, knowing or having reason to know that the private information was obtained through the unlawful interception of electronic communications in violation of the Federal Wiretap Act.

41.    At all relevant times, Plaintiff and the Class were entitled to the protection of the Federal Wiretap Act as amended by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, *et. seq.* As a result of these violations of law, Plaintiff and the Class have suffered damages, harm and injury, including the interception and transmission of private and personal communications.

42.    As a result of these violations of law, Defendants are subject to civil suit, and Plaintiff and the Class are entitled to appropriate relief, including that set forth in 18 U.S.C. § 2520. Such relief includes: statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000 per class member; punitive damages; injunctive relief or declaratory relief as deemed appropriate; and reasonable attorneys' fees and costs. Plaintiff, on his own behalf and on behalf of the proposed Class, seeks all appropriate relief, including but not limited to statutory damages as set forth.

## COUNT II
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. §§ 1030, *et seq.*)

43.    Plaintiff incorporates the above allegations by reference as if set forth in full herein.

44.   Plaintiff brings this cause of action on his own behalf and on behalf of each member of the proposed Class.

45.   Pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq.*, cellular devices that are embedded with Carrier IQ Software are "computers" as they are "high speed data processing device[s] performing logical, arithmetic, or storage functions...." *See* 18 U.S.C. § 1030(e)(1).  Additionally, the cellular devices are "protected computers" as they are "used in or affecting interstate ... commerce or communication...." *See* 18 U.S.C. § 1030(e)(2)(B).

46.   Defendants violated the Computer Fraud and Abuse Act by intentionally accessing the cellular devices of Plaintiff and the proposed Class members without authorization thereby obtaining information including but not limited to keystrokes, text messages, telephone numbers, web sites accessed and other private information from the cellular devices.

47.   Defendants violated the Computer Fraud and Abuse Act by knowingly causing the transmission of a program, information, code or command, and as a result of such conduct, intentionally caused damage without authorization to the Plaintiff's and members of the proposed Class' cellular devices.  Damages include but are not limited to the loss of confidentiality of private information contained on the cellular devices; the reduction in performance of the cellular devices and the decreased battery life as a result of the Carrier IQ Software's constant operation.

48.   Defendants violated the Computer Fraud and Abuse Act by intentionally accessing the cellular devices of Plaintiff and the proposed Class members without authorization, and as a result of such conduct, recklessly caused damage.  Damages include but are not limited to the loss of confidentiality of private information contained on the cellular devices; the

reduction in performance of the cellular devices and the decreased battery life as a result of the Carrier IQ Software's constant operation.

49.     Defendants violated the Computer Fraud and Abuse Act by intentionally accessing the cellular devices of Plaintiff and the proposed Class members without authorization, and as a result of such conduct, caused damage and loss. Damages include but are not limited to the loss of confidentiality of private information contained on the cellular devices; the reduction in performance of the cellular devices and the decreased battery life as a result of the Carrier IQ Software's constant operation.

50.     As a result of these violations of law, Defendants are subject to civil suit, and Plaintiff and the Class are entitled to appropriate relief, including that set forth in 18 U.S.C. § 1030(g).   Such relief includes:  compensatory damages and injunctive relief or other equitable relief as the damage caused by Defendants affected more than 10 "protected computers" (cellular devices) during a one-year period.  Defendants obtained information valued at over $5,000, and the loss to one or more persons during a one-year period exceeded an aggregate of $5,000 in value.  Plaintiff, on his own behalf and on behalf of the proposed Class, seeks all appropriate relief under the Computer Fraud and Abuse Act.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Certify this case as a class action and appoint the named Plaintiff to be Class representative and his counsel to be Class counsel;

2.     Award the Plaintiff and the Class appropriate relief, to include statutory damages, as available to them under the Federal Wiretap Act;

3.      Award the Plaintiff and the Class compensatory damages as available to them under the Computer Fraud and Abuse Act;

4.      Award the Plaintiff and the Class preliminary and injunctive relief as may be appropriate;

5.      Award Plaintiff and the Class their reasonable attorneys' fees, costs and expenses incurred in this action, including prejudgment interest; and

6.      Award Plaintiff and the Class such further relief as the Court deems appropriate.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


DATED:                                      Respectfully Submitted,


                                            David Finn (State Bar of Texas 07026900)
                                            **DAVID FINN, P.C.**
                                            2828 N. Harwood, Suite 1950
                                            Dallas, TX 75201
                                            Telephone: (214) 651-1121
                                            Email: JudgeFinn@DavidFinn.com

                                            *Local Counsel for Plaintiff and the Proposed Class*

                                            Eugene A. Spector
                                            Jeffrey L. Kodroff
                                            John A. Macoretta
                                            Jonathan M. Jagher
                                            **SPECTOR ROSEMAN KODROFF**
                                                **& WILLIS, PC**
                                            1818 Market Street, Suite 2500
                                            Philadelphia, PA 19103
                                            Telephone: (215) 496-0300
                                            Facsimile: (215) 496-6611
                                            Email: espector@srkw-law.com
                                                    jkodroff@srkw-law.com



jmacoretta@srkw-law.com
jjagher@srkw-law.com

Michael Dell'Angelo
Shanon J. Carson
Sarah R. Schalman-Bergen
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3080
Facsimile: (215) 875-4604
Email: mdellangelo@bm.net
     scarson@bm.net
     sschalman-bergen@bm.net

Jeffrey S. Goldenberg
Todd B. Naylor
**GOLDENBERG SCHNEIDER, LPA**
35 East Seventh Street, Suite 600
Cincinnati, OH 45202
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
Email: jgoldenberg@gs-legal.com
     tnaylor@gs-legal.com

Lee Albert
Gregory B. Linkh
**MURRAY FRANK LLP**
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892
Email: lalbert@murrayfrank.com
     glinkh@murrayfrank.com

*Attorneys for Plaintiff and the Proposed Class*

JS 44 (TXND Rev. 2/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

ORIGINAL   3-11 ~ 3 4 8 3

## I. (a) PLAINTIFFS

## DEFENDANTS

(b) County of Residence of First Listed Plaintiff  **Dallas**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Santa Clara, Calif.**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)  **Philadelphia PA**
**John Macoretta**
**1818 Market St. Ste 2500**
**215, 496-0300**

Attorneys (If Known)

DEC 15 2011

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**18 USC §§ 2511 et. seq. 2512, 2520; 18 USC 1030**

Brief description of cause:
**Violation of above statutes**

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
(See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE  **12/15/11**   SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____