**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

3-11-10—
3483

| | § | |
|---|---|---|
| In re Carrier IQ, Inc. | § | MDL No. 2330 |
| Consumer Privacy Litigation | § | |
| | § | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 23 2011

CLERK, U.S. DISTRICT COURT
By _____
Deputy

### NOTICE OF RELATED ACTIONS

Defendant HTC, America, Inc. hereby gives notice of the following actions that

are related to MDL No. 2330:

- *Wolff, et al. v. Carrier IQ, Inc., et al.* No. 11-10076
  (C.D. Cal. filed Dec. 5, 2011)

- *Olivares, et al. v. Carrier IQ, Inc., et al.* No. 11-6151
  (N.D. Cal. filed Dec. 6, 2011)

- *Phong v. Carrier IQ, Inc., et al.* No. 11-6333
  (N.D. Cal. filed Dec. 13, 2011)

- *Siegel v. Carrier IQ, Inc., et al.* No. 11-8791
  (N.D. Ill. filed Dec. 12, 2011)

- *Cerrone v. Carrier IQ, Inc., et al.* No. 11-5994
  (E.D.N.Y. filed Dec. 8, 2011)

- *Accident Investigative Servs., Inc. v. Carrier IQ, Inc., et al.* No. 11-7542
  (E.D. Pa. filed Dec. 8, 2011)

- *Lucarelli v. Carrier IQ, Inc., et al.* No. 11-3483
  (N.D. Tex. filed Dec. 15, 2011)

- *Kacmarcik v. Carrier IQ, Inc., et al.* No. 11-1119
  (E.D. Wis. filed Dec. 9, 2011)

Copies of the complaints and docket sheets for the above-listed actions are

attached hereto as Exhibits 1-8.

16021838.1

Respectfully submitted this 21st day of December, 2011.

/s/ Rosemarie T. Ring

Rosemarie T. Ring
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105
(415) 512-4000
Rose.Ring@mto.com
Counsel for HTC America, Inc.

16021838.1

# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE CARRIER IQ, INC.<br>CONSUMER PRIVACY LITIGATION | )<br>)<br>) |

MDL NO. 2330

## SCHEDULE OF ACTIONS

| | Case Caption | Court | Case No. | Judge |
|---|---|---|---|---|
| 1 | Plaintiffs:<br>Caryl Wolff<br>Matthew Fosson<br>Elizabeth Fosson<br><br>Defendants:<br>Carrier IQ, Inc.<br>HTC America, Inc.<br>HTC Corporation<br>Samsung Electronics America, Inc.<br>Samsung Telecommunications America, Inc. | C.D. Cal. | No. 11-10076 | Gary A. Feess |
| 2 | Plaintiffs:<br>Israel Olivares<br>Clarissa Portales<br><br>Defendants:<br>Carrier IQ, Inc.<br>HTC America, Inc. | N.D. Cal. | No. 11-6151 | Howard R. Lloyd (U.S.M.J.) |
| 3 | Plaintiff:<br>Dao Phong<br><br>Defendants:<br>Carrier IQ, Inc.<br>HTC America, Inc. | N.D. Cal. | No. 11-6333 | Howard R. Lloyd (U.S.M.J.) |

| | Case Caption | Court | Case No. | Judge |
|---|---|---|---|---|
| 4 | Plaintiff:<br>Michael Siegel<br><br>Defendants:<br>Carrier IQ, Inc.<br>HTC America, Inc.<br>Sprint-Nextel Corporation<br>Samsung Electronics America, Inc. | N.D. Ill. | No. 11-8791 | Ronald A. Guzman |
| 5 | Plaintiff:<br>Kristina Cerrone<br><br>Defendants:<br>Carrier IQ, Inc.<br>HTC, Inc.<br>HTC America, Inc. | E.D.N.Y. | No. 11-5994 | Roslynn R. Mauskopf |
| 6 | Plaintiff:<br>Accident Investigative Services, Inc.<br><br>Defendants:<br>Carrier IQ, Inc.<br>HTC, Inc.<br>HTC America, Inc. | E.D. Pa. | No. 11-7542 | Timothy J. Savage |
| 7 | Plaintiff:<br>Richard Lucarelli<br><br>Defendants:<br>Carrier IQ, Inc.<br>HTC Corporation<br>HTC America, Inc. | N.D. Tex. | No. 11-3483 | Barbara M.G. Lynn |
| 8 | Plaintiff:<br>Andy Kacmarcik<br><br>Defendants:<br>Carrier IQ, Inc.<br>HTC America, Inc.<br>HTC Corporation<br>Sprint Nextel Corporation | E.D. Wis. | No. 11-1119 | Rudolph T. Randa |

16024739.1

**BEFORE THE**
**UNITED STATES JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

IN RE: CARRIER IQ, INC., CONSUMER PRIVACY LITIGATION   MDL Docket No. 2330

**PROOF OF SERVICE**

I hereby certify that a copy of the documents entitled:

**NOTICE OF RELATED ACTIONS**
**SCHEDULE OF ACTIONS**
**PROOF OF SERVICE**

were filed via ECF.   The documents will be served by Federal Express on December 22, 2011, on the following:

| | |
|---|---|
| Clerk, United States District Court<br>Eastern District of Pennsylvania (Philadelphia)<br>601 Market Street,  Room 2609<br>Philadelphia, PA  19106-1797<br>Telephone:  (215) 597-7704<br><br>2:11-cv-07542-TJS | Clerk, United States District Court<br>Eastern District of Wisconsin<br>362 United States Courthouse<br>517 East Wisconsin Avenue<br>Milwaukee, WI  53202<br>Telephone: (414) 297-3372<br><br>2:11-cv-01119-RTR |
| Clerk, United States District Court<br>Eastern District of New York<br>225 Cadman Plaza East<br>Brooklyn, NY 11201<br>Telephone: (718) 613-2600<br><br>1:11-cv-05994-RRM-JMA | Clerk, United States District Court<br>Northern District of Texas<br>1100 Commerce St., Room 1452<br>Dallas, Texas  75242<br>Telephone:  (214) 753-2200<br><br>3:11-cv-03483-M |
| Clerk, United States District Court<br>Northern District of California (San Jose)<br>280 South 1st Street<br>San Jose, CA  95113<br>Telephone: (408) 535-5363<br><br>5:11-cv-06151-HRL<br>5:11-cv-06333-HRL | Clerk, United States District Court<br>Northern District of Illinois<br>Everett McKinley Dirksen<br>United States Courthouse<br>219 South Dearborn Street<br>Chicago, IL 60604<br>Telephone: (312) 435-5670<br><br>1:11-cv-08791 |

| | |
|---|---|
| Clerk, United States District Court<br>Central District of California<br>312 N. Spring Street<br>Los Angeles, CA  90012<br>Telephone: (213) 894-1565<br><br>2:11–cv–10076–GAF–MRW | |

The documents will also be served by electronic mail on December 21, 2011, on the following:

| Counsel | Plaintiff | Jurisdiction | Case No. |
|---|---|---|---|
| Charles E. Schaffer<br>Levin, Fishbein, Sedran & Berman<br>510 Walnut Street<br>Suite 500<br>Philadelphia, Pa 19106<br>215–592–1500<br>cschaffer@lfsblaw.com | Accident Investigative Services, Inc. | Eastern District of Pennsylvania (Philadelphia) | 2:11–cv–07542–TJS |
| Michael M. Weinkowitz<br>Levin Fishbein Sedran & Berman<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106<br>215–592–1500<br>Fax: 215–592–4663<br>mweinkowitz@lfsblaw.com | Kristina Cerrone | Eastern District of New York | 1:11–cv–05994–RRM–JMA |

| | | | |
|---|---|---|---|
| Ben Barnow<br>Blake A Strautins<br>Barnow and Associates PC<br>1 N LaSalle St – Ste 4600<br>Chicago, IL 60602<br>312–621–2000<br>Fax: 312–641–5504<br>b.barnow@barnowlaw.com<br>b.strautins@barnowlaw.com<br><br>David J Syrios<br>Guri Ademi<br>Shpetim Ademi<br>Ademi &O'Reilly LLP<br>3620 E Layton Ave<br>Cudahy, WI 53110<br>414–482–8000<br>Fax: 414–482–8001<br>dsyrios@ademilaw.com<br>gademi@ademilaw.com<br>sademi@ademilaw.com<br>cmather@ademilaw.com | Andy<br>Kacmarcik | Eastern<br>District of<br>Wisconsin<br>(Milwaukee) | 2:11–cv–01119–RTR |
| David M Finn<br>Milner Finn Price<br>2828 N Harwood<br>Suite 1950<br>Dallas, TX 75201<br>214/651–1121<br>Fax: 214/953–1366<br>judgefinn@davidfinn.com | Richard<br>Lucarelli | Northern<br>District of<br>Texas | 3:11–cv–03483–M |
| Brian R Strange<br>Strange and Carpenter<br>12100 Wilshire Boulevard Suite 1900<br>Los Angeles, CA 90025<br>310–207–5055<br>Fax: 310–826–3210<br>lacounsel@earthlink.net<br><br>Joseph H Malley<br>Law Office of Joseph H. Malley, PC<br>1045 North Zang Boulevard<br>Dallas, TX 75208<br>214–943–6100<br>malleylaw@gmail.com | Israel<br>Olivares | California<br>Northern<br>District (San<br>Jose) | 5:11–cv–06151–HRL |

| | | | |
|---|---|---|---|
| Mark Punzalan<br>Finkelstein, Thompson LLP<br>100 Bush Street<br>Suite 1450<br>San Francisco, CA 94104<br>415-398-8700<br>Fax: 415-398-8704<br>mpunzalan@finkelsteinthompson.com | Dao Phong | California<br>Northern<br>District<br>(San Jose) | 5:11-cv-06333-HRL |
| Larry D. Drury<br>Larry D. Drury, Ltd.<br>100 N. LaSalle St.<br>Suite 1010<br>Chicago, IL 60602<br>(312) 346-7950<br>ldrurylaw@aol.com | Michael<br>Siegel | Northern<br>District of<br>Illinois | 1:11-cv-08791 |
| Brian C Gudmundson<br>David M Cialkowski<br>Zimmerman Reed PLLP<br>801 South Figueroa Street<br>Minneapolis, MN 55402<br>612-341-0400<br>Fax: 612-341-0844<br>brian.gudmundson@zimmreed.com<br>david.cialkowski@zimmreed.com<br><br>Daniel Lawrence Germain<br>Rosman &Germain LLP<br>16311 Ventura Boulevard Suite 1200<br>Encino, CA 91436-2152<br>818-788-0877<br>Fax: 818-788-0885<br>germain@lalawyer.com<br><br>Paula M Roach<br>Timothy G Blood<br>Blood Hurst &O'Reardon LLP<br>600 B Street Suite 1550<br>San Diego, CA 92101-3301<br>619-338-1100<br>Fax: 619-338-1101<br>proach@bholaw.com<br>tblood@bholaw.com | Caryl Wolff<br><br>Matthew<br>Fosson<br><br>Elizabeth<br>Fosson | United States<br>District<br>Court,<br>Central<br>District of<br>California<br>(Western<br>Division -<br>Los Angeles) | 2:11-cv-10076-GAF-MRW |

DATED: December 21, 2011      */s/ Susan Ahmadi*               



# Exhibit 1:

# *Wolff, et al. v. Carrier IQ, Inc., et al.*

(MRWx), DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division – Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-10076-GAF-MRW

Caryl Wolff v. Carrier IQ Inc et al
Assigned to: Judge Gary A. Feess
Referred to: Magistrate Judge Michael R. Wilner
Cause: 18:2510 Wire Interception

Date Filed: 12/05/2011
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Caryl Wolff**
*individually and on behalf of all others
similarly situated*

represented by **Brian C Gudmundson**
Zimmerman Reed PLLP
801 South Figueroa Street
Minneapolis, MN 55402
612-341-0400
Fax: 612-341-0844
Email: brian.gudmundson@zimmreed.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Lawrence Germain**
Rosman &Germain LLP
16311 Ventura Boulevard Suite 1200
Encino, CA 91436-2152
818-788-0877
Fax: 818-788-0885
Email: germain@lalawyer.com
*ATTORNEY TO BE NOTICED*

**David M Cialkowski**
Zimmerman Reed PLLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
612-341-0400
Fax: 612-341-0844
Email: david.cialkowski@zimmreed.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paula M Roach**
Blood Hurst &O'Reardon LLP
600 B Street Suite 1550
San Diego, CA 92101-3301
619-338-1100
Fax: 619-338-1101
Email: proach@bholaw.com
*ATTORNEY TO BE NOTICED*

**Timothy G Blood**
Blood Hurst &O'Reardon LLP
600 B Street Suite 1550
San Diego, CA 92101
619-338-1100
Fax: 619-338-1101
Email: tblood@bholaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Matthew Fosson**
*individually and on behalf of all others
similarly situated*

represented by **Matthew Fosson**
PRO SE

**Plaintiff**

**Elizabeth Fosson**
*individually and on behalf of all others
similarly situated*

represented by **Elizabeth Fosson**
PRO SE

V.

**Defendant**

**Carrier IQ Inc**
*a Delaware corporation*

**Defendant**

**HTC Corporation**
*a Taiwanese corporation*

**Defendant**

**HTC America Inc**
*a Washington corporation*

**Defendant**

**Samsung Electronics America, Inc.**
*a New York corporation*

**Defendant**

**Samsung Telecommunications America
Inc.**
*a Delaware corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/05/2011 | 1 | CLASS ACTION COMPLAINT against Defendants Carrier IQ Inc, HTC America Inc, HTC Corporation. Case assigned to Judge Gary A. Feess for all further proceedings. Discovery referred to Magistrate Judge Michael R Wilner.(Filing fee $ 350 Paid.) Jury Demanded., filed by Plaintiff Caryl Wolff. (et) (mg). (Entered: 12/07/2011) |
| 12/05/2011 | | 21 DAY Summons Issued re Complaint − (Discovery)1 as to Defendants Carrier IQ Inc, HTC America Inc, HTC Corporation. (et) (Entered: 12/07/2011) |
| 12/05/2011 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff Caryl Wolff. (et) (mg). (Entered: 12/07/2011) |
| 12/07/2011 | 3 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to David M. Cialkowski for Plaintiff Caryl Wolff. Your Pro Hac Vice application has not been received by the court. Please return your completed Application of Non−Resident Attorney to Appear in a Specific Case, form G−64, or a copy of the Notice of Electronic Filing of your application and the $325.00 fee and this notice immediately. Out−of−state federal government attorneys who are not employed by the U.S. Department of Justice are required to file a Pro Hac Vice application; no filing fee is required. (et) (Entered: 12/07/2011) |
| 12/07/2011 | 4 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to Brian C. Gudmundson for Plaintiff Caryl Wolff. Your Pro Hac Vice application has not been received by the court. Please return your completed Application of Non−Resident Attorney to Appear in a Specific Case, form G−64, or a copy of the Notice of Electronic Filing of your application and the $325.00 fee and this notice immediately. Out−of−state federal government attorneys who are not employed by |

| | | the U.S. Department of Justice are required to file a Pro Hac Vice application; no filing fee is required. (et) (Entered: 12/07/2011) |
|---|---|---|
| 12/13/2011 | 5 | CERTIFICATION of Interested Parties filed by Plaintiff Caryl Wolff. (bp) (Entered: 12/15/2011) |
| 12/13/2011 | 6 | FIRST AMENDED COMPLAINT against defendants Carrier IQ Inc, HTC America Inc, HTC Corporation, Samsung Electronics America, Inc., Samsung Telecommunications America Inc. amending Complaint – (Discovery), 1 , filed by plaintffs Caryl Wolff, Matthew Fosson, Elizabeth Fosson (bp) (Additional attachment(s) added on 12/20/2011: # 1 summons issued) (bp). (Entered: 12/16/2011) |
| 12/13/2011 | | 21 DAY Summons Issued re Amended Complaint, 6 as to Defendants Carrier IQ Inc, HTC America Inc, HTC Corporation, Samsung Electronics America, Inc., Samsung Telecommunications America Inc.. (bp) (Entered: 12/20/2011) |
| 12/16/2011 | 8 | APPLICATION for attorney Brian C. Gudmundson to Appear Pro Hac Vice. (PHV FEE PAID.) filed by plaintff Caryl Wolff. Lodged Proposed Order. (bp) (Entered: 12/19/2011) |
| 12/19/2011 | 7 | APPLICATION for attorney David M. Cialkowski to Appear Pro Hac Vice. (PHV FEE PAID.) filed by plaintff Caryl Wolff. Lodged Lodged Order. (bp) (Entered: 12/19/2011) |
| 12/19/2011 | 9 | ORDER by Judge Gary A. Feess granting 7 Application to Appear Pro Hac Vice by Attorney David Cialkowski on behalf of plaintiff, designating Daniel Germain as local counsel. (ak) (Entered: 12/20/2011) |
| 12/19/2011 | 10 | ORDER by Judge Gary A. Feess: granting 8 Application to Appear Pro Hac Vice by Attorney Brian Gudmundson on behalf of plaintiff, designating Daniel Germain as local counsel. (ak) (Entered: 12/20/2011) |

Daniel L. Germain (Bar No. 143334)
**ROSMAN & GERMAIN LLP**
16311 Ventura Blvd., Suite 1200
Encino, CA 91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: R&G@Lalawyer.com

David M. Cialkowski
Brian C. Gudmundson
**ZIMMERMAN REED, PLLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
E-Mail: david.cialkowski@zimmreed.com

Additional Counsel Listed on Signature Page

*Attorneys for Plaintiffs and the Proposed Class*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

CARYL WOLFF, MATTHEW FOSSON, ELIZABETH FOSSON, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

CARRIER IQ, INC., a Delaware corporation; HTC CORPORATION, a Taiwanese corporation; HTC AMERICA, INC., a Washington corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, INC., a Delaware corporation.

Defendants.

Case No.: CV11-10076 GAF (MRWx)

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1830** *et seq.;*
2. **VIOLATION OF THE FEDERAL WIRETAP ACT AS AMENDED BY THE ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. §§ 2510,** *et seq.;*
3. **VIOLATION OF CALIFORNIA'S COMPUTER CRIME LAW,** California Penal Code §§ 502, et seq.;
4. **VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT,** California Penal Code §§630 et seq.;
5. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,** California Business and Professions Code §§17200, et seq.; and
6. **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT, California Civil Code §§1750, et seq.**

**DEMAND FOR JURY TRIAL**

- 1 -
FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs bring this action individually and on behalf of a class of similarly situated consumers who purchased cellular telephones embedded with software capable of tracking, recording and transmitting personal and private information. Plaintiffs bring this action against Carrier IQ, Inc., who developed the software, and Defendants HTC Corporation, HTC America, Inc., Samsung Electronics America, Inc., and Samsung Telecommunications America, Inc., the cellular telephone manufacturers who knowingly embedded their phone products with the software, or allowed it to be embedded.

## INTRODUCTION

1. Carrier IQ ("CIQ") designs, develops, and markets software capable of tracking, recording and transmitting electronic data to cellphone service providers or other CIQ customers. CIQ boasts that its software is currently running on over 141 million cellular telephones ("cellphones").

2. CIQ's software, once installed on a cellphone, surreptitiously runs in the background, capturing and logging the activities of the cellphone user. The software functions by recording the key strokes of the user and transmitting that data to a separate location which can be accessed by cellphone service providers.

3. The content of the information recorded CIQ's application is very personal and private. This information includes, but is not limited to:

    a. When users turn their phones on and off;

    b. The phone numbers users dial;

    c. The contents of the text messages users receive;

    d. The URLs of the websites users visit;

    e. The contents of users' online search queries; and

    f. The location of the customer using the smartphone – even when the customer has *expressly denied* permission for that information to be recorded.

4. By embedding the CIQ software in Plaintiffs' cellphones and capturing, recording, and transmitting personal electronic data, Defendants have directly violated applicable federal and state law.

5.     Plaintiffs seek to stop Defendants' unauthorized and illegal interception of electronic communications and to recover damages and other relief prescribed by law.

## JURISDICTION

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 in that Plaintiffs allege violations of federal law, namely the Federal Wiretap Act as amended by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1830 *et seq.* The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

7.     This Court has personal jurisdiction over the Defendants in this action due to the fact that Defendants are licensed to do business in the state of California or otherwise conduct business in the state of California.

8.     Venue is proper in the Court pursuant to 28 U.S.C. § 1291(b)(2) because a substantial part of the events giving rise to this claim have occurred in this district and Defendants regularly conduct business in this district.

## PARTIES

9.     Plaintiff Caryl Wolff is a resident of the City of Los Angeles, State of California. Caryl Wolff purchased and uses a cellphone manufactured by HTC embedded with CIQ's software.   Plaintiff Caryl Wolff has suffered injury in fact and lost money or property as a result of the conduct alleged.   Defendants have taken her personal, private information for commercial purposes without her consent or agreement and otherwise without legal authority to do so.

10.     Plaintiff Matthew Fosson is a resident of the City of Lawrenceburg, State of Kentucky.  Matthew Fosson purchased and used a cellphone manufactured by HTC embedded with CIQ's software.  Plaintiff Mathew Fosson has suffered injury in fact and lost money or property as a result of the conduct alleged.  Defendants have taken his personal, private information for commercial purposes without his consent or agreement and otherwise without legal authority to do so.

11.     Plaintiff Elizabeth Fosson is a resident of the City of Lawrenceburg, State of Kentucky. Elizabeth Fosson purchased and used a cellphone manufactured by Samsung embedded with CIQ's software. Plaintiff Elizabeth Fosson has suffered injury in fact and lost money or property as a result of the conduct alleged. Defendants have taken his personal, private information for commercial purposes without her consent or agreement and otherwise without legal authority to do so.

12.     Defendant Carrier IQ, Inc., is a Delaware corporation, headquartered in Mountain View, California. Carrier IQ develops, markets and distributes software designed to record, track and transmit cellphone users' personal data.

13.     Defendant HTC Corporation ("HTC") is a Taiwan corporation and a cellphone manufacturer location in Taoyuan, Taiwan. HTC has offices within the United States and sells its products throughout the United States, including throughout California. It is also the parent company of Defendant HTC America, Inc.

14.     Defendant HTC America, Inc. ("HTC America") is a Washington corporation with its principal place of business in Bellevue, Washington. HTC America sells its products throughout the United States, including throughout California.

15.     Defendant Samsung Electronics America, Inc. ("Samsung Electronics") is a New York corporation with its principal place of business in Ridgefield Park, New Jersey. Samsung Electronics has offices within the United States and sells its products throughout the United States, including throughout California.

16.     Defendant Samsung Telecommunications America, Inc. ("Samsung Telecommunications") is a Delaware Corporation with its principal place of business in Richardson, Texas. Samsung Telecommunications has offices within the United States and sells its products throughout the United States, including throughout California.

## FACTUAL BACKGROUND

### A.     Carrier IQ

17.     Carrier IQ is the "world's leading provider of Mobile Service Intelligence solutions." CIQ develops software that tracks and delivers "data drawn directly from []

- 4 -

FIRST AMENDED CLASS ACTION COMPLAINT

1  subscribers' devices" to provide "detailed insight into the mobile experience as delivered

2  at the handset. . . ."

3       18.    Carrier IQ has created a suite of data tracking software which it markets to

4  cellphone service providers, among others, who find it valuable to be able to get a "precise

5  view" of a customer's interaction with their cellphone.

6       19.    One of Carrier IQ's most successful applications is the IQ Insight Experience

7  Manager ("CIQ's Software").  Carrier IQ's online data sheet explains why:

8       IQ Insight Experience Manager provides a level of visibility into true
        customer experience, previously unavailable in the mobile industry.  Based on
9       Carrier IQ's leading Mobile Service Intelligence Technology, IQ Insight
10      Experience Manager uses data directly from the mobile phone itself to give a
        precise view of how users interact with both their phones and the service
11      delivered through them, even if the phone is not communicating with the
12      network.

13

14      20.    CIQ's Software gives carriers detailed views of how customers interact with

15  their phones at "any level of granularity from the entire population, to comparative groups,

16  down to individual users, all at the touch of a button."

17      **B.    Operation of CIQ's Software**

18      21.    CIQ's Software functions as a rootkit. A rootkit is software that enables

19  continued privileged access to a computer while actively hiding its presence from

20  administrators, like Plaintiffs, by subverting standard operating system functions and other

21  applications.

22      22.    CIQ's Software operates by monitoring for commands called "triggers."  For

23  example, a user opening an application on their cellphone can be a trigger for the CIQ

24  software to record and transmit information about the text message.

25      23.    What actions serve as "triggers" to the CIQ software is predetermined by CIQ

26  and the Cellphone Service Providers.  Known triggers on HTC phones, as discovered by

27  third party software developer Trevor Eckhart, include, but are not limited to, (1) when

28  keys on the phone are pressed, (2) when the user changes physical locations, (3) when the

1 user taps the screen, and (4) when a user accesses a webpage. Leaked training materials

2 from CIQ show other actions that can "trigger" the CIQ software:

24. Once triggered, the CIQ software records certain information. This information is then sent to another location named the Carrier IQ Portal where the information is organized and stored.

25. At the Carrier IQ Portal, devices are displayed by individual phone Equipment ID and Subscriber IDs. Portal Administrators can organize the information and subdivide the data sets further depending on their needs.

**C.    CIQ Software Records Private Information And Degrades The Performance of Cellphones.**

26. CIQ software was embedded in millions of cellphones around the world, including cellphones manufactured by HTC and Samsung. CIQ software is preinstalled and operates from the time the user begins to use their cellphone.

27. On or about November 28, 2011, Mr. Eckhart published an analysis report titled "Carrier IQ Part 2." His report included a 17 minute video in which he offered proof that the CIQ software logged his key strokes, recorded his SMS text messages, recorded dialed numbers, and tracked his internet use, including on HTTPS (secure) websites.

28. Mr. Eckhart's report was quickly picked up by the media. Andy Greenberg, reporting for Forbes, wrote:

> As Echart's analysis of the company's training videos and the debugging logs on his own HTC Evo handset have shown, Carrier IQ captures every keystroke on a device as well as location and other data, and potentially makes that data available to Carrier IQ's customers. The video he's created (below) shows every keystroke being sent to the highly-obscured application on the phone before a call, text message, or Internet data package is ever communicated beyond the phone. Eckhart has found the application on Samsung, HTC, Nokia and RIM devices, and Carrier IQ claims on its website that it has installed the program on more than 140 million handsets.

29. CIQ has claimed that the information it records is used for service maintenance purposes only and that no personal or private data is transmitted to cellphone service providers. However, the patent materials for CIQ's own software, discredit this

claim. CIQ's patent for CIQ's software states that it is a "method for collecting data at a server coupled to a communications network. . . ." The patent goes on to state that the data to be collected is that which relates "to an end user's interaction with the device," and states that this interaction is "the end user's pressing of keys on the device."

30.     CIQ's own marketing materials further show that its software transmits personal and private data to cellphone service providers.  The marketing material promoting CIQ's software states:

a.     The software is able to "capture a vast array of experience data including screen transitions, button presses, service interactions and anomalies."

b.     The software will allow users to see "application and device feature usage, such as camera, music, messaging, browser, and tv."

c.     Most disturbingly, that CIQ's software allows users to "[i]dentify exactly how [their] customers interact with services and which ones they use. See which content they consume, even offline."

31.     In addition, CIQ's software degrades the performance of cellphones.  Another Android developer, Tim Schofield, extensively researched the presence of the CIQ software on multiple Android smartphone platforms.  He noted that in addition to the privacy issues, the embedded software necessarily degrades the performance of any device on which it is installed.   CIQ's software is always operating and cannot be turned off.  It necessarily uses system resources, thus slowing performance and decreasing battery life.  As a result, because of the CIQ software, in addition to having their private communications intercepted, Plaintiffs and Class Members are not getting the optimal performance of the smartphone devices that they purchased, and which are marketed, in part, based on their speed, performance, and battery life.

32.     CIQ's practices have garnered the attention of Congress.   On November 30, 2011, Senator Al Franken, Chairmen of the Subcommittee on Privacy, Technology and the Law wrote a letter to CIQ's President and CEO, Larry Lenhart, stating that he was very concerned that CIQ's software is able to track, record and transmit private information.

1    Senator Franken stated that it appeared CIQ software captured a broad swath of extremely

2    sensitive information which had nothing to do with diagnostics. He demanded that CIQ

3    answer numerous questions, including whether CIQ software recorded private data,

4    whether it recorded the data even when the phone was off and whether the private data is

5    subsequently shared with third parties.

6                                    **CLASS ALLEGATIONS**

7        33.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil

8    Procedure, on behalf of themselves and a proposed Class consisting of:

9            All persons in the United States that own or owned HTC or Samsung branded
10           telephones or other devices on which CIQ software was installed or
             embedded.
11

12   Excluded from the proposed Class are Defendants; Defendants' affiliates and subsidiaries;

13   Defendants' current or former employees, officers, directors, agents, and representatives;

14   and the judge or magistrate judge to whom this case is assigned, as well as those judges'

15   immediate family members.

16       34.    Numerosity: The members of the Class are so numerous that their individual

17   joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that

18   the proposed Class contains tens of thousands of members. The precise numbers of Class

19   members is unknown to Plaintiffs. The true numbers of Class members are known by

20   Defendants, however, and thus, may be notified of the pendency of this action by first

21   class mail, electronic mail, and by published notice. Upon information and belief, Class

22   members can be identified through Defendants' the electronic records.

23       35.    Commonality: Pursuant to Federal Rules of Civil Procedure, Rule 23(a)(3)

24   and Rule 23(b)(3), commonality and predominance are satisfied because there are

25   questions of law and fact common to Plaintiffs and the Class, which predominate over any

26   individual questions affecting only individual members. The common questions of law

27   and fact include, but are not limited to:

28           a.     Whether CIQ software has intercepted, recorded, and retransmitted

     Plaintiffs' personal and private information including, but not limited to, SMS text

1    messages, keystrokes, telephone numbers, and other information, without the permission

2    or knowledge of Plaintiffs.

3             b.    Whether CIQ and the device manufacturers have violated the Federal

4    Wiretap Act, 18 U.S.C. § 2510 et seq., including the prohibition on the interception,

5    disclosure, and use of wire, oral, or electronic communications, or otherwise, by way of

6    the acts and omissions set forth in this complaint.

7             c.    Whether CIQ and the Device Manufacturers have violated the

8    Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by implementing a software program

9    that cannot be removed from Plaintiffs' devices and which operates without Plaintiffs'

10   knowledge and permission.

11            d.    Whether CIQ and the Device Manufacturers have violated the

12   California Invasion of Privacy Act, California Penal Code § 630, by embedding a software

13   program that cannot be removed from Plaintiffs' devices and which records Plaintiffs'

14   personal and private data.

15            e.    Whether Defendants have violated California's Computer Crime Law,

16   Penal Code § 502, by embedding a software program that cannot be removed from

17   Plaintiffs' devices and which records Plaintiffs' personal and private data.

18            f.    Whether CIQ and the Device Manufacturers have violated the

19   California Unfair Business Practices Act, by secretly installing CIQ software in Plaintiffs'

20   cellphones, failing to disclose that the CIQ software degraded the performance and battery

21   life of the devices on which it was installed, failing to disclose that the software degrades

22   the performance and battery life of the cellphone and surreptitiously taking private and

23   confidential information from Plaintiffs and other member of the Class.

24            g.    Whether Plaintiffs are entitled to remedies under the California Legal

25   Remedies Act, due to the actions and omissions of Defendants as alleged herein.

26            h.    Whether Defendants are liable for statutory and other damages, civil

27   penalties, punitive damages, restitution, and/or whether declaratory or injunctive relief is

28   appropriate.

36.     Typicality:  Plaintiffs' claims are typical of the claims of the members of the proposed Class.  The factual and legal bases of Defendants' liability to Plaintiffs and other members of the proposed Class are the same and resulted in similar injuries.

37.     Adequate Representation:  Plaintiffs will represent and protect the interests of the proposed Class both fairly and adequately.  They have retained counsel competent and experienced in complex class-action litigation.  Plaintiffs have no interests that are antagonistic to those of the proposed Class, and their interests do not conflict with the interests of the proposed Class members they seek to represent.

38.     Predominance and Superiority:  This proposed class action is appropriate for certification. Class proceedings on these facts and this law are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable.  Individual litigation would increase the delay and expense to all parties due to the complex factual and legal controversies present in this controversy.  The class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. § 1030 *et. seq.*

39.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth herein at length.

40.     The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, referred to as "CFAA," regulates fraud and relates activity in connection with computers.  The Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i), makes it unlawful to "knowingly cause the transmission of a program, information, code or command and as a result of such conduct, intentionally cause damage without authorization, to a protected computer," of a

1   loss to one or more persons during any one-year period  aggregating at least $5,000 in

2   value.

3   41.   Plaintiffs' cellphones are "protected computer[s] . . . which are used in

4   interstate commerce and/or communication" within the meaning of 18 U.S.C. §

5   1030(e)(1)-(2).

6   42.   Defendants violated 18 U.S.C. § 1030(a)(2)(C) by intentionally accessing

7   Plaintiffs' cellphones, without authorization or by exceeding access, thereby obtaining

8   information from such protected Computing Devices.

9   43.   Defendants violated 18 U.S.C. § 1030(a)(5)(A)(iii) by intentionally accessing

10  Plaintiffs' cellphone without authorization, and as a result of such conduct, caused damage

11  and loss to Plaintiffs and Class members.

12  44.   Plaintiffs have suffered damage by reason of these violations, as defined in 18

13  U.S.C. § 1030(e)(8), by the "impairment to the integrity or availability of data, a program,

14  a system or information."

15  45.   Plaintiffs have suffered loss by reason of these violations, including, without

16  limitation, violation of the right of privacy, disclosure of personal identifying information,

17  sensitive identifying information, and personal information, and interception of

18  transactional information that otherwise is private, confidential, and not of public record.

19  46.   As a result of these takings, Defendants' conduct has caused a loss to one or

20  more persons during any one-year period aggregating at least $5,000 in value in real

21  economic damages.

22  47.   Plaintiffs and Class members have additionally suffered loss by reason of

23  these violations, including, without limitation, violation of the right of privacy.

24  48.   The CFAA, 18 U.S.C. § 1030 (g), provides a civil cause of action to "any

25  person who suffers damage or loss by reason of a violation" of a CFAA.  Defendant

26  Carrier IQ asserts in its marketing materials that, with its software installed on a cellular

27  device, a carrier can:  "Identify exactly how your customers interact with services and

28  which ones they use.  See which content they consume, even offline."  But information

about which services consumers use is private. Information about the "content they consume" is private. Consumers own this information, and Defendants have taken it without just compensation. Plaintiffs and Class members seek to be given the monetary value of this private data that was transmitted and sold.

49. Defendants' unlawful access to Plaintiffs' cellphones and electronic communications has caused Plaintiffs irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiff to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## COUNT II
## VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### 18 U.S.C. § 2510 *et seq.*

50. Plaintiffs incorporate the above allegations by reference as if set forth herein at length.

51. The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, referred to as "ECPA," regulates wire and electronic communications interception and interception of oral communications, and makes it unlawful for a person to "willfully intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," within the meaning of 18 U.S.C. § 2511(1).

52. Defendants violated 18 U.S.C. § 2511 by intentionally acquiring and/or intercepting, by device or otherwise, Plaintiffs' electronic communications, without their knowledge, consent or authorization.

53. The contents of data transmissions from and to Plaintiffs' cellphones constitute "electronic communications" within the meaning of 18 U.S.C. § 2510.

54. Plaintiffs and Class Members are "person[s] whose . . . electronic communication is intercepted . . . or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

55. Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept Plaintiffs' electronic communications.

56. Defendants violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or endeavoring to disclose, to any other person the contents of Plaintiffs' electronic communications, knowing or having reason to know that the information was obtained through the interception of Plaintiffs' electronic communications.

57. Defendants' intentional interception of these electronic communications without Plaintiffs' or Class members' knowledge, consent, or authorization was undertaken without a facially valid court order or certification.

58. As a result of these violations, Plaintiffs have suffered harm and injury, including the interception and transmission of private and personal communications and the degraded performance level of the devices in question.

59. As a result of these violations of law, Defendants Carrier IQ and the device manufacturers are subject to civil suit, and Plaintiffs are entitled to appropriate relief, including that set forth in 18 U.S.C. § 2520(b). Such appropriate relief includes "preliminary or other equitable or declaratory relief as may be appropriate;" "damages" as described in the statute; and "a reasonable attorney's fee and other litigation costs reasonably the greater of – (A) the sum of the actual damages suffered by the Plaintiffs and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000."

60. Plaintiffs on their own behalf and on behalf of the proposed Class, seek all such appropriate relief, including but not limited to statutory damages as set forth above.

## COUNT III
## VIOLATION OF CALIFORNIA'S COMPUTER CRIME LAW ("CCCL")
### California Penal Code § 502 *et seq.*

61. Plaintiffs incorporate the above allegations by reference as if set forth herein at length.

62.    Plaintiffs have standing to assert civil causes of action pursuant to California Penal Code § 502(e)(1) which states "[i]n addition to any other civil remedy available, the owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief."

63.    The California Computer Crime Law, California Penal Code § 502, referred to as "CCL" regulates "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems."

64.    Defendants violated California Penal Code § 502 by knowingly accessing, copying, using, making use of, interfering, and/or altering data belonging to Plaintiffs: (1) in and from the State of California: (2) in the home states of the Plaintiffs; and (3) in the state in which the servers that provided the communication link between Plaintiffs and the websites interacted with were located.

65.    Pursuant to California Penal Code § 502(b)(1), "Access means to gain entry to, instruct, or communication with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network."

66.    Pursuant to California Penal Code § 502(b)(6), "data means a representation of information, knowledge, facts, concepts, computer software, computer programs or instructions.  Data may be in any form, in storage media, or as stored in the memory of the computer or in transit or presented on a display device."

67.    Pursuant to California Penal Code § 502(b)(8), "Injury means any alteration, deletion, damage, or destruction of a computer system, computer network, computer program, or data caused by the access or the denial of access to legitimate users of computer system, network, or program."

68.    Pursuant to California Penal Code § 502(b)(10) a "Computer contaminant system means any set of computer instructions that are designed to modify, damage,

destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information."

69.     Defendants have violated California penal Code § 502(c)(2) by knowingly accessing and without permission, taking or making use of data from Plaintiffs' cellphones.

70.     Defendants have violated California penal Code § 502(c)(3) by knowingly and without permission, using and causing to be used Plaintiffs' cellphones.

71.     Defendants have violated California Penal Code § 502(c)(8) by knowingly introducing a computer containment into the Plaintiffs' Computer Devices to obtain data regarding Plaintiffs' electronic communications.

72.     Plaintiffs have additionally suffered loss by reason of these violations, including, a violation of the right of privacy. Defendant Carrier IQ asserts in its marketing materials that, with its software installed on a cellular device, a carrier can: "Identify exactly how your customers interact with services and which ones they use. See which content they consume, even offline." But information about which services consumers use is private. Information about the "content they consume" is private. Consumers own this information, and Defendants have taken it without just compensation. Plaintiffs and Class members seek to be given the monetary value of this private data that was transmitted and sold.

73.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have caused loss to Plaintiffs in an amount to be proven at trial. Plaintiffs are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

74.     Plaintiffs has also suffered irreparable injury from these unauthorized acts of disclosure, to wit: all of their personal, private, and sensitive electronic communications have been harvested, viewed, accessed, stored, and used by Defendants, and have not been destroyed, and due to the continuing threat of such injury, have no adequate remedy at law, entitling Plaintiffs to injunctive relief.

## COUNT IV
## VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT

CALIFORNIA PENAL CODE SECTION 630 *et seq*.

75.    Plaintiffs reallege and incorporate the above allegations by reference as if set forth herein at length.

76.    Plaintiffs assert this claim against Carrier IQ on behalf of themselves and the Class.  Plaintiffs have standing to assert civil causes of action pursuant to California Penal Code § 637.2(a) which states "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for greater of the following amounts: (1) Five thousand dollars ($5,000); (2) Three times the amount of actual damages, if any, sustained by the plaintiff."

77.    California Penal Code section 630 provides, in part:

Any person who, . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passive over wire, line, or cable, or is being sent from , or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained or who aids, agrees with, employees, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable . . .

78.    On information and belief, Plaintiffs, and each member of the Class, did not consent to any of the Defendants' actions in intercepting, reading, and/or learning the contents of their communications.

79.    The actions alleged herein were not undertaken "for the purpose of construction, maintenance, conduct or operation of the service and facilities of the public utility."

80.    Plaintiffs have additionally suffered loss by reason of these violations, including, without limitation, violation of the right to privacy.  Defendant Carrier IQ asserts in its marketing materials that, with its software installed on a cellular device, a carrier can: "Identify exactly how your customers interact with services and which ones they use. See which content they consume, even offline." But information about the

services consumers use is private.  Information about the "content they consume" is private.  Consumers own this information, and Defendants have taken it without just compensation.  Plaintiffs and Class members seek to be given the monetary value of this private data that was transmitted and sold.

81.     Unless restrained and enjoined, Defendants will continue to commit such acts, Pursuant to Sections 637.2 of the California Penal code, Plaintiffs have been injured and are entitled to seek damages and injunctive relief.

COUNT V

VIOLATION OF THE UNFAIR COMPETITION LAW

CAL. BUS. & PROF. Code §§ 17200 *et seq.*

82.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth herein at length.

83.     California's Unfair Competition Law ( "UCL") defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice.

84.     Defendants engaged in "unlawful" business practices under the UCL because they violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, the California Computer Crime Law, California Penal Code § 502, and the California Invasion of Privacy Act, California Penal Code § 630.

85.     Defendants engaged in "fraudulent" business practices under the UCL because they secretly installed the CIQ software on Plaintiffs' devices, failed to disclose that the CIQ software was always operating on such devices, failed to disclose that the CIQ software was capable of intercepting Plaintiffs' private communications and, in fact, intercepted such communications, and failed to disclose that the CIQ software degraded the performance and battery life of the devices on which it was installed.  Further, Defendants surreptitiously took private and confidential information from Plaintiffs and the other members of the Class.  Defendants' acts, omissions and failures to disclose were "material" to Plaintiffs and the class within the meaning of *In re Tobacco II Cases,* 46 Cal. 4th 298 (Cal. 2009).

86. Defendants engaged in "unfair" business practices under the UCL based on the foregoing. Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. Further, Defendants violated the laws and underlying legislative polices designed to protect the privacy rights of Californians and the rights of others that are affected by companies operating out of California. In particular, Cal. Bus. & Prof. Code §§ 22947-22947.6 and the California Constitution, provides:

ARTICLE 1 DECLARATION OF RIGHTS

SECTION 1. All people are by nature free and independent and have inalienable rights. Amount these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

87. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct described herein.

88. Plaintiffs and the Class were injured in fact and lost money or property as a result of these unlawful, unfair, and fraudulent business practices. In particular and without limitation, Defendants have taken Plaintiffs' personal, private information for commercial purposes without their consent or agreement and otherwise without legal authority to do so. Further, Plaintiffs did not receive the performance level and battery life on their phones that they paid for because the CIQ software necessarily degraded such performance and battery life by constantly running on Plaintiffs' devices.

COUNT VI
VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT
CAL. CIVIL CODE §§ 1750, *et seq.*

89. Plaintiffs reallege and incorporate the above allegations by reference as if set forth herein at length.

90. The Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq*, applies to Defendants' actions and conduct because such actions and conduct pertain to transactions that were intended to result and/or resulted in the sale of goods and services to consumers.

91. Plaintiffs and each member of the Class are "consumers" within the meaning of Civil Code § 1761(d).

92. The cellular devices that are the subject of this litigation are "goods" and "services" within the meaning of Civil Code § 1761(a) and (b).

93. Defendants engaged in deceptive practices, unlawful methods of competition, unfair acts, or any combination, as defined by Civil Code § 1770, to the detriment of Plaintiffs and the Class. Plaintiffs and all other Class members have suffered and will continue to suffer harm as a proximate result of the violations of law and wrongful conduct of Defendants alleged herein.

94. Defendants used the following unfair or deceptive acts or practices in a transaction intended to result in the sale of goods to Plaintiffs, as follows:

In violation of Civil Code § 1770(a)(7), Defendants represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

In violation of Civil Code § 1770(a)(14), Defendants represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

95. In addition, Defendants concealed material information regarding the invasion of private data and actions performed on cellular devices, as set forth herein. Defendants concealed the presence of Carrier IQ's software on its customers' phones. The software works in the background and degrades the operation of the phone and depletes the battery unnecessarily. Thus, the quality of the phone was not properly characterized by Defendants. Also, Defendants failed to inform consumers and the public that the transaction involved the consumers' obligation to provide private data to carriers, which is prohibited by law. Had Defendants disclosed this material information, Defendants could

1    not have charged Plaintiffs and Class members what they charged for their cellular

2    devices, and Carrier IQ could not have received the sums it did for transmission of data.

3        96.    Defendants' acts and omissions and unfair business practices occurred in the

4    course of selling consumer products and violat Civil Code § 1770(a).

5        97.    By this action, Plaintiffs and the Class seek injunctive relief and all other

6    relief that this Court deems just and proper.

7                              **PRAYER FOR RELIEF**

8        WHEREFORE, Plaintiffs on behalf of themselves and all other similarly situated,

9    pray for judgment against Defendants as follows:

10       A.     Certify this case as a class action on behalf of the Class as defined above,

11   appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel.

12       B.     Declare that the actions of Defendants, as set out above, violate the following:

13           i.     Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*;

14           ii.    Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*;

15           iii.   California's Computer Crime Law, Penal Code § 502, *et seq*;

16           iv.    California Invasion of Privacy Act, California Penal Code § 630, *et seq*;

17           v.     California Unfair Business Practices Act §§ 17200, *et seq.*; and

18           vi.    California Consumers Legal Remedies Act §§ 1750, *et seq.*

19       C.     Award damages, including statutory damages where applicable, to Plaintiffs

20   and Class members in an amount to be determined at trial;

21       D.     Award restitution against Defendants for all money to which Plaintiffs and the

22   Class are entitled in equity;

23       E.     Restrain Defendants, their officers, agents servants, employees, and attorneys,

24   and those in active concert or participation with them form continued access, collection

25   and transmission of Plaintiffs' and Class members' personal information via preliminary

26   and permanent injunction;

27       F.     Award Plaintiffs and the Class their reasonable litigation expenses, costs of

28   court, and attorneys' fees; and

---

G.   All other and further relief as this Court may deem just and proper.

ROSMAN & GERMAIN LLP

Dated:  December 12, 2011

_____
Daniel L. Germain (Bar No. 143334)
16311 Ventura Blvd., Suite 1200
Encino, CA  91436-2152
Telephone:  (818) 788-0877
Facsimile:  (818) 788-0885
E-Mail: R&G@Lalawyer.com

David M. Cialkowski
Brian C. Gudmundson
ZIMMERMAN REED, P.L.L.P.
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone:  (612) 341-0400
Facsimile:  (612) 341-0844
E-Mail: David.Cialkowski@zimmreed.com

Timothy G. Blood (Bar No. 149434)
Paula M. Roach (Bar No. 254142)
BLOOD HURST & O'REARDON, LLP
600 B Street, Suite 1550
San Diego, CA  92101
Telephone:  (619) 338-1100
Facsimile:  (619) 338-1101
E-Mail: TBlood@bholaw.com

*Attorneys for Plaintiffs and the proposed
Class*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: December 12, 2011

ROSMAN & GERMAIN LLP

Daniel L. Germain (Bar No. 143334)
16311 Ventura Blvd., Suite 1200
Encino, CA 91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: R&G@Lalawyer.com

David M. Cialkowski
Brian C. Gudmundson
**ZIMMERMAN REED, P.L.L.P.**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
E-Mail: David.Cialkowski@zimmreed.com

Timothy G. Blood (Bar No. 149434)
Paula M. Roach (Bar No. 254142)
**BLOOD HURST & O'REARDON, LLP**
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
E-Mail: TBlood@bholaw.com

*Attorneys for Plaintiffs and the proposed
Class*



# Exhibit 2:

## *Olivares, et al. v. Carrier IQ, Inc., et al.*

**U.S. District Court**
**California Northern District (San Jose)**
**CIVIL DOCKET FOR CASE #: 5:11-cv-06151-HRL**

Olivares et al v. Carrier IQ, Inc et al
Assigned to: Magistrate Judge Howard R. Lloyd
Demand: $5,000,000
Cause: 28:1331 Fed. Question

Date Filed: 12/06/2011
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Israel Olivares**
*individuals, on behalf of themselves and*
*others similarly situated*

represented by **Brian R Strange**
Strange and Carpenter
12100 Wilshire Boulevard Suite 1900
Los Angeles, CA 90025
310-207-5055
Fax: 310-826-3210
Email: lacounsel@earthlink.net
*ATTORNEY TO BE NOTICED*

**Joseph H Malley**
Law Office of Joseph H. Malley, PC
1045 North Zang Boulevard
Dallas, TX 75208
214-943-6100
Email: malleylaw@gmail.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Clarissa Portals**
*individuals, on behalf of themselves and*
*others similarly situated*

represented by **Brian R Strange**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph H Malley**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dao Phong**

represented by **Mark Punzalan**
Finkelstein, Thompson LLP
100 Bush Street
Suite 1450
San Francisco, CA 94104
415-398-8700
Fax: 415-398-8704
Email: mpunzalan@finkelsteinthompson.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Carrier IQ, Inc**
*a Delaware corporation*

**Defendant**

**HTC America, Inc.**
*a Washington corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/06/2011 | 1 | **Alleged Class Action Complaint** (Summons Issued); jury demand; against Carrier IQ, Inc, HTC America, Inc. ( Filing fee $ 350, receipt number 54611010954). Filed by Clarissa Portals, Israel Olivares. (bw, COURT STAFF) (Filed on 12/6/2011) (Additional attachment(s) added on 12/12/2011: #_1 Civil Cover Sheet) (bw, COURT STAFF). (Entered: 12/08/2011) |
| 12/06/2011 | 2 | Summons Issued as to Carrier IQ, Inc, HTC America, Inc.. (bw, COURT STAFF) (Filed on 12/6/2011) (bw, COURT STAFF). (Entered: 12/08/2011) |
| 12/06/2011 | 3 | ADR SCHEDULING ORDER: Case Management Statement due by 2/28/2012. Case Management Conference set for 3/6/2012 01:30 PM in Courtroom 2, 5th Floor, San Jose. (bw, COURT STAFF) (Filed on 12/6/2011) (bw, COURT STAFF). (Entered: 12/08/2011) |
| 12/06/2011 |  | CASE DESIGNATED for Electronic Filing. (bw, COURT STAFF) (Filed on 12/6/2011) (Entered: 12/08/2011) |
| 12/19/2011 | 4 | Administrative Motion to Consider Whether Cases Should be Related **(Kenny et al. v. Carrier IQ, Inc., et al. Case No. CV-11-5774-EJD Steiner v. Carrier IQ, Inc., Case No. CV-11-5802-EJD Silvera et al. v. Carrier IQ, Inc. et al., Case No. CV-11-5821-EJD Thomas et al. v. Carrier IQ, Inc. et al., Case No. CV-11-5819 LHK Pipkin et al. v. Carrier IQ, Inc. et al., Case No. CV-11-5820 EJD Patrick et al. v. Carrier IQ, Inc. et al., Case No. CV-11-5842-EJD Padilla et al. v. Carrier IQ, Inc. et al, Case No. CV-11-5975-EJD, Olivares et al. v. Carrier IQ, Inc. et al., Case No. CV-11-6151 HRL Stoltenburg et al. v. Carrier IQ, Inc. et al., ase No. CV-11-6160-PSG Medine et al. v. Carrier IQ, Inc. et al., Case No. CV-11-6178-HSG Fischer et al. v. Carrier IQ, Inc. et al., Case No. CV-11-6199-HRL Castro v. Carrier IQ, Inc. et al., Case No. CV-11-6201-PSG Gonzalez v. Carrier IQ, Inc. et al., Case No. CV-11-6202-HRL House v. Carrier IQ, Inc. et al., Case No. CV-11-6200-LHK Lavertue v. Carrier IQ, Inc. et al., Case No. CV-11-6196-MEJ Shumate v. Carrier IQ, Inc., Case No. CV-11-6281-HRL, Wadler v. Carrier IQ, Inc., Case No. CV-11-6278-PSG, Schwartz v. Carrier IQ, Inc., Case No. CV-11-6280-HRL, Massey v. Carrier IQ, Inc. Case No. CV-11-6279-HRL)** filed by Dao Phong. (Attachments: #_1 Declaration, #_2 Exhibit, #_3 Exhibit, #_4 Exhibit, #_5 Exhibit, #_6 Exhibit, #_7 Exhibit, #_8 Exhibit, #_9 Exhibit, #_10 Exhibit, #_11 Exhibit, #_12 Exhibit, #_13 Exhibit, #_14 Exhibit, #_15 Exhibit, #_16 Exhibit, #_17 Exhibit, #_18 Exhibit, #_19 Exhibit, #_20 Exhibit, #_21 Exhibit, #_22 Certificate/Proof of Service) (Punzalan, Mark) (Filed on 12/19/2011) Modified on 12/20/2011 (bw, COURT STAFF). (Entered: 12/19/2011) |

1  STRANGE & CARPENTER
   Brain R. Strange (Cal. Bar. No. 103252)
2  LACounsel@earthlink.net
   12100 Wilshire Boulevard, Suite 1900
3  Los Angeles, CA 90025
   Telephone: (310) 207-5055
4  Facsimile: (310) 826-3210

5  LAW OFFICE OF JOSEPH MALLEY E-filing
   Joseph H. Malley (*pro hac vice* pending)
6  malleylaw@gmail.com
7  1045 North Zang Blvd
   Dallas, TX 75208
8  Telephone: (214) 943-6100

9  Attorneys for Plaintiffs

**ORIGINAL FILED**

DEC – 6 2011

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

ADR

10

11            IN THE UNITED STATES DISTRICT COURT

12         FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

*By fax*

14                                   **CV11-06151**          HRL

| | |
|---|---|
| 15  ISRAEL OLIVARES; CLARISSA PORTALES; individuals, on behalf of themselves and others similarly situated, | CASE No. |
| 16 | DEMAND FOR JURY TRIAL |
| 17                Plaintiffs, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF: |
| 18  v. | |
| 19  CARRIER IQ, INC., a Delaware Corporation; HTC AMERICA, INC., a Washington corporation; | 1. ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C. §2510; |
| 20 | 2. STORED COMMUNICATIONS ACT, 18 U.S.C. §2701; |
| 21 | 3. CONSUMER LEGAL REMEDIES ACT, ("CLRA") CALIFORNIA CIVIL CODE § 1750; |
| 22                Defendant. | |
| 23 | 4. UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200; |
| 24 | 5. CALIFORNIA'S COMPUTER CRIME LAW, PENAL CODE §502; |
| 25 | |
| 26 | 6. CALIFORNIA INVASION OF PRIVACY ACT, PENAL CODE §630; |
| 27 | 7. SONG-BEVERLY WARRANTY ACT, CALIFORNIA CIVIL CODE § 1792 |
| 28 | 8. TEXAS DECEPTIVE TRADE PRACTICES ACT, TEXAS |

BUSINESS AND COMMERCE CODE
§ 17.41
9. BREACH OF EXPRESS WARRANTY
10. BREACH OF IMPLIED WARRANTY
11. NEGLIGENCE
12. TRESPASS TO PERSONAL
     PROPERTY/ CHATTELS
13. CONVERSION
14. UNJUST ENRICHMENT

1.      Plaintiffs, Israel Olivares, and Clarissa Portales, (collectively, "Plaintiffs"), by and through their attorneys Strange & Carpenter, and Law Office of Joseph H. Malley, P.C., bring this action on behalf of themselves and all others similarly situated, against Carrier IQ, Inc. ("Carrier IQ") and HTC, America, Inc. ("HTC"), (collectively with Carrier IQ, "Defendants"). Plaintiffs' allegations as to themselves and their own actions, as set forth herein, are based upon their information and belief and personal knowledge. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) as set forth below.

## I.   NATURE OF THE ACTION

2.      Plaintiffs bring this consumer Class Action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) on behalf of themselves and a proposed class of similarly situated consumers ("Class Members") who purchased an HTC mobile device on which Carrier IQ's software, "HTC IQAgent," was installed, without notice or consent of Plaintiffs. This HTC IQAgent software was designed by Carrier IQ and customized by HTC in order to log and collect confidential, unencrypted user data including but not limited to (1) the contents of incoming text messages; (2) the URLs of websites visited by the user; and (3) the user's GPS coordinates; among other private and personally-identifying data. HTC IQAgent records this confidential data on a user's mobile device in an unencrypted format so that *any* device software or applications with log file permission can access and review it. Carrier IQ and HTC also have access to this confidential data and can transmit the data from a user's mobile device to remote servers at any time via hidden "text requests" sent to a user's mobile device by Carrier IQ, HTC or other authorized third parties. HTC IQAgent logs the hidden text

1  requests and the confidential data silently so that a user has no idea that data is being collected

2  and transmitted. HTC IQAgent is preinstalled on HTC's mobile devices so that data logging

3  begins the moment a user purchases and turns on the device, without notice to or consent from

4  the user. Because the software is preinstalled by HTC and runs as part of the device operating

5  system, data is automatically collected and can be transmitted via wireless internet or other

6  means, even if the device user has no carrier contract and the mobile device is not connected to

7  a mobile network. Finally, HTC IQAgent runs continuously and depletes resources on the

8  mobile device without notice to or authorization of the user, even when the mobile device is

9  not being used. The resources depleted by HTC IQAgent without notice or authorization

10  include (1) battery power; (2) device memory; (3) CPU; (4) bandwidth; and (5) text messages.

11  A user cannot stop the HTC IQAgent software from running under any circumstances, and a

12  user is unable to remove HTC IQAgent from the device without voiding the manufacturer's

13  warranty.

14

15  3.  Because of Defendants' actions, Plaintiffs and Class Members are victims of

16  unfair, deceptive, and unlawful business practices; wherein their privacy, financial interests,

17  and security rights, were violated by Carrier IQ and HTC. Plaintiffs and Class Members were

18  financially harmed by the Defendants when they purchased the HTC mobile devices with HTC

19  IQAgent, and Plaintiffs would not have purchased those devices if they had known that

20  Defendants' software could access, collect, transmit, analyze, store, and provide their

21  confidential unencrypted data to *any* device software or applications with log file permission

22  without Plaintiffs' knowledge of permission. Plaintiffs and Class Members were also harmed

23  by HTC and Carrier IQ's unauthorized use of their mobile device battery power, device

24  memory, CPU, bandwidth and text messages.

25  4.  HTC manufactured and sold to Plaintiffs and Class Members without notice, a

26  defective product that included HTC IQAgent, specially customized by HTC for use on its

27  mobile device. HTC acted individually, and in concert with, Carrier IQ to gain unauthorized

28  access to, log, collect, and transmit Plaintiffs' and Class Members' confidential, unencrypted

data and to provide third-party access to this data. HTC IQAgent is a native HTC application

1  that was installed on HTC mobile devices with the knowledge of HTC.

2      5.    Carrier IQ acted independently, and in concert with HTC, knowingly

3  authorizing, directing, ratifying, acquiescing in, or participating in the conduct alleged herein.

4      6.    Carrier IQ individually, and in concert with HTC has been systematically

5  engaged in and facilitated a covert operation of logging and tracking Plaintiffs' and Class

6  Members' confidential, unencrypted user data and utilizing Plaintiffs' and Class Members'

7  mobile device resources, violating one or more of the following:

8          (a)    ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C.

9  §2510;

10         (b)    STORED COMMUNICATIONS ACT, 18 U.S.C. §2701;

11         (c)    CONSUMER LEGAL REMEDIES ACT, ("CLRA") CALIFORNIA

12  CIVIL CODE § 1750;

13         (d)    UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND

14  PROFESSIONS CODE §17200;

15         (e)    CALIFORNIA'S COMPUTER CRIME LAW, PENAL CODE §502;

16

17         (f)    CALIFORNIA INVASION OF PRIVACY ACT, PENAL CODE

18  §630;

19         (g)    SONG-BEVERLY WARRANTY ACT, CALIFORNIA CIVIL CODE

20  § 1792

21         (h)    TEXAS  DECEPTIVE  TRADE  PRACTICES  ACT,  TEXAS

22  BUSINESS AND COMMERCE CODE § 17.41

23         (i)    BREACH OF EXPRESS WARRANTY

24         (j)    BREACH OF IMPLIED WARRANTY

25         (k)    NEGLIGENCE

26         (l)    TRESPASS TO PERSONAL PROPERTY/ CHATTELS

27         (m)    CONVERSION

28         (n)    UNJUST ENRICHMENT

II.    **JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Defendants; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

8. Venue is proper in this District under 28 U.S.C. §1391(b) and (c) against Defendants. A substantial portion of the events, conduct and omissions giving rise to the violations of law complained of herein occurred in this District. Carrier IQ's principal executive offices and headquarters are located in this District at 1200 Villa Street, Suite 200, Mountain View, CA 94041.

9. This Court has personal jurisdiction over the Defendants because Carrier IQ maintains its corporate headquarters in, and the events, conduct and omissions giving rise to the violations of law complained herein occurred in California. HTC conducts business in California and engaged in the acts alleged herein in California.

10. This Court also has subject matter jurisdiction over all causes of action and the Defendants implicated therein pursuant to 28 U.S.C. §1332(d), and because this action arises in part under a federal statute and this Court has jurisdiction pursuant to 18 U.S.C. §2710(c) which confers jurisdiction in the United States District Court for actions related to the Electronic Communications Privacy Act 18 U.S.C. §2510 and the Stored Communications Act, 18 U.S.C. §2701.

11. **INTRADISTRICT ASSIGNMENT:** Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division as it arises from Santa Clara County where Defendant Carrier IQ is headquartered and where the actions alleged as the basis of this claim took place.

**III. PARTIES**

12. Plaintiff Israel Olivares ("Olivares") is a citizen and resident of California, (San Diego County, California). On information and belief, Olivares incorporates all allegations within this complaint. Olivares is a representative of the class ("Class"), as defined within the Class Allegations. In or around February 2011, Olivares purchased an HTC EVO 4G mobile

1   device that was preinstalled with HTC IQAgent, and used such mobile device on one or more

2   occasions during the class period in California.

3        13.   Olivares was not aware that HTC IQAgent was installed on his HTC device,

4   and was not aware that every time he used his HTC device, HTC IQAgent was logging and

5   collecting his confidential incoming text messages; the URLs of websites he visited; and his

6   actual GPS coordinates; among other private and personally-identifying data. He also was not

7   aware that HTC IQAgent made this confidential, unencrypted data available on Olivares's

8   mobile device log so that *any* device software or applications with log file permission could

9   access it. Finally, Olivares was not aware that HTC IQAgent depleted his mobile device

10   battery power, device memory, CPU, bandwidth and text messages, even while he was not

11   using his device. The HTC IQAgent software does not show up under the application launch

12   list on Olivares's device.

13        14.   Plaintiff Clarissa Portales ("Portales") is a citizen and resident of Dallas, Texas,

14   (Dallas County, Texas). On information and belief, Portales incorporates all allegations within

15   this complaint. Portales is a representative of the Class, as defined within the Class Allegations.

16   On January 2011, Portales purchased a an HTC EVO 4G mobile device that was preinstalled

17   with HTC IQAgent, and used such mobile device on one or more occasions during the class

18   period in Texas.

19

20        15.   Portales was not aware that HTC IQAgent was installed on her HTC device, and

21   was not aware that every time she used her HTC device, HTC IQAgent was logging and

22   collecting her confidential incoming text messages; the URLs of websites she visited; and her

23   actual GPS coordinates; among other private and personally-identifying data. She also was not

24   aware that HTC IQAgent made this confidential, unencrypted data available on Portales's

25   mobile device log so that *any* device software or applications with log file permission could

26   access it. Finally, Portales was not aware that HTC IQAgent depleted her mobile device battery

27   power, device memory, CPU, bandwidth and text messages, even while she was not using her

28   device. The HTC IQAgent software does not show up under the application launch list on

Portales's device.

16.    Carrier IQ is a Delaware corporation that maintains and has maintained at all relevant times its headquarters at 1200 Villa Street, Suite 200, Mountain View, CA, 94041 (Santa Clara County, California). Carrier IQ does business throughout the United States, and in particular, does business in the State of California and in this County.

17.    HTC is a Washington corporation that maintains and has maintained at all relevant times its headquarters at 13920 SE Eastgate Way, Bellevue, Washington 98005. HTC does business throughout the United States, and in particular, does business in the State of California and in this County.

## IV.   PLAINTIFFS' EXPERIENCE

18.    At all relevant times herein, Plaintiffs were and are residents of California and Texas. During the class period, Plaintiffs owned and operated one or more HTC mobile devices installed with HTC IQAgent without Plaintiffs' knowledge.

19.    On one or more occasions during the class period, Plaintiffs accessed and used their HTC mobile devices to receive text messages and visit websites in their cities of residence and elsewhere.

20.    During the relevant class period, the HTC IQAgent software was "hidden" and did not appear on application launch menu on Plaintiffs' HTC mobile devices. During the relevant class period, Plaintiffs were unaware that HTC IQAgent populated and logged incoming text messages, visited URLs and GPS location data on their device log files. Plaintiffs were also unaware that this confidential data was available, unencrypted, to all software and programs with log file permission running on their devices. Additionally, they were unaware that HTC IQAgent had the mechanisms to, and did, transmit user data from Plaintiffs' devices to remote servers via periodic scheduling, WAP push requests, and text requests.

21.    During the relevant class period, HTC IQAgent, customized in part by HTC, was "hidden" and did not appear on the launch list of applications and software installed on Plaintiffs' HTC mobile devices.

22.    In or around November 2011, Plaintiffs became aware of information related to

1   the tracking activities of Carrier IQ and HTC. Plaintiffs downloaded a "log collector"

2   application to determine whether their mobile device possessed the Carrier IQ software. The

3   log collector is an application that collects a device log identifying software and applications

4   are running on a mobile device. Plaintiffs then accessed their HTC mobile device and engaged

5   in basic user activity such as doing websearches, accessing their Facebook accounts, updating

6   their Facebook "status," calling friends, sending text messages, and downloading applications.

7       23.    Olivares's log revealed the data collection and transmission actions of Carrier

8   IQ within his HTC mobile device which existed without notice or authorization, (highlighting

9   added):

```
11-21 13:10:03.692 V/AgentService_J( 237):
Action[1026]:com.htc.android.iqagent.action.ui08
11-21 13:10:10.168 V/AgentService_J( 237):
Action[1027]:com.htc.android.iqagent.action.ui19
11-21 13:10:10.358 V/AgentService_J( 237):
Action[1028]:com.htc.android.iqagent.action.ui19
11-21 13:10:15.463 V/AgentService_J( 237):
Action[1029]:com.htc.android.iqagent.action.ui19
11-21 13:10:16.304 V/AgentService_J( 237):
Action[1030]:com.htc.android.iqagent.action.ui19
11-21 13:10:18.566 V/AgentService_J( 237):
Action[1031]:com.htc.android.iqagent.action.ui19
11-21 13:10:18.596 V/AgentService_J( 237):
Action[1032]:com.htc.android.iqagent.action.ui19
11-21 13:10:19.397 V/AgentService_J( 237):
Action[1033]:com.htc.android.iqagent.action.ui08
11-21 13:10:28.336 V/AgentService_J( 237):
Action[1034]:com.htc.android.iqagent.action.ui08
11-21 13:10:30.628 V/AgentService_J( 237):
Action[1035]:com.htc.android.iqagent.action.ui08
11-21 13:10:32.820 V/AgentService_J( 237):
Action[1036]:com.htc.android.iqagent.action.ui08
11-21 13:10:35.062 V/AgentService_J( 237):
Action[1037]:com.htc.android.iqagent.action.ui08
11-21 13:10:35.072 V/AgentService_J( 237):
Action[1038]:com.htc.android.iqagent.action.ui08
11-21 13:10:44.011 V/AgentService_J( 237):
Action[1039]:com.htc.android.iqagent.action.ui08
11-21 13:10:46.263 V/AgentService_J( 237):
Action[1040]:com.htc.android.iqagent.action.ui08
11-21 13:10:48.505 V/AgentService_J( 237):
Action[1041]:com.htc.android.iqagent.action.ui08
11-21 13:10:50.737 V/AgentService_J( 237):
```

1 Action[1042]:com.htc.android.iqagent.action.ui08
11-21 13:10:52.960 V/AgentService_J( 237):
2 Action[1043]:com.htc.android.iqagent.action.ui15
3 11-21 13:10:52.970 V/AgentService_J( 237):
Action[1044]:com.htc.android.iqagent.action.ui08
4 11-21 13:10:53.060 V/AgentService_J( 237):
Action[1045]:com.htc.android.iqagent.action.ui15
5 11-21 13:10:58.415 V/AgentService_J( 237):
6 Action[1046]:com.htc.android.iqagent.action.ui08
11-21 13:10:59.616 V/AgentService_J( 237):
7 Action[1047]:com.htc.android.iqagent.action.ui08
11-21 13:11:04.211 V/AgentService_J( 237):
8 Action[1048]:com.htc.android.iqagent.action.ui08
9 11-21 13:11:12.959 V/AgentService_J( 237):
Action[1049]:com.htc.android.iqagent.action.ui13
10 11-21 13:11:13.480 V/AgentService_J( 237):
Action[1050]:com.htc.android.iqagent.action.ui13
11 11-21 13:11:21.547 V/AgentService_J( 237):
12 Action[1051]:com.htc.android.iqagent.action.ui19
11-21 13:11:21.598 V/AgentService_J( 237):
13 Action[1052]:com.htc.android.iqagent.action.ui13
11-21 13:11:22.278 V/AgentService_J( 237):
14 Action[1053]:com.htc.android.iqagent.action.ui08
15 11-21 13:11:22.288 V/AgentService_J( 237):
Action[1054]:com.htc.android.iqagent.action.ui19
16 11-21 13:11:22.829 V/AgentService_J( 237):
Action[1055]:com.htc.android.iqagent.action.ui15
17 11-21 3:11:24.340 V/AgentService_J( 237):
18      Action[1056]:com.htc.android.iqagent.action.ui08

19      24.    Portales's log revealed the data collection and transmission actions of Carrier IQ

20 within her HTC mobile device which existed without notice or authorization, (highlighting

21 added):

22 11-21 12:03:47.039 V/AgentService_J(16252):
Action[441]:com.htc.android.iqagent.action.ui15
23 11-21 12:03:47.069 V/AgentService_J(16252):
Action[442]:com.htc.android.iqagent.action.ui02
24 11-21 12:03:47.079 V/AgentService_J(16252):
25 Action[443]:com.htc.android.iqagent.action.ui15
11-21 12:03:47.079 V/AgentService_J(16252):
26 Action[444]:com.htc.android.iqagent.action.ui15
27 11-21 12:03:47.079 V/AgentService_J(16252):
Action[445]:com.htc.android.iqagent.action.ui15
28 11-21 12:03:47.079 V/AgentService_J(16252):
Action[446]:com.htc.android.iqagent.action.ui19
11-21 12:03:47.220 V/AgentService_J(16252):

1  Action[447]:com.htc.android.iqagent.action.ui08
   11-21 12:03:49.222 V/AgentService_J(16252):
2  Action[448]:com.htc.android.iqagent.action.ui08
   11-21 12:03:50.032 V/AgentService_J(16252):
3  Action[449]:com.htc.android.iqagent.action.ui13
   11-21 12:03:50.243 V/AgentService_J(16252):
4  Action[450]:com.htc.android.iqagent.action.ui15
   11-21 12:03:50.993 V/AgentService_J(16252):
5  Action[451]:com.htc.android.iqagent.action.ui19
   11-21 12:03:51.424 V/AgentService_J(16252):
6  Action[452]:com.htc.android.iqagent.action.ui19
   11-21 12:03:51.454 V/AgentService_J(16252):
7  Action[453]:com.htc.android.iqagent.action.ui08
   11-21 12:03:53.706 V/AgentService_J(16252):
8  Action[454]:com.htc.android.iqagent.action.ui08
   11-21 12:03:55.948 V/AgentService_J(16252):
9  Action[455]:com.htc.android.iqagent.action.ui08
   11-21 12:04:02.665 V/AgentService_J(16252):
10 Action[456]:com.htc.android.iqagent.action.ui08
   11-21 12:04:06.418 V/AgentService_J(16252):
11 Action[457]:com.htc.android.iqagent.action.ui19
   11-21 12:04:06.428 V/AgentService_J(16252):
12 Action[458]:com.htc.android.iqagent.action.ui13
   11-21 12:04:06.488 V/AgentService_J(16252):
13 Action[459]:com.htc.android.iqagent.action.ui15
   11-21 12:04:06.659 V/AgentService_J(16252):
14 Action[460]:com.htc.android.iqagent.action.ui19
   11-21  2:04:09.401 V/AgentService_J(16252):
15 Action[461]:com.htc.android.iqagent.action.ui08
16
17
18

19     25.    Plaintiffs consider information about their received text messages, visited

20 websites and GPS location to be in the nature of confidential and personal information that

21 they protect from disclosure, including by controlling their mobile device's privacy settings for

22 acceptance or rejection. Plaintiffs were not made aware by Defendants of the existence of HTC

23 IQAgent on their mobile devices or the logging, collection and transmission of their mobile

24 device data.

25     26.    Plaintiffs also consider their device battery power, device memory, CPU,

26 bandwidth and text messages to be valuable personal property that they protect from

27 unauthorized use by third parties, including by controlling what software and applications have

28 access to those resources. Plaintiffs were not made aware by Defendants of the existence of

HTC IQAgent on their mobile devices or the depletion of their device battery power, device memory, CPU, bandwidth and text messages by that software.

27.    It is Plaintiffs' belief that The Carrier IQ software, customized in part by HTC, was logging, collection and transmission of confidential user data on their mobile devices permitted one or more objects within their mobile devices to be used for tracking and analysis by Defendants and/or third parties, thus their mobile device data was obtained in an effort to monitor and profile their mobile device activities. Plaintiffs did not receive notice of the installation of a tracking identifier, did not consent to its installation, and did not want a tracking identifier to be installed on their mobile device. Moreover, Plaintiffs did not authorize Defendants to log, collect, transmit, or store their confidential mobile device data without notice or express consent. Such software was running on Plaintiffs mobile device and collecting and transmitting Plaintiffs data without notice or authorization, utilizing Plaintiffs battery power, device memory, CPU, bandwidth, and limited text messages without notice or authorization, even when Plaintiffs stopped actively using the device.

28.    In selecting the HTC mobile device over the service and goods of other competing mobile device manufacturers, Plaintiffs reasonably expected that their confidential user data would not be accessed, logged and transmitted to third parties without their knowledge and consent. They also reasonably expected that their mobile device resources would not be depleted without their knowledge or control.

29.    Had Plaintiffs known that the HTC devices they purchased would include software that provided third party access to their confidential user data and their mobile device resources without notice to or authorization by Plaintiffs, Plaintiffs would have not purchased those devices.

30.    Plaintiffs were harmed by Defendants' practices, including but not limited to the following:

(a)    Costs to purchase the defective HTC mobile device;

(b)    Violations of Plaintiffs' legally protected federal, state and common law rights of privacy, especially related to unencrypted logging, storage and transmission of

1   Plaintiffs' confidential user data;

2          (c)    Time and expense to remedy the effects of Defendants' actions;

3          (d)    Time and expense to repair Plaintiffs' mobile devices and remedy the

4   impaired operability caused by the Defendants;

5          (e)    Loss of property due to the inability to re-sell Plaintiffs' and Class

6   Members' mobile devices due to the Carrier IQ application; and

7          (f)    Financial harm by the Defendants' unauthorized use of Plaintiffs' and

8   mobile device resources during the unauthorized process of logging and transmitting user

9   data.

10      31.    It is Plaintiffs' belief that HTC IQAgent's logging, collection and transmission

11   of confidential user data on their mobile devices permitted one or more objects within their

12   mobile devices to be used for tracking and analysis by Defendants and/or third parties, thus

13   their mobile device data was obtained in an effort to monitor and profile their mobile device

14   activities. Plaintiffs did not receive notice of the installation of a tracking identifier, did not

15   consent to its installation, and did not want a tracking identifier to be installed on their mobile

16   device. Moreover, Plaintiffs did not authorize Defendants to log, collect, transmit, or store their

17   confidential mobile device data without notice or express consent.

18

19      32.    Defendants' business practices unfairly wrested from Plaintiffs control over

20   their user data privacy and control over their device resources. Defendants' logging, collection

21   and unencrypted disclosure of Plaintiffs' confidential user data violates user expectations,

22   diminishes user privacy, and contradicts the Manufacturer's Warranty. Defendants caused

23   harm and damages to Plaintiffs' finite device resources, thus preventing Plaintiffs to use the

24   devices for their intended purposes and resulting in instability issues.

25   **V.   COMMON EXPERIENCES BETWEEN PLAINTIFFS AND CLASS MEMBERS**

26      33.    At all relevant times herein, the sequence of events, and consequences common

27   to Plaintiffs and Class Members, made the basis of this action, include, but are not limited to

28   the following:

          (a)    Plaintiffs and Class Members are individuals in the United States who

1   purchased and used an HTC mobile device that had HTC IQAgent software installed and

2   customized by HTC, without notice or consent;

3         (b)    HTC a mobile device manufacturer had entered into a legally binding

4   contract with Carrier IQ to host the HTC IQAgent software on its mobile device.

5         (c)    Carrier IQ was aware that HTC had preinstalled HTC IQAgent on

6   Plaintiffs' and Class Members' mobile devices, aware. That HTC had customized y HTC

7   IQAgent, aware that HTC IQAgent was "hidden" and did not appear in the launch list of

8   applications installed on Plaintiffs' and Class Members' mobile devices;

9         (d)    Plaintiffs and Class Members accessed and used their HTC mobile

10   devices that had the preinstalled or uploaded HTC IQAgent software application;

11         (e)    Carrier IQ collected confidential user data from Plaintiffs' and Class

12   Members' mobile devices without the consent of, or notice to, Plaintiffs and Class Members;

13         (f)    Carrier IQ sent Plaintiffs' and Class Members' unencrypted

14   confidential mobile device data to its servers located in California without notice to or

15   authorization from Plaintiffs and Class Members;

16

17         (g)    HTC transmitted, and/or allowed access to Plaintiffs' and Class

18   Members' confidential mobile device data, without notice or authorization, to HTC and *any*

19   software with log file access on Plaintiffs' and Class Members' devices. Upon information

20   and belief, this confidential data was unencrypted when stored in the log file and during at

21   least some part of its transmission;

22         (h)    Carrier IQ created a database related to Plaintiffs' and Class Members'

23   mobile device data and activities, to assist the Defendant's tracking scheme. Such tracking

24   could not be detected, managed or deleted, and provided, in whole or part, the collective

25   mechanism to track Plaintiffs and Class Members, without notice or consent;

26         (i)    Carrier IQ conducted systematic and continuous surveillance of the

27   Plaintiffs' and Class Members' mobile device activity from its headquarters in California

28   which continues to date;

        (j)    Carrier IQ copied, used, and stored Plaintiffs' and Class Members'

1    mobile device data in California after it knowingly accessed, without authorization,

2    Plaintiffs' and Class Members' mobile devices;

3           (k)    Carrier IQ obtained and retained the data in California for a period that

4    far exceeded the purpose claimed by Carrier IQ for obtaining the data;

5           (l)    Carrier IQ obtained individually, and in concert with HTC, Plaintiffs'

6    and Class Members' confidential user data, derived, in whole or part, from its monitoring the

7    mobile device activities of Plaintiffs and Class Members. This sensitive information includes

8    but is not limited to incoming text messages, visited URLs and GPS coordinates;

9           (m)    HTC and Carrier IQ failed to notify and warn Plaintiffs and Class

10   Members of Carrier IQ's logging and tracking activities involving their mobile devices

11   before, during, or after the unauthorized practices so that Plaintiffs and Class Members were

12   unable to take appropriate actions to opt-out of the unauthorized surveillance by Defendants

13   and other third parties;

14          (n)    HTC failed to block access to, and void the licensing agreements of

15   Carrier IQ after it received notice of Carrier IQ's tracking actions made the basis of this

16   action;

17

18          (o)    Carrier IQ and HTC failed to provide any terms of service or privacy

19   policy related to the use of HTC IQAgent for tracking Plaintiffs' and Class Members' mobile

20   activities, or provide an updated privacy policy or any notice alerting users of its activity,

21   made the basis of this action so that Plaintiffs and Class Members had no notice of such

22   activities, nor the ability to mitigate their harm and damage after the fact;

23          (p)    Defendants converted Plaintiffs' and Class Members' mobile device

24   data, including but not limited to their incoming text messages, visited URLs and GPS

25   coordinates;

26          (q)    Defendants depleted Plaintiffs' and Class Members' mobile device

27   resources while running the HTC IQAgent software, including the device battery power,

28   device memory, CPU, bandwidth and text messages.

     34.    Plaintiffs and Class Members involved with the Defendants were harmed by

1  Defendants' practices, including but not limited to the following:

2      (a)    Violations of Plaintiffs' legally protected federal, state and common

3  law rights of commerce and privacy, especially related to unencrypted transmission of

4  Plaintiffs and Class Members' confidential and sensitive user data;

5      (b)    Financial Harm due to the costs to purchase the defective HTC mobile

6  device;

7      (c)    Financial Harm due to the time and expense to remedy the effects of

8  Defendants' actions;

9      (d)    Financial Harm due to the time and expense to repair Plaintiffs'

10  mobile devices and remedy the impaired operability caused by the Defendants;

11      (e)    Financial Harm due to the loss of property due to the inability to re-

12  sell Plaintiffs' and Class Members' mobile devices due to the Carrier IQ application;

13

14      (f)    Financial Harm due to the loss of property due to the unauthorized

15  access and use of Plaintiffs' and Class Members' confidential user data, depriving Plaintiffs

16  and Class Members of such possession and use;

17      (g)    Financial Harm due to the Defendants' unauthorized use of Plaintiffs'

18  and Class Member's mobile device's battery power, device memory, CPU, bandwidth and

19  text messages during the unauthorized process of obtaining user data;

20  **VI.    FACTUAL ALLEGATIONS**

21    **A. <u>Background</u>**

22      35.    On October 26, 1999 the Wireless Communication and Public Act of 1999 was

23  enacted and became known as the "e911 Act." It was an amendment to the Telecommunication

24  Act of 1996. The purpose of the bill was to promote and enhance public safety through the use

25  of 911 as universal assistance number. The Federal Law mandated that mobile phones be

26  embedded with a Global Positioning System ("GPS") chip, which could calculate a user's

27  coordinates to within a few yards by receiving signals from satellites. This law enacted to aid

28  those in harm's way, resulted in the computing industry developing hardware and software to

assist in the development of this technology or mobile devices provided Carrier IQ the impetus

1  to originate a business plan to take advantage of the benefit of embedded GPS chips in all

2  mobile phones for its own commercial benefit:

3          This confluence of circumstances and events— rapid adoption of new
        wireless technologies, improved resiliency of service, increased data
4          transmission rates, the e911 law requiring homing chips, and market
        precedents which show that mobile device users are willing to pay for
5          wireless services or applications—establish the feature-rich wireless
        station as an increasingly logical and compelling channel for the free
6          flow of communications, information, entertainment and commerce.

7

8  United States Patent No.: US 7,609,650 B2, COLLECTION OF DATA AT TARGET

9  WIRELESS DEVICES USING DATA COLLECTION PROFILES, Assignee: Carrier IQ, Inc.,

10  Mountain View, CA (US), Filed: July 5, 2005.

11        36.     Carrier IQ's software is reportedly installed in excess of one hundred and fifty

12  million (150,000,000) mobile devices, including mobile devices manufactured by HTC. These

13  devices installed with HTC IQAgent inherently defective, and Defendants falsely advertised,

14  marketed and distributing these mobile devices, without disclosure of the material facts about

15  the defect, misrepresenting the performance of the devices, violating express and implied

16  warranties, thus rendering the mobile devices unable to be used for their intended purposes.

17  Such activities resulted in a pattern of covert mobile device surveillance, wherein Defendants

18  installed HTC IQAgent on Plaintiffs' and Class Members' mobile device without authorization

19  and consent, thereby committing unauthorized access, collection, storage, and use of, the

20  mobile device and data derived from the Plaintiffs' and Class Members' use of the mobile

21  devices and transmitting information, code, and commands to collect, monitor, and remotely

22  store non-anonymized Plaintiffs' and Class Members' confidential mobile device data.

23  Defendants unauthorized access of this confidential, unencrypted data also allowed access to

24  *all* software and applications with log file access so that Plaintiffs' and Class Members' data

25  could be transmitted by multiple unknown parties at any time, *like a pac-man creeping 150*

26  *million mobile phones and "calling home."*

27        37.     The HTC-version of the software, HTC IQAgent, is currently preinstalled by

28  HTC on its Carrier IQ-enabled mobile devices and was also installed via software updates on

1    older HTC devices.

2    **B. Carrier IQ: " See What Content They Consume Even Offline"**

3         38.     According to Carrier IQ, the software is designed to monitor, manage and

4    support mobile devices deployed across mobile operators, service providers and enterprises.

5    Carrier IQ's website explains:

6              [HTC IQAgent] provides a level of visibility into true customer
7              experience that was, previously unavailable in the mobile industry.
               [HTC IQAgent] uses data directly from the mobile phone itself to give a
8              precise view of how users interact with both their phones and the
               services delivered through them, even if the phone is not communicating
9              with the network.

10   http://www.carrieriq.com/overview/IQInsightExperienceManager/index.htm    (last     visited

11   December 5, 2011).

12        39.     HTC IQAgent is a monitoring software that runs continuously in the

13   background reportedly to monitor device and application performance. When a particular event

14   or error associated with the device occurs, the software collects data associated with the event

15   or error and may upload it either in real time or at a later time to its data repository for analysis.

16        40.     During the use of a mobile device in a mobile communication network,

17   parameter data defining conductors associated with the mobile device and operation is

18   generated. The mobile device also generates event data defining events of the mobile device

19   for the associated mobile user. Such events are referred to as "Trigger points."

20

21        41.     HTC IQAgent is programmed to obtain qualifying characteristics which may

22   include device type, such as manufacturer and model, available memory and battery life, the

23   type of applications resident on the device, the geographical location of the device, usage

24   statistics, including a "profile" that characterizes a user's interaction with a device, and the

25   profile. Such mobile device characteristics are referred to as "metrics."

26        42.     Carrier IQ's patent for "data collection associated with components and services

27   of a wireless communication network" explains the breadth of this data collection,

28
              Carrier IQ is able to query any metric from a device. A metric can be a
              dropped call because of lack of service. The scope of the word metric is

CLASS ACTION COMPLAINT
-17-

> very broad though, including device type, such as manufacturer and
> model, available memory and battery life, the type of applications
> resident on the device, the geographical location of the device, the end
> user's pressing of keys on the device, usage history of the device,
> including those that characterize a user's interaction with a device.

http://www.faqs.org/patents/app/20110106942 (last accessed December 2, 2011).

43. Carrier IQ provides a platform for data collection and management system to

dynamically generate and download to a population of wireless devices rule-based data

collection by coding its software to function when interfaced with "trigger points" and to

obtain "metrics." Data collection profiles may be generated manually by a network

administrator, a software developer or other personnel involved in the operation of the network

or "network administrators," created offline as a portion of a data analysis solution, or

automatically generated based on network .

44. This parameter data and event data may be used to monitor a network or used

by an advertising system of the mobile communications network to select an advertisement and

the timing of the display of the advertisement, and is necessary due to the problems associated

with mobile advertising.

45. Mobile Internet advertising currently consists of streaming graphic files, in real

time, into content rendered by a user's mobile device browser. Mobile advertising systems

though lack reliable browser tracking while traditional online advertising relies on the use of

browser cookies. Implementations inherent in conventional mobile ad serving have effectively

prevented mobile advertising from being effective because of its inability to obtain mobile

device "uniqueness." In order to obtain such uniqueness, the mobile advertising industry

sought a means to obtain unique device identifiers which provide a unique reference to

individual mobile devices. Unlike traditional cookies, such identifiers are hard coded into a

user's phones software, and thus a user has no ability to disable mobile device identifiers.

46. Mobile Device "tracking" by use of mobile device identifiers is not exactly

comparable to any other type of tracking by advertising networks. This is not anonymous data

1  – but an exact ID that's unique to each physical device, and if merged, with mobile device

2  activities, including but not limited to, identifying phone accessed user's physical locations,

3  time of transmission, applications downloaded, social network IDs, providing unlimited

4  advertising opportunities (i.e., commercial value). Recording of a user's GPS, without their

5  knowledge or consent also provides a security harm to the mobile device user. When tracking a

6

7  user's location data on the mobile device, it is calculated to eight decimal points that can be far

8  more exact and accurate than any sort of geographically-based IP address look-up on the web.

9  Instead of getting a general location, location data on a GPS-enabled mobile can identify user's

10 precise latitude and longitude.

11

12      47.     The mobile device industry thus sought the technical means of synchronizing

13 tracking code so that information about individual consumer behavior on mobile devices could

14 be shared between companies and the unique device identifiers used in the majority of mobile

15 devices would be put to this purpose. Carrier IQ initial patent was able to extract unique

16 Identifiers from mobile devices:

17

18 Patent Title: COLLECTION OF DATA AT TARGET WIRELESS DEVICES USING DATA

19 COLLECTION PROFILES SYSTEMS AND METHODS FOR USING DISTRIBUTED

20 NETWORK ELEMENTS TO IMPLEMENT MONITORING AND DATA COLLECTION

21 CONCERNING SELECTED NETWORK PARAMETERS;

22 Patent No.: US 7,609,650 B2

23

24 Assignee: Carrier IQ, Inc., Mountain View, CA (US)

25 Filed: July 5, 2005

26 Inventor: Konstantin Othmer

27      48.     The dilemma facing the mobile advertising industry is that once the mobile

28 device data was extracted a system and method was needed to for wireless devices to use data

for mobile advertising. Provided such a mechanism. While Carrier IQ may have concentrated

on extraction of mobile device metrics, other companies were interested in assisting the mobile

advertising networks to use mobile device data.

### C. HTC IQAgent Technology

      i.   *HTC IQAgent Collection of Unencrypted User Data Via Device "Log File"*

49.     Plaintiffs' independent investigation of the HTC IQAgent software revealed a

number of interesting factors not found in any study or account by HTC or Carrier IQ:

50.     To monitor use of a mobile device, HTC IQAgent collects user data by utilizing

the mobile device's "log file"—a storage file that records certain actions or events that occur

on the device in real time, such as when the device is turned on or disconnected from a power

source. The log file can be examined by any software or application with Android operating

system permission to view it. Data is populated on the log file when software such as HTC IQ

Agent prompts the operating system to append an entry into the log file.

51.     HTC IQAgent specifically prompts mobile operating systems to populate log

file data for a number of confidential events, including the following:

      (a)     the contents of all incoming text messages;

      (b)     the URLs of all websites visited; and

      (c)     a user's GPS coordinates.

HTC IQAgent records this data on the log file in an unencrypted format, so the data is

available to *any* device software or applications with log file permission. In other words, *any*

software or application with Android operating system access can transmit and collect the

user's incoming text messages, visited URLs and/or GPS coordinates because of the log file

entries populated by HTC IQAgent. This log file access is typically granted to software and

applications that a user installs from the market and a user would have no reason to believe

that in granting "log file" access, he or she is also granting access to this unencrypted,

confidential data.

52.     This puts users' confidential data at great risk. Even if the authors of the software and applications running on the mobile device have the best intentions, if these authors incorporate any third party code into their own software or applications (which is quite common), the users' data is exposed to these other third parties and is jeopardized.

ii.     *HTC IQAgent Transmission of User Data Via Periodic Scheduling and Remote Triggering*

53.     HTC IQAgent provides two mechanisms to transmit confidential data off the device: periodic scheduling and remote triggering. The HTC IQAgent software provides specific "collection points" where the confidential data will be sent. One of these "collection points" encoded in the software is http://collector.sky.carrieriq.com:7001/collector/c?cm_sl=5. Data transmitted to this Carrier IQ server will remain unencrypted and unprotected during data transmission and receipt.

54.     HTC IQAgent can prompt a user's mobile device to send confidential data to Carrier IQ's server on a periodic schedule, e.g., once a week or once a month. It can also prompt a user's device to send confidential data at any time via a "WAP push request" or a "text request." A WAP push request is a specially-formatted message delivered to the device over a mobile data or internet connection requesting transmission of data from the device. A user would be unaware that a WAP push request had been made to their device. A text request is a standard text message sent to the device with contents beginning with "//CM" or "//IQ." The contents of that message direct the device to transmit data from the device. This text message is "suppressed" or hidden to the operator, meaning that the user does not see the text message and is unaware that Carrier IQ or some other party has requested transmission of confidential data from the device.

iii.     *HTC IQAgent Continuous Unauthorized Data Logging and Transmission*

55.     HTC IQAgent begins logging confidential user data the moment the user first

1  purchases the mobile device and turns it on, without notice to or consent from the user. HTC

2  IQAgent logs this data silently so that users have no knowledge the data is being logged or is

3  available to any device software or applications with log file permission. The data is also

4  transmitted silently so users are unaware that confidential data is being broadcast from their

5  devices. Data is logged and transmitted even when the device is not in use.

6  

7       56.    An average user will have no knowledge that the HTC IQAgent software is

8  even running on his or her device, and the HTC IQAgent software does not appear on the

9  device's application launch menu.

10      57.    A user is unable to stop the Carrier IQ software from running. When a user

11 manually turns off the HTC IQAgent software, it automatically restarts itself seconds later. A

12 user is unable to delete or remove the HTC IQAgent software from the device without voiding

13 

14 HTC's manufacturer's warranty.

15      58.    The moment a device is turned on, HTC/Google checkin runs. This is

16 completely unrelated to "tell HTC." It sends data out on what the users flashed in recovery

17 (every file installed on a user's phone) IMEI, location and more."Tell HTC" sends

18 ":bugreport:" information. This means that if a user of an HTC product has an issue they can

19 

20 send HTC a report on it. HTC gives users an on "off switch" that allegedly allows a user to

21 stop the data collection.

22      59.    One of the first data experts to recognize this was Trevor Eckhart. He noted

23 that HTC does not stop the data collection, it just stops the way it collects the data. HTC

24 continues to monitor actions and record events through other mechanisms on the phone. Mr.

25 

26 Eckhart explained that

27 

28           Carrier IQ is bundled as part of the HTC phone and does not appear in
             any application menu or other software folder. The application itself is
             called HTCIQAgent.apk. It's signed (protected) with HTCs crypto keys,

1   meaning HTC is not responsible for writing the code; however it has
2   been reported the URL sent data to is a not an HTC-owned URL.
    "Carrier IQ also subverts standard operating system functionality. For
3   any application, I believe standard operating functionality includes
    having a descriptively named application; a launcher icon, settings
4   menu, widget, or other method to allow the end user to access the
    application; and a privacy policy clearly available on the device the
5   application is installed on. Also, as seen in the video, only an application
    named HTC IQAgent is displayed as a running application on my HTC
6   device. A second program called IQRD never makes itself known as a
7   running application.";

8   CarrierIQ runs the binaries as user root in our ramdisk. The Carrier IQ
    code is in almost every application: browser, dialer, SMS, media player,
9   the kernel itself, who knows where else.

10  Trevor Eckhart, Android Security Test, "Carrier IQ Information – Part #2," Online:

11  http://cryptome.org/isp-spy/carrier-iq-spy2.pdf (last accessed December 1, 2011).

12      60.     Because the software is preinstalled by HTC and runs as part of the device

13  operating system, data is continuously collected and can be transmitted via wireless internet or

14
15  other means, even if the device user has no carrier contract and the mobile device is not

16  connected to a mobile network.

17          iv.     *HTC IQAgent Depletion of Resources*

18      61.     Because HTC IQAgent runs continuously and silently, it depletes device

19  resources without notice to or authorization from the user. These depleted resources include:

20
21          (a)     battery power (required to run the device while activity such as data

22  logging and transmission occurs);

23          (b)     device memory (used to log confidential user data and receive and

24  respond to WAP push requests and/or text requests);

25          (c)     CPU (also known as "central processing unit" used to process the

26  instructions and perform the functions required by the HTC IQAgent software);

27          (d)     bandwidth (used to transmit and receive data according to HTC

28  IQAgent instructions); and

            (e)     text messages (HTC IQAgent's hidden text request function indicates

1    a text has been received by the user even when the user cannot see it, and may result in

2    charges to users who pay for a finite number of texts per month).

3    **D. HTC's Warranty**

4         62.      There is no choice to "opt in" to Carrier IQ's data collection and transmission

5    by downloading HTC IQAgent since in many cases it is preinstalled or installed via automatic

6    update on Plaintiffs' and Class Members' mobile devices. Users cannot uninstall it, block it, or

7    cease its actions. HTC and Carrier IQ provide Plaintiffs and Class Members no notice of this

8

9    software or the functions it performs.

10        63.      HTC's Manufacturer's Warranty for the HTC EVO states that the device is

11    designed to provide users with "reliable, worry-free service." It does not mention or disclose

12    the existence of the HTC IQAgent software on the device or the functions that software

13

14    performs.

15        64.      HTC's Manufacturer's Warranty states that the Warranty will be void if a user

16    alters the operating system or opens or tampers with the device's outer casing, which would

17    include deleting or attempting to delete the HTC IQAgent software from the device.

18

19    **E. Defendants' Harmful Business Practices**

20        65.      Defendants' business practice unfairly wrests the user's control and consumes

21    the resources of the Plaintiffs' and Class Members' mobile devices by gathering information,

22    populating such information in an unencrypted format in their mobile log file, and transferring

23    such information to storage for subsequent use. Defendants caused harm and damages to

24    Plaintiffs' and Class Members' mobile devices finite resources, depleted and exhausted its

25    battery power, memory, CPU bandwidth and text, thus causing an actual inability to use it for

26

27    its intended purposes and resulting in instability issues.

28        66.      Defendants' collection and disclosure of this personal information violates user

   expectations, diminished user's privacy, and contradicted the HTC's own representations.

These business practices are unfair and deceptive trade practices as set forth further below.

67. Defendants harmed Plaintiffs and Class Members when they purchased the HTC device HTC IQAgent. In selecting the HTC mobile device over the service and goods of other competing mobile phone manufacturers, Plaintiffs and Class Members reasonably expected that their confidential user data would not be accessed and transmitted to third parties without their knowledge and consent.

68. Defendants harmed Plaintiff and Class Members by obtaining their confidential user data and device resources.

69. Carrier IQ exercises substantial control over its development and functionality on HTC's mobile devices. Carrier IQ and HTC must agree to the terms of Carrier IQ's License Agreement in order to have Carrier IQ function on HTC mobile device. Carrier IQ will only function on mobile devices by interacting with a mobile device's operating system and features in the ways permitted by such an agreement.

70. Carrier IQ's control of the user experience includes restrictions, such as blocking consumers from modifying its software. As a direct consequence of the control exercised by Carrier IQ, Plaintiffs and the Class cannot reasonably review the privacy effects of HTC IQAgent.

71. Defendants' activities, made the basis of this action include, but are not limited to, economic harm due to the unauthorized use of Plaintiffs' and Class Members' bandwidth, the amount of data that can be transmitted across a channel in a set amount of time. Any transmission of information on the internet includes bandwidth. Similar to utility companies, such as power or water, the "pipeline" is a substantial capital expenditure, and bandwidth usage controls the pricing model. Hosting providers charge user's for bandwidth because their upstream provider charges them and so forth until it reaches the "back bone providers". Retail

1    providers purchase it from wholesalers to sell its consumers.

2        72.    Defendants' activities made the basis of this action consume vast amounts of

3    bandwidth, slowing a user's internet connection by using their bandwidth, in addition to

4    diminishing the mobile devices "battery life," CPU and device memory in order to send, store

5    and retrieve metric data.

6

7        73.    Plaintiffs and Class Members were afforded only a millisecond of time after

8    activating their HTC mobile device before HTC IQAgent intentionally, and without users'

9    authorization and consent, accessed Plaintiffs' and Class Members' mobile device. While only

10   the most tech savvy mobile device users are familiar with HTC IQAgent's activity, even a

11   more finite amount of individuals know how to actually remove HTC IQAgent, let alone

12

13   recognize the risk of that software to their confidential user data.

14   **VII.    CLASS ACTION ALLEGATIONS**

15       74.    Plaintiffs bring this action pursuant to Rule 23(a) and 23(b)(1)-(3) of the Federal

16   Rules of Civil Procedure on behalf of themselves and all others similarly situated, as members

17   of the proposed nationwide Class ("Nationwide Class"), defined as follows:

18

19               All consumers in the United States who purchased and used an HTC
                 mobile device on which the HTC IQAgent software resides from
20               December 4, 2007 to December 4, 2011.

21       75.    Plaintiffs also bring certain of the claims on behalf of itself and a portion of the

22   class described as the Texas subclass ("Texas Subclass"), defined as follows:

23

24               All consumers residing within the State of Texas who purchased and
                 used an HTC mobile device on which the HTC IQAgent software
25               resides from December 4, 2007 to December 4, 2011.

26       76.    Excluded from the Nationwide Class and Texas Subclass are the officers,

27   directors, and employees of Carrier IQ and HTC, and their respective legal representatives,

28   heirs, successors and assigns.

         77.    This action is brought as a class action and may properly be so maintained

1  pursuant to the provisions of Federal Rule of Civil Procedure 23. Plaintiffs reserve the right to

2  modify the Nationwide Class and the Texas Subclass definitions and the class period pursuant

3  to discovery that is conducted hereafter.

4      78.    The members of the Class are so numerous that joinder of all members would

5  be impracticable. Plaintiffs estimate that there are hundreds of thousands of consumers who

6  purchased HTC mobile devices installed with the HTC IQAgent software.

7      79.    There are questions of law and fact common to the members of the Class that

8  predominate over any questions affecting only individual members, including:

9          (a)    whether Defendants omitted, misrepresented or otherwise failed to

10  notify Class Members of the fact that HTC IQAgent was installed on Plaintiffs' and Class

11  Members' mobile devices;

12         (b)    whether Defendants omitted, misrepresented or otherwise failed to

13  notify Class Members of the fact that HTC IQAgent logs unencrypted data in the device log

14  file that includes incoming text messages, visited URLs and GPS location coordinates;

15         (c)    whether Defendants omitted, misrepresented or otherwise failed to

16  notify Class Members of the fact that HTC IQAgent utilizes finite device resources such as

17  battery power, device memory, CPU, bandwidth and text messages;

18

19         (d)    whether Defendants' conduct violates the federal Electronic

20  Communications Privacy Act

21         (e)    whether Defendants' conduct violates the federal Stored

22  Communications Act;

23         (f)    whether Defendants' conduct violates California's Consumers Legal

24  Remedies Act;

25         (g)    whether Defendants' conduct violates Texas's Deceptive Trade

26  Practices Act;

27         (h)    whether Defendants were negligent in their failure to disclose the

28  presence of HTC IQAgent on Plaintiffs' and Class Members' mobile devices and/or their

   failure to seek Plaintiffs' and Class Members' consent prior to logging, collecting and

transmitting confidential user data;

     (a)    whether Defendants' conduct constitutes trespass; and

     (b)    whether Defendants were unjustly enriched from their conduct, and whether they must disgorge profits to Plaintiffs and Class Members.

80.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interests antagonistic to those of the Class and are subject to no unique defenses.

81.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation.

82.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

     (a)    It is economically impractical for each member of the Class to prosecute individual actions;

     (b)    The Class is readily definable;

     (c)    Prosecution as a class action will eliminate the possibility of repetitious litigation;

     (d)    A class action will enable claims to be handled in an orderly and expeditious manner;

     (e)    A class action will save time and expense and will ensure uniformity of decisions; and

     (f)    Plaintiffs do not anticipate any difficulty in the management of this litigation as a class action.

83.    Defendants have acted and refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

VIII.    **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510**

**Against All Defendants**

84. Plaintiffs incorporate by reference all paragraphs previously alleged herein.

85. Plaintiffs assert this claim against each and every Defendant named herein in this complaint on behalf of themselves and the Class.

86. The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, referred to as "ECPA," regulates wire and electronic communications interception and interception of oral communications, and makes it unlawful for a person to "willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," within the meaning of 18 U.S.C. § 2511(1).

87. Defendants violated 18 U.S.C. § 2511 by intentionally acquiring and/or intercepting, by device or otherwise, Plaintiffs' and Class Members' electronic communications, without knowledge, consent, or authorization.

88. At all relevant times, Defendants engaged in business practices of intercepting and collecting the Plaintiffs' and Class Members' confidential electronic communications which included incoming text messages, URLs of websites viewed and GPS coordinates from within their mobile devices. Once Defendants obtained this confidential personal information, Defendants used it to aggregate mobile device data regarding Plaintiffs' and Class Members' uses of their mobile devices. Defendants also made this confidential and unencrypted data available to any device software or application with log file access, further violating Plaintiffs' and Class Members' privacy.

89. The contents of data transmissions from and to Plaintiffs' and Class Members' personal computers constitute "electronic communications" within the meaning of 18 U.S.C. §2510.

90. Plaintiffs and Class Members are "person[s] whose ... electronic communication is intercepted ... or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

91. Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept

1 Plaintiffs' and Class Members' electronic communications.

2     92.    Defendants violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or

3 endeavoring to disclose, to any other person the contents of Plaintiffs' and Class Members'

4 electronic communications, knowing or having reason to know that the information was

5 obtained through the interception of Plaintiffs' and Class Member's electronic

6 communications.

7     93.    Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using, or

8 endeavoring to use, the contents of Plaintiffs' and Class Members' electronic communications,

9 knowing or having reason to know that the information was obtained through the interception

10 of Plaintiffs' and Class Members' electronic communications.

11     94.    Defendants' intentional interception of these electronic communications without

12 Plaintiffs' or Class Members' knowledge, consent, or authorization was undertaken without a

13 facially valid court order or certification.

14     95.    Defendants intentionally used such electronic communications, with knowledge,

15 or having reason to know, that the electronic communications were obtained through

16 interception, for an unlawful purpose.

17     96.    Defendants unlawfully accessed and used, and voluntarily disclosed, the

18

19 contents of the intercepted communications to enhance their profitability and revenue through

20 manufacturer contracts and advertising. This access and disclosure was not necessary for the

21 operation of Defendants' system or to protect Defendants' rights or property.

22     97.    The Electronic Communications Privacy Act of 1986, 18 USC §2520(a)

23 provides a civil cause of action to "any person whose wire, oral, or electronic communication

24 is intercepted, disclosed, or intentionally used" in violation of the ECPA.

25     98.    Defendants are liable directly and/or vicariously for this cause of action.

26 Plaintiffs therefore seek remedy as provided for by 18 U.S.C. §2520, including such

27 preliminary and other equitable or declaratory relief as may be appropriate, damages consistent

28 with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial,

and a reasonable attorney's fee and other litigation costs reasonably incurred.

99.     Plaintiffs and Class Members have additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.  Defendants exposed Plaintiffs' and Class Members' personal information to any third party software or application with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted format. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile devices including battery power, device memory, CPUs, and bandwidth.  Plaintiffs and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Defendants.

100.    Plaintiffs and the Class, pursuant to 18 U.S.C. §2520, are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual and punitive damages, reasonable attorneys' fees, and Defendants' profits obtained from the above-described violations. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs' and Class Members' remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Plaintiffs and Class Members to remedies including injunctive relief as provided by 18 U.S.C. § 2510.

## SECOND CAUSE OF ACTION

### Violation of the Stored Communications Act, 18 U.S.C. §2701

### Against All Defendants

101.    Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

102.    The Stored Communications Act prohibits persons from accessing without authorization a device through which an electronic communications service is provided (18 U.S.C. §2701).

103.    Defendants were engaged in the sale of mobile devices to consumers during the class period.

104.    Defendants intentionally accessed and collected the personal data of Plaintiffs

1 | and Class Members on their mobile devices without notice or authorization, including

2 | incoming text messages, URLs of websites viewed and GPS coordinates.

3 |      105.   As a result of Defendants' unlawful violation of this section, Plaintiffs and Class

4 | Members have been damaged by among other things, failing to receive the benefits of a

5 | product impliedly represented to them as secure as to their personal information. Plaintiffs and

6 | Class Members have additionally suffered loss by reason of these violations, including

7 | violation of their rights of privacy. Defendants exposed Plaintiffs' and Class Members'

8 | personal information to any third party software or application with log file access residing on

9 | their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an

10 | unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized

11 | use of the resources of Plaintiffs' and Class Members' mobile devices including battery power,

12 | cell phone memory, CPUs, and bandwidth. Moreover, Plaintiffs and Class Members had

13 | unauthorized charges to their mobile devices for every hidden text message that was sent by

14 | Defendants.

15 |      106.   Plaintiffs and Class Members have been harmed by Defendants' unlawful

16 | violations of this section and are therefore entitled to relief in the form of damages, costs and

17 | disbursements, including costs of investigation and reasonable attorney's fees and are entitled

18 | to equitable relief as determined by this Court.

19 |

20 | ### THIRD CAUSE OF ACTION

21 | #### Violation of the Consumer Legal Remedies Act

22 | #### ("CLRA") California Civil Code § 1750, *et seq.*

23 | #### Against All Defendants

24 |      107.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

25 |      108.   In violation of Civil Code §1750, et seq. (the "CLRA"), Defendants have

26 | engaged and are engaging in unfair and deceptive acts and practices in the course of

27 | transactions with Plaintiffs, and such transactions are intended to and have resulted in the sales

28 | of services to consumers. Plaintiffs and the Class Members are "consumers" as that term is

used in the CLRA because they sought or acquired Defendants' goods or services for personal,

1  family, or household purposes.

2      109.   At all relevant times, Defendants' business practices of selling HTC mobile

3  devices installed or updated with HTC IQAgent software, were goods Plaintiffs and Class

4  Members obtained for use. Defendants' scheme to offer such goods misled Plaintiffs and Class

5  Members about the nature and integrity of theHTC mobile devices since Defendants intended

6  to use such for mobile device tracking, collection of confidential, unencrypted user data, and

7  depletion of consumer resources, including battery power, device memory, CPUs, and

8  bandwidth. Defendants also charged consumers for every hidden text message that was sent by

9  Defendants.

10      110.   Defendants represented that their services had characteristics, uses, and benefits

11  that they do not have, in violation of Civil Code § 1770(a)(5).  Defendants represented privacy

12  and "reliable, worry-free service" as a characteristic of the mobile devices that they did not

13  have. Defendants intercepted and collected Plaintiffs' and Class Members' electronic

14  communications which included incoming text messages, URLs of websites viewed and GPS

15  coordinates from within their mobile devices. Once Defendants obtained this personal

16  information, Defendants used it to aggregate mobile device data of Plaintiffs and Class

17  Members as they used their mobile device.  Defendants made this personal information

18  available, unencrypted, to any third party software or applications with log file access on the

19  device and further violated Plaintiffs' and Class Members' privacy.

20

21      111.   In addition, Defendants' modus operandi constitutes an unfair practice in that

22  Defendants knew, or should have known, that consumers care about the status of personal

23  information regarding visited websites, GPS location and text privacy but were unlikely to be

24  aware of the manner in which Defendants failed to fulfill their commitments with respect to the

25  consumers' privacy.

26      112.   Defendants' acts and practices were deceptive and unfair because they were

27  likely to mislead the members of the public to whom they were directed.

28      113.   Plaintiffs and Class Members have suffered loss by reason of these violations,

including, without limitation, violation of the right of privacy.  Defendants exposed Plaintiffs'

1  and Class Members' personal information to any third party software or application with log

2  file access residing on their mobile devices without Plaintiffs' or Class Members' permission

3  or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by

4  Defendants' unauthorized use of the resources of Plaintiffs' and Class Members' mobile

5  devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover,

6  Plaintiffs and Class Members had unauthorized charges to their mobile devices for every

7  hidden text message that was sent by Defendants.

8      114.   Plaintiffs, on behalf of themselves and on behalf of each member of the Class,

9  shall seek individual restitution, injunctive relief, and other relief as the Court deems just and

10  proper.

11     115.   Pursuant to California Civil Code, Section 1782, Plaintiffs will notify

12  Defendants in writing of the particular violations of Civil Code, Section 1770 and demand that

13  Defendants rectify the problems associated with its behavior detailed above, which acts and

14  practices are in violation of Civil Code Section 1770.

15                          **FOURTH CAUSE OF ACTION**

16      **Violation of Unfair Competition California Business and Professions Code § 17200**

17                          **Against All Defendants**

18

19     116.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

20     117.   In violation of California Business and Professions Code Section 17200 et seq.,

21  Defendants' conduct in this regard is ongoing and includes, but is not limited to, unfair,

22  unlawful and fraudulent conduct.

23     118.   At all relevant times, Defendants' business practices as alleged above constitute

24  unlawful, unfair and fraudulent business acts and practices.

25     119.   Defendants engaged in these unfair and fraudulent practices to increase their

26  profits. Plaintiffs were injured and damaged by being forced to relinquish—without consent or

27  knowledge—confidential and personal user data, device battery power, device memory, CPUs,

28  and bandwidth. Plaintiffs were also unfairly charged for every hidden text message that was

sent by Defendants.

1    120.    By engaging in the above-described acts and practices, Defendants have

2  committed one or more acts of unfair competition within the meaning of the UCL and, as a

3  result, Plaintiffs and the Class have suffered injury-in-fact and have lost money and/or

4  property.

5    **A.  Unlawful Business Act and Practices**

6    121.    Defendants' business acts and practices are unlawful, in part, because they

7  violate the Electronic Communications Privacy Act, 18 U.S.C. Section 2510 which prohibits

8  any person from willfully intercepting or endeavoring to intercept, or procuring any other

9  person to intercept or endeavor to intercept, any wire, oral, or electronic communication,

10  including incoming text messages.

11    122.    Defendants' business acts and practices are also unlawful in that they violate the

12  Stored Communications Act, 18 U.S.C. Section 2701, California Consumer Legal Remedies

13  Act, California Civil Code §1750, and California Penal Code, § 502 among other statutes.

14    **B.  Unfair Business Act and Practices**

15    123.    Defendants' business acts and practices are unfair because they cause harm and

16

17  injury-in-fact to Plaintiffs and Class Members and for which Defendants have no justification

18  other than to increase revenues from the unauthorized use of personal information

19    124.    Defendants' conduct lacks reasonable and legitimate justification in that

20  Defendants have benefited from such conduct and practices while Plaintiffs and the Class

21  Members have been misled as to the nature and integrity of Defendants' services and have, in

22  fact, suffered injury regarding the privacy and confidentiality of their personal information and

23  the use of their device resources. Defendants' conduct offends public policy in California in

24  connection with the Consumer Legal Remedies Act, the state constitutional right of privacy,

25  and California statutes recognizing the need for consumers to safeguard their own privacy

26  interests, including California Civil Code, Section 1798.80.

27    125.    In addition, Defendants' actions constitute an unfair practice in that Defendants

28  knew, or should have known, that consumers care about the status of personal information

regarding visited websites, GPS location and text privacy but were unlikely to be aware of the

1 manner in which Defendants failed to fulfill their commitments with respect to the consumers'

2 privacy.

3     126.    Defendants' acts and practices were fraudulent within the meaning of the Unfair

4 Competition Law because they were likely to mislead the consumers.

5     127.    Defendants' practice of capturing, storing, and transferring highly detailed and

6 personal records of consumers' incoming text messages, URLs of websites visited and GPS

7 location histories, and storing such information in unencrypted form, is in violation of the

8 Unfair Competition Law. Plaintiffs and Class Members have suffered loss by reason of these

9 violations, including, violation to their right of privacy. Defendants exposed Plaintiffs' and

10 Class Members' personal information to any third party software or applications with log file

11 access residing on their mobile devices without Plaintiffs' or Class Members' consent or

12 knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by

13 Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile

14 devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover,

15 Plaintiffs and Class Members had to pay unauthorized charges to their mobile devices for

16 every hidden text message that was sent by Defendants.

17

18                        **FIFTH CAUSE OF ACTION**

19           **Violation of California's Computer Crime Law**

20                   **Penal Code § 502 et seq.**

21                    **Against All Defendants**

22     128.    Plaintiffs incorporate the above allegations by reference as if set forth herein at

23 length.

24     129.    The California Computer Crime Law, California Penal Code Section 502

25 regulates "tampering, interference, damage, and unauthorized access to lawfully created

26 computer data and computer systems." A mobile device is a "computer system" as defined in

27 Penal Code Section 502(b)(5) in that it contains electronic instructions, inputs and outputs data,

28 performs functions including communication and data storage and retrieval.

    130.    Defendants violated California Penal Code § 502 by knowingly accessing,

1  copying, using, making use of, interfering, and/or altering, data belonging to Plaintiffs and

2  Class Members: (1) in and from the State of California; (2) in the home states of the Plaintiffs

3  and Class Members; and (3) in the state in which the servers that provided the communication

4  link between Plaintiffs and the applications they interacted with were located.

5      131.    At all relevant times, Defendants had a business practice of accessing Plaintiffs'

6  and Class Members' mobile devices on a systematic and continuous basis in order to obtain

7  mobile device data and to monitor and collect data related to their browsing habits, GPS

8  locations and incoming text messages. Defendants accessed such data without notice to or

9  authorization from Plaintiffs or Class Members.

10     132.    Pursuant to California Penal Code § 502(b)(1), "Access means to gain entry to,

11  instruct, or communicate with the logical, arithmetical, or memory function resources of a

12  computer, computer system, or computer network."

13     133.    Pursuant to California Penal Code § 502(b)(6), "Data means a representation of

14  information, knowledge, facts, concepts, computer software, computer programs or

15  instructions. Data may be in any form, in storage media, or as stored in the memory of the

16  computer or in transit or presented on a display device."

17

18     134.    Defendants have violated California Penal Code § 502(c)(1) by knowingly

19  accessing and without permission, altering, and making use of data from Plaintiffs' and Class

20  Members' mobile devices in order to devise and execute business practices to deceive

21  Plaintiffs and Class Members into surrendering private electronic communications, and to

22  wrongfully obtain valuable private data and device resources from Plaintiffs and Class

23  Members.

24     135.    Defendants have violated California Penal Code § 502(c)(2) by knowingly

25  accessing and without permission, taking, or making use of data from Plaintiffs' and Class

26  Members' mobile devices.

27     136.    Defendants have violated California Penal Code § 502(c)(3) by knowingly and

28  without permission, using and causing to be used Plaintiffs' and Class Members' mobile

computing devices' services and resources.

137. Defendants have violated California Penal Code section 502(c)(4) by knowingly accessing and, without permission, adding and/or altering the data from Plaintiffs' and Class Members' computers, including application code installed on such computers.

138. Defendants have violated California Penal Code § 502(c)(6) by knowingly and without permission providing, or assisting in providing, a means of accessing Plaintiffs' mobile device and mobile device system.

139. Defendants has violated California Penal Code § 502(c)(7) by knowingly and without permission accessing, or causing to be accessed, Plaintiffs' mobile device and mobile device system.

140. California Penal Code § 502(j) states: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction."

141. Plaintiffs and Class Members have suffered loss by reason of these violations, including, without limitation, violation of the right of privacy. Defendants exposed Plaintiffs' and Class Members' personal information to any third party software or application with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile devices including battery power, cell phone memory, CPUs, and bandwidth. Plaintiffs and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Defendants.

142. Plaintiffs have also suffered irreparable injury from these unauthorized acts of disclosure, to wit: their personal, private, and sensitive electronic data was obtained and used by Defendant. Due to the continuing threat of such injury, Plaintiffs have no adequate remedy at law, entitling Plaintiffs to injunctive relief.

143. Plaintiffs and Class Members have additionally suffered loss by reason of these

1 | violations, including, without limitation, violation of the right of privacy and depletion of

2 | valuable device resources.

3 |   144.  As a direct and proximate result of Defendants' unlawful conduct within the

4 | meaning of California Penal Code § 502, Defendants have caused loss to Plaintiffs in an

5 | amount to be proven at trial. Plaintiffs are also entitled to recover their reasonable attorneys'

6 | fees pursuant to California Penal Code § 502(e).

7 |   145.  Plaintiffs and the Class Members seek compensatory damages, in an amount to

8 | be proven at trial, and injunctive or other equitable relief.

9 | **SIXTH CAUSE OF ACTION**

10 | **Violation of the California Invasion of Privacy Act**

11 | **Penal Code § 630 et seq.**

12 | **Against All Defendants**

13

14 |   146.  Plaintiffs incorporate the above allegations by reference as if set forth herein at

15 | length.

16 |   147.  California Penal Code Section 630 provides, in part:

17 |     Any person who, . . . or who willfully and without the consent of
all parties to the communication, or in any unauthorized manner,

18 |     reads, or attempts to read, or to learn the contents or meaning of
any message, report, or communication while the same is in

19 |     transit or passing over any wire, line, or cable, or is being sent
from, or received at any place within this state; or who uses, or

20 |     attempts to use, in any manner, or for any purpose, or to
communicate in any way, any information so obtained, or who

21 |     aids, agrees with, employs, or conspires with any person or
persons to unlawfully do, or permit, or cause to be done any of

22 |     the acts or things mentioned above in this section, is punishable. .

23

24 |   148.  At all relevant times, Defendants engaged in a business practice of accessing the

25 | mobile device data of the Plaintiffs and Class Members without their authorization and consent

26 | and systematically logging and collecting their incoming text messages, URLs of websites

27 | viewed and GPS coordinates. Defendants made this personal data available to all third party

28 | software or applications with log file access on the mobile devices of Plaintiffs and Class

Members in an unencrypted form, without the consent or authorization of Plaintiff or Class

CLASS ACTION COMPLAINT
-39-

1   Members.

2       149.   On information and belief, each Plaintiff and each Class Member, during one or

3   more of their interactions on their mobile device, including receipt of text messages and URL

4   browsing, communicated with one or more web entities based in California, or with one or

5   more entities whose servers were located in California.

6       150.   Communications from the California web-based entities to Plaintiffs and Class

7   Members were sent from California. Communications to the California web-based entities

8   from Plaintiffs and Class Members were sent to California.

9       151.   Plaintiffs and Class Members did not consent to any of the Defendants' actions

10   in intercepting, reading, and/or learning the contents of their communications with such

11   California-based entities.

12       152.   Plaintiffs and Class Members did not consent to any of the Defendants' actions

13   in using the contents of their communications with such California-based entities.

14       153.   Neither Defendant is a " public utility engaged in the business of providing

15   communications services and facilities . . .."

16       154.   The actions alleged herein by the Defendants were not undertaken "for the

17   purpose of construction, maintenance, conduct or operation of the services and facilities of the

18   public utility."

19       155.   The actions alleged herein by the Defendants were not undertaken in connection

20   with "the use of any instrument, equipment, facility, or service furnished and used pursuant to

21   the tariffs of a public utility."

22       156.   The actions alleged herein by Defendants were not undertaken with respect to

23   any telephonic communication system used for communication exclusively within a state,

24   county, city and county, or city correctional facility.

25       157.   Defendants directly participated in intercepting, reading, and/or learning the

26   contents of the communications between Plaintiffs, Class Members and California-based web

27   entities.

28       158.   Alternatively, and of equal violation of the California Invasion of Privacy Act,

1   HTC aided, agreed with, and/or conspired with Carrier IQ to unlawfully do, or permit, or cause

2   to be done all of the acts complained of herein.

3        159.   Plaintiffs and Class Members have additionally suffered loss by reason of these

4   violations, including, without limitation, violation of the right of privacy. Defendants exposed

5   Plaintiffs' and Class Members' personal information to any third party software or application

6   with log file access residing on their mobile devices without Plaintiffs' or Class Members'

7   permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were

8   damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members'

9   mobile devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover,

10   Plaintiffs and Class Members had unauthorized charges to their mobile devices for every

11   hidden text message that was sent by Defendants.

12        160.   Unless restrained and enjoined, Defendants will continue to commit such acts.

13   Pursuant to § 637.2 of the California Penal Code, Plaintiffs and the Class have been injured by

14   the violations of California Penal Code Section 631. Wherefore, Plaintiffs, on behalf of

15   themselves and on behalf of a similarly situated Class of consumers, seek damages and

16   injunctive relief.

17

18                  **SEVENTH CAUSE OF ACTION**

19      **Violation of the Song-Beverly Warranty Act, California Civil Code §1792**

20                    **Against All Defendants**

21        161.   Plaintiffs hereby incorporate by reference the allegations contained in all the

22   paragraphs of this Complaint.

23        162.   HTC warranted to Plaintiffs and Class Members in its "Manufacturer's

24   Warranty" that the mobile devices would be free from defects for normal consumer usage for

25   twelve months from the date of purchase.

26        163.   HTC by offering mobile devices in the marketplace represented and warranted

27   to Plaintiffs and Class Members that these devices did not cause personal information to be

28   unreasonably and unexpectedly transferred to third parties.

        164.   Plaintiffs and Class Members paid more for their mobile devices than they

would have paid if HTC disclosed the fact that the mobile devices were designed with defects, namely the privacy breach to Carrier IQ and any other third party software on the mobile device.

165. A reasonable consumer would, and Plaintiffs and Class Members did expect that, if HTC mobile devices were subject to defects such as those identified above, HTC would disclose these material facts and Plaintiffs and Class Members would not have purchased these devices.

166. Plaintiffs and Class Members paid premiums for HTC mobile devices because they reasonably believed the devices were designed to employ reasonable security in their operation.

167. HTC's failure to meet the specifications of the mobile devices violates the express and implied warranties under the Song-Beverly Warranty Act, California Civil Code §1792 et.seq.

168. Moreover, HTC asserts that disabling the Carrier IQ software on a mobile device voids the HTC Warranty. Plaintiffs and Class Members are therefore forced to induce breach of the HTC Warranty by disabling the Carrier IQ software to protect their personal information.

169. Plaintiffs and Class Members who purchased the mobile devices are entitled to a refund of the purchase price.

### EIGHTH CAUSE OF ACTION

### Texas Deceptive Trade Practices Act, Business and Commerce

### Code § 17.41 et seq.

### Against All Defendants

170. Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

171. Plaintiffs are "consumers" under the Texas Deceptive Trade Practices Act as they purchased and used HTC mobile devices that had been preinstalled with the Carrier IQ tracking program.

172. Defendants are proper "persons" or defendants under the Texas Deceptive Trade Practices Act, who either used or employed false, misleading, deceptive or unconscionable acts or practices, or were directly connected with the transaction with Plaintiffs.

173. Defendants committed multiple violations and wrongful acts under the Texas Deceptive Trade Practices Act, including the following: making or committing, false, misleading or deceptive acts and/or practices, including but not limited to violations of Tex. Business & Commerce Code § 17.46(b) (3), (5), (7), (9), (20), and (24). Defendants committed misleading and unconscionable acts in connection with the sale of mobile devices installed or updated with HTC IQAgent to Plaintiffs and Class Members, and the subsequent tracking and logging of Plaintiffs' and Class Members' confidential, unencrypted through HTC IQAgent without notice or consent. In carrying out these acts, Defendants depleted Plaintiffs' and Class Members' mobile device resources without notice to or consent from Plaintiffs or Class Members. Plaintiffs and Class Members relied on Defendants' acts and/or practices to their detriment.

174. Plaintiffs will show that the violation and actions of Defendants were a producing cause of their damages. Defendants exposed Plaintiffs' and Class Members' personal information to any third party software or applications with log file access residing on their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of Plaintiffs' and Class Members' mobile device resources including battery power, cell phone memory, CPUs, and bandwidth. Moreover, Plaintiffs and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Defendants.

175. Plaintiffs will show that the violations and actions of Defendants were done intentionally or knowingly, entitling Plaintiffs to treble damages.

176. Plaintiffs will show that the violations and actions of Defendants entitle them to reasonable and necessary attorney's fees under the Texas Deceptive Trade Practices Act,

specifically Tex. Business & Commerce Code § 17.50(d).

## NINTH CAUSE OF ACTION

### Breach of Express Warranty

### Against Defendant HTC

177.    Plaintiffs hereby incorporate by reference the allegations contained in all the paragraphs of this Complaint.

178.    HTC warranted to Plaintiffs and Class Members in its "Manufacturer's Warranty" that the mobile devices would be free from defects for normal consumer usage for twelve months from the date of purchase and that the device was designed to provide "reliable, worry-free service."

179.    HTC by sold mobile devices to Plaintiffs and Class Members that were defective because they caused personal information to be unreasonably and unexpectedly viewed and collected by Carrier IQ and other third party software and applications. The devices also were subject to depletion of resources through the HTC IQAgent software which depleted those resources without notice to or authorization from Plaintiffs or Class Members.

180.    Plaintiffs and Class Members paid more for their mobile devices than they would have paid if HTC disclosed the fact that the mobile devices were designed with defects, namely the privacy breach and depletion of mobile device resources.

181.    A reasonable consumer would, and Plaintiffs and Class Members did expect that, if HTC mobile devices were subject to defects such as those identified above, HTC would disclose these material facts and Plaintiffs and Class Members would not have purchased these devices.

182.    Plaintiffs and Class Members paid premiums for HTC mobile devices because they reasonably believed the devices were designed to employ reasonable security in their operation.

183.    HTC's failure to provide to Plaintiffs and Class Members a mobile device that is not defective is a violation of HTC's express warranty.

184.    Moreover, HTC asserts that disabling the Carrier IQ software on a mobile

1  device voids the HTC warranty. Plaintiffs and Class Members are therefore forced by HTC to

2  induce breach of the HTC Warranty by disabling the Carrier IQ software to protect their

3  personal information.

4       185.   Plaintiffs and Class Members who purchased the mobile devices are entitled to

5  a refund of the purchase price.

6  **TENTH CAUSE OF ACTION**

7  **Breach of Implied Warranty**

8  **Against Defendant HTC**

9       186.   Plaintiffs hereby incorporate by reference the allegations contained in all the

10 paragraphs of this Complaint.

11      187.   HTC by offering mobile devices in the marketplace represented and warranted

12 to Plaintiffs and Class Members that these devices would be free from defects for normal

13 consumer usage and would not cause personal information to be unreasonably and

14 unexpectedly transferred to third parties.

15      188.   HTC by sold mobile devices to Plaintiffs and Class Members that were

16 defective because they caused personal information to be unreasonably and unexpectedly

17 viewed and collected by Carrier IQ and other third party software and applications. The

18 devices also were subject to depletion of resources through the HTC IQAgent software which

19 depleted those resources without notice to or authorization from Plaintiffs or Class Members.

20

21      189.   Plaintiffs and Class Members paid more for their mobile devices than they

22 would have paid if HTC disclosed the fact that the mobile devices were designed with defects,

23 namely the privacy breach and depletion of mobile device resources..

24      190.   A reasonable consumer would, and Plaintiffs and Class Members did expect

25 that, if HTC mobile devices were subject to defects such as those identified above, HTC would

26 disclose these material facts and Plaintiffs and Class Members would not have purchased these

27 devices.

28      191.   Plaintiffs and Class Members paid premiums for HTC mobile devices because

they reasonably believed the devices were designed to employ reasonable security in their

1  operation.

2      192.   HTC's failure to provide to Plaintiffs and Class Members a mobile device that is

3  not defective is a violation of HTC's implied warranty.

4      193.   Plaintiffs and Class Members who purchased the mobile devices are entitled to

5  a refund of the purchase price.

6  **ELEVENTH CAUSE OF ACTION**

7  **Negligence**

8  **Against All Defendants**

9      194.   Plaintiffs incorporate the above allegations by reference as if fully set forth

10  herein.

11      195.   Carrier IQ and HTC owed a duty of care to Plaintiffs and Class Members.

12      196.   Carrier IQ and HTC breached their duty by negligently designing HTC IQAgent

13  and preinstalling or uploading it to Plaintiffs' and Class Members' mobile devices without any

14  notice or authorization so that Defendants could acquire personal information without

15  Plaintiffs' and Class Members' knowledge or permission. Defendants also negligently made

16  this confidential data available to any software or application with log file access on the mobile

17  device, in an unencrypted format. Defendants also negligently depleted Plaintiffs' and Class

18  Members' mobile device resources.

19

20      197.   Carrier IQ and HTC failed to fulfill their own commitments to Plaintiffs and

21  Class Members, and further failed to fulfill even the minimum duty of care to protect

22  Plaintiffs' and Class Members' personal information, privacy rights, security, and device

23  resources.

24      198.   HTC's unencrypted storage of Plaintiffs' and Class Members' on the mobile

25  device log file and Carrier IQ servers was negligent.

26      199.   Plaintiffs and Class Members were harmed as a result of Carrier IQ's breaches

27  of its duty, and Carrier IQ proximately caused such harms.

28      200.   HTC's failure to fulfill its commitments included allowing Carrier IQ's practice

of preinstalling HTC IQAgent on HTC mobile device users' devices without notice or

1   authorization and then permitting Carrier IQ to collect unencrypted data in the log file and

2   make it available, unencrypted, to third party software and applications with log file access on

3   the devices.  HTC engaged in these activities without notice to or consent from Plaintiffs and

4   Class Members.

5       201.    HTC's preinstallation or upload of HTC IQAgent and unauthorized use of

6   Plaintiffs' and Class Members' confidential information without notice to or consent from

7   Plaintiffs or Class Members was negligent.

8       202.    Defendants exposed Plaintiffs' and Class Members' personal information to any

9   third party software with log file access residing on their mobile devices without Plaintiffs' or

10  Class Members' permission or knowledge, and in an unencrypted form. Plaintiffs and Class

11  Members were damaged by Defendants' unauthorized use of the resources of their mobile

12  devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover,

13  Plaintiffs and Class Members had unauthorized charges to their mobile devices for every

14  hidden text message that was sent by Carrier IQ.

15      203.    Plaintiffs and Class Members were harmed as a result of Defendants' breaches

16  of their duty, and Defendants proximately caused such harms.

17                      **TWELFTH CAUSE OF ACTION**

18                  **Trespass to Personal Property/Chattels**

19                          **Against All Defendants**

20      204.    Plaintiffs incorporate by reference all paragraphs previously alleged herein.

21      205.    The common law prohibits the intentional intermeddling with personal property,

22  including a mobile device, in possession of another which results in the deprivation of the use

23  of the personal property or impairment of the condition, quality, or usefulness of the personal

24  property.

25      206.    By engaging in the acts alleged in this complaint without the authorization or

26  consent of Plaintiffs and Class Members, Defendants dispossessed Plaintiffs and Class

27  Members from use and/or access to their mobile devices, or parts of them. Further, these acts

28  impaired the use, value, and quality of Plaintiffs' and Class Members' mobile devices.

1  Defendants' acts constituted an intentional interference with the use and enjoyment of their

2  mobile devices. By the acts described above, Defendants have repeatedly and persistently

3  engaged in trespass to personal property in violation of the common law.

4     207.  Without Plaintiffs' and Class Members' consent, or in excess of any consent

5  given, Defendants knowingly and intentionally accessed Plaintiffs' and Class Members'

6  property, thereby intermeddling with Plaintiffs' and Class Members' right to possession of the

7  property and causing injury to Plaintiffs and the members of the Class.

8     208.  Defendants engaged in deception and concealment in order to gain access to

9  Plaintiffs' and Class Members' mobile devices.

10     209.  Defendants undertook the following actions with respect to Plaintiffs' and Class

11  Members' mobile devices:

12     210.  Defendants accessed and obtained control over the users' mobile device;

13     211.  Defendants caused the installation of code on the hard drives of the mobile

14  devices;

15     212.  Defendants programmed the operation of its code to circumvent the mobile

16  device owners' privacy and security controls, to remain beyond their control, and to continue

17  to function and operate without notice to them or consent from Plaintiffs and Class Members;

18

19     213.  Defendants obtained users' personal information by logging confidential data in

20  the log file;

21     214.  Defendants utilized users' mobile device resources as part of logging

22  confidential data; and

23     215.  Defendants used the log file data to obtain information about the mobile

24  browsing activities of the mobile device without the user's consent, and outside of the control

25  of the owner of the mobile device.

26     216.  All these acts described above were acts in excess of any authority any user

27  granted Defendants when the user purchased the HTC mobile device that had HTC IQAgent

28  preinstalled or updated on the device without the user's consent or knowledge. By engaging in

deception and misrepresentation, whatever authority or permission Plaintiffs and Class

1    Members may have granted to Defendants was exceeded.

2        217.    Defendants' installation and operation of its program used, interfered, and/or

3    intermeddled with Plaintiffs' and Class Members' mobile devices. Such use, interference

4    and/or intermeddling was without Plaintiffs' and Class Members' consent or, in the alternative,

5    in excess of Plaintiffs' and Class Members' consent.

6        218.    Defendants' installation and operation of its program constitutes trespass,

7    nuisance, and an interference with Plaintiffs' and Class Members' chattels, to wit, their mobile

8    devices.

9        219.    Defendants' installation and operation of the Carrier IQ program impaired the

10   condition and value of Plaintiffs' and Class Members' mobile devices.

11       220.    Defendants' trespass to chattels, nuisance, and interference caused real and

12   substantial damage to Plaintiffs and Class Members  Defendants exposed Plaintiffs' and Class

13   Members' personal information to any third party software with log file access residing on

14   their mobile devices without Plaintiffs' or Class Members' permission or knowledge, and in an

15   unencrypted form. Plaintiffs and Class Members were damaged by Defendants' unauthorized

16   use of the resources of Plaintiff's and Class Members' mobile devices including battery power,

17   cell phone memory, CPUs, and bandwidth.  Plaintiffs and Class Members had unauthorized

18   charges to their mobile devices for every hidden text message that was sent by Carrier IQ.

19

20       221.    As a direct and proximate result of Defendants' trespass to chattels, nuisance,

21   interference, unauthorized access of and intermeddling with Plaintiffs' and Class Members'

22   property, Defendants have injured and impaired Plaintiffs and Class Members in the condition

23   and value of Plaintiffs' Class Members' mobile devices, as follows:

24           (a)    By consuming the resources of and/or degrading the performance of

25   Plaintiffs' and Class Members' mobile devices (including space, memory, processing cycles,

26   Internet connectivity, and unauthorized use of their bandwidth);

27           (b)    By diminishing the use of, value, speed, capacity, and/or capabilities

28   of Plaintiffs' and Class Members' mobile devices;

             (c)    By devaluing, interfering with, and/or diminishing Plaintiffs' and

1    Class Members' possessory interest in their mobile devices;

2          (d)    By altering and/or controlling the functioning of Plaintiffs' and Class

3    Members' mobile devices;

4          (e)    By infringing on Plaintiffs' and Class Members' right to exclude

5    others from their mobile devices;

6          (f)    By infringing on Plaintiffs' and Class Members' right to determine, as

7    owners of/or their mobile devices, which programs should be installed and operating on their

8    mobile devices;

9          (g)    By compromising the integrity, security, and ownership of Class

10   Members' mobile devices; and

11         (h)    By utilizing Plaintiffs' and Class Members' mobile device resources

12   without notice or consent.

13                 **THIRTEENTH CAUSE OF ACTION**

14                        **Unjust Enrichment**

15                     **Against All Defendants**

16       222.   Plaintiffs hereby incorporate by reference the allegations contained in all of the

17   paragraphs of this complaint.

18       223.   By engaging in the conduct described in this Complaint, Defendants have

19   knowingly obtained benefits from the Plaintiffs and Class Members under circumstances that

20   make it inequitable and unjust for Defendants to retain them.

21       224.   Plaintiffs and the Class have conferred a benefit upon the Defendants who have,

22   directly or indirectly, received and retained the confidential information of Plaintiffs and Class

23   Members as set forth herein. Defendants have received and retained information that is

24   otherwise private, confidential, and not of public record, and/or have received revenue from the

25   provision, use, and or trafficking in the sale of such information.

26       225.   Defendants appreciate and/or have knowledge of said benefit.

27       226.   Under principles of equity and good conscience, Defendants should not be

28   permitted to retain the information and/or revenue that they acquired by virtue of their

1   unlawful conduct. All funds, revenue, and benefits received by them rightfully belong to

2   Plaintiffs and the Class, which the Defendants have unjustly received as a result of their

3   actions.

4       227.   Plaintiffs and Class Members have no adequate remedy at law.

5       228.   Defendants have received a benefit from Plaintiffs and Class Members and

6   Defendants have received and retained money or other benefits from third parties as a result of

7   sharing Plaintiffs' and Class Members' confidential information of Plaintiffs and Class

8   Members without Plaintiffs' or Class Members' knowledge or consent as alleged in this

9   Complaint.

10      229.   Plaintiffs and Class Members did not expect that Defendants would seek to gain

11  commercial or business advantage from third parties by using their personal information

12  without their knowledge or consent.

13      230.   Defendants knowingly used Plaintiffs' and Class Members' confidential

14  information without their knowledge or consent to gain commercial advantage from third

15  parties and had full knowledge of the benefits they have received from Plaintiffs and Class

16  Members. If Plaintiffs and Class Members had known Defendants were not keeping their

17  confidential information from third-parties, they would not have consented and Defendants

18  would not have gained commercial or business advantage from third parties.

19

20      231.   Defendants will be unjustly enriched if Defendants are permitted to retain the

21  money or other benefits paid to them by third parties, or resulting from the commercial or

22  business advantage they gained, in exchange for Plaintiffs' and Class Members' confidential

23  information.

24      232.   Defendants should be required to provide restitution of all money obtained from

25  their unlawful conduct.

26      233.   Plaintiffs and the Members of the Class are entitled to an award of

27  compensatory and punitive damages in an amount to be determined at trial or to be imposition

28  of a constructive trust upon the wrongful revenues and/or profits obtained by and benefits

conferred upon Defendants as a result of the wrongful actions as alleged in this complaint.

234.  Plaintiffs and the Class have no remedy at law to prevent Defendants from continuing the inequitable conduct alleged in this complaint and the continued unjust retention of the money and/or benefits Defendants received from third parties.

## FOURTEENTHCAUSE OF ACTION

### Conversion

### Against All Defendants

235.  Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this complaint.

236.  Plaintiffs' and Class Members' mobile device data, including but not limited to their incoming text messages, URLs of websites viewed and GPS coordinates, was viewed by Defendants and made available to third party software and applications with log file permission to collect confidential, unencrypted data about Plaintiffs' and Class Members' mobile device activities. Such property, owned by the Plaintiffs and Class Members, is valuable to the Plaintiffs and Class Members.

237.  Plaintiffs' and Class Members' mobile devices use battery power, cell phone memory, CPUs, and bandwidth. Defendants' activities, made the basis of this action, used without notice or authorization, such battery power, memory, CPU and bandwidth for purposes not contemplated and not agreed to by Plaintiffs and Class Members when they purchased their HTC mobile devices. Such property, owned by Plaintiffs and Class Members, is valuable to Plaintiffs and Class Members. Plaintiffs and Class Members were damaged by Defendants' unauthorized use of Plaintiff's and Class Members' battery power, cell phone memory and CPUs, as well as bandwidth. Moreover, Defendants utilized Plaintiffs' and Class Members' limited text messages in order to send secret and unauthorized instructions to their mobile devices. Plaintiffs and Class Members paid unauthorized charges for every hidden text message that was sent by Defendants.

238.  Defendants unlawfully exercised dominion over said property and thereby converted Plaintiffs' and Class Members' property.

239.  Plaintiffs and Class Members were damaged by Defendants' actions.

1

### PRAYER FOR RELIEF

2    WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated,

3    pray for judgment against Defendants as follows:

4    A.    Certify this case as a Class action on behalf of the Classes defined above,

5    appoint Plaintiffs as Class representatives, and appoint their counsel as Class counsel;

6    B.    Declare that the actions of Defendants, as set out above, violate the claims

7    alleged;

8    C.    Award injunctive and equitable relief including, *inter alia*: (i) prohibiting

9    Defendants from engaging in the acts alleged above; (ii) requiring Defendants to disgorge all

10    of their ill-gotten gains to Plaintiffs and Class Members, or to whomever the Court deems

11    appropriate; (iii) requiring Defendants to delete all data surreptitiously or otherwise collected

12    data through the acts alleged above; (iv) requiring Defendants to provide Plaintiffs and Class

13    Members a means to easily and permanently decline any participation in any data collection

14    activities; (v) awarding Plaintiffs and Class Members full restitution of all benefits wrongfully

15    acquired by Defendants by means of the wrongful conduct alleged herein; and (vi) ordering an

16    accounting and constructive trust imposed on the data, funds, or other assets obtained by

17    unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment

18    of such assets by Defendants;

19

20    D.    Award damages, including statutory damages where applicable, to Plaintiffs and

21    Class Members in an amount to be determined at trial;

22    E.    Award restitution against Defendants for all money to which Plaintiffs and the

23    Classes are entitled in equity;

24    F.    Restrain Defendants, their officers, agents, servants, employees, and attorneys,

25    and those in active concert or participation with them from continued access, collection, and

26    transmission of Plaintiffs' and Class Members' confidential user data via preliminary and

27    permanent injunction;

28    G.    Award Plaintiffs and the Classes:

(i)            Compensatory damages sustained by Plaintiffs and all others

1  similarly situated as a result of Defendants' unlawful acts and conduct;

2           (j)              Restitution, disgorgement and/or other equitable relief as the

3  Court deems proper;

4           (k)              Plaintiffs' reasonable litigation expenses and attorneys' fees;

5           (l)              Pre- and post-judgment interest, to the extent allowable;

6           (m)              Statutory damages, including punitive damages; and

7           (n)              Permanent injunction prohibiting Defendants from engaging

8  in the conduct and practices complained of herein.

9  For such other and further relief as this Court may deem just and proper.

10  Dated this 6th day of December, 2011.

11

12                                          By: _____

13

14                                          STRANGE & CARPENTER

15                                          Brain R. Strange (Cal. Bar. No. 103252)
                                            LACounsel@earthlink.net
                                            12100 Wilshire Boulevard, Suite 1900
16                                          Los Angeles, CA 90025
                                            Telephone: (310) 207-5055
17                                          Facsimile: (310) 826-3210

18                                          Law Office of Joseph H. Malley
                                            Joseph H. Malley (not admitted)
19                                          malleylaw@gmail.com
                                            1045 North Zang Blvd
20                                          Dallas, TX 75208
                                            Telephone: (214) 943-6100
21

22                                          *Counsel for Plaintiffs and the Proposed Class*

23

24

25

26

27

28

## JURY TRIAL DEMAND

The Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated this 6th day of December, 2011.

By: _____

**STRANGE & CARPENTER**

Brain R. Strange (Cal. Bar. No. 103252)
LACounsel@earthlink.net
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210

Law Office of Joseph H. Malley
Joseph H. Malley (not admitted)
malleylaw@gmail.com
1045 North Zang Blvd
Dallas, TX 75208
Telephone: (214) 943-6100

*Counsel for Plaintiffs and the Proposed Class*



# Exhibit 3:

## *Phong v. Carrier IQ, Inc., et al.*

ADRMOP, E-Filing

# U.S. District Court
## California Northern District (San Jose)
## CIVIL DOCKET FOR CASE #: 5:11−cv−06333−HRL

Phong v. Carrier IQ, Inc et al
Assigned to: Magistrate Judge Howard R. Lloyd
Cause: 28:1331 Fed. Question

Date Filed: 12/14/2011
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Dao Phong**
*an individual, on behalf of hserself and all others similarly situated*

represented by **Mark Punzalan**
Finkelstein, Thompson LLP
100 Bush Street
Suite 1450
San Francisco, CA 94104
415−398−8700
Fax: 415−398−8704
Email: mpunzalan@finkelsteinthompson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Danielle A Stoumbos**
Finkelstein Thompson, LLP
100 Bush Street
Suite 1450
San Francisco, CA 94104
415−398−8700
Fax: 415−398−8704
Email: dstoumbos@finkelsteinthompson.com
*ATTORNEY TO BE NOTICED*

**Rosemary M. Rivas**
Finkelstein Thompson LLP
100 Bush Street
Suite 1450
San Francisco, CA 94104
415−398−8700
Fax: 415−398−8704
Email: rrivas@finkelsteinthompson.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Carrier IQ, Inc**

**Defendant**

**HTC America, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/14/2011 | 1 | **Alleged Class Action Complaint** (Summons Issued; jury demand; against Carrier IQ, Inc, HTC America, Inc. ( Filing fee $ 350, receipt number 54611011012). Filed by Dao Phong. (Attachments: #1 Civil Cover Sheet) (bw, COURT STAFF) (Filed on 12/14/2011) (Entered: 12/15/2011) |
| 12/14/2011 | 2 | Summons Issued as to Carrier IQ, Inc. (bw, COURT STAFF) (Filed on 12/14/2011) (Entered: 12/15/2011) |

| 12/14/2011 | 3 | Summons Issued as to HTC America, Inc.. (bw, COURT STAFF) (Filed on 12/14/2011) (Entered: 12/15/2011) |
|---|---|---|
| 12/14/2011 | 4 | ADR SCHEDULING ORDER: Case Management Statement due by 3/6/2012. Case Management Conference set for 3/13/2012 01:30 PM in Courtroom 2, 5th Floor, San Jose. (bw, COURT STAFF) (Filed on 12/14/2011) (Entered: 12/15/2011) |
| 12/14/2011 | | CASE DESIGNATED for Electronic Filing. (bw, COURT STAFF) (Filed on 12/14/2011) (Entered: 12/15/2011) |
| 12/19/2011 | 5 | Administrative Motion to Consider Whether Cases Should be Related (**Kenny et al. v. Carrier IQ, Inc., et al. Case No. CV−11−5774−EJD Steiner v. Carrier IQ, Inc., Case No. CV−11−5802−EJD Silvera et al. v. Carrier IQ, Inc. et al., Case No. CV−11−5821−EJD Thomas et al. v. Carrier IQ, Inc. et al., Case No. CV−11−5819 LHK Pipkin et al. v. Carrier IQ, Inc. et al., Case No. CV−11−5820 EJD Patrick et al. v. Carrier IQ, Inc. et al., Case No. CV−11−5842−EJD Padilla et al. v. Carrier IQ, Inc. et al., Case No. CV−11−5975−EJD, Olivares et al. v. Carrier IQ, Inc. et al., Case No. CV−11−6151 HRL Stoltenburg et al. v. Carrier IQ, Inc. et al., ase No. CV−11−6160−PSG Medine et al. v. Carrier IQ, Inc. et al., Case No. CV−11−6178−HSG Fischer et al. v. Carrier IQ, Inc. et al., Case No. CV−11−6199−HRL Castro v. Carrier IQ, Inc. et al., Case No. CV−11−6201−PSG Gonzalez v. Carrier IQ, Inc. et al., Case No. CV−11−6202−HRL House v. Carrier IQ, Inc. et al., Case No. CV−11−6200−LHK Lavertue v. Carrier IQ, Inc. et al., Case No. CV−11−6196−MEJ Shumate v. Carrier IQ, Inc., Case No. CV−11−6281−HRL, Wadler v. Carrier IQ, Inc., Case No. CV−11−6278−PSG, Schwartz v. Carrier IQ, Inc., Case No. CV−11−6280−HRL, Massey v. Carrier IQ, Inc. Case No. CV−11−6279−HRL**) filed by Dao Phong. (Attachments: #_1 Declaration, #_2 Exhibit, #_3 Exhibit, #_4 Exhibit, #_5 Exhibit, #_6 Exhibit, #_7 Exhibit, #_8 Exhibit, #_9 Exhibit, #_10 Exhibit, #_11 Exhibit, #_12 Exhibit, #_13 Exhibit, #_14 Exhibit, #_15 Exhibit, #_16 Exhibit, #_17 Exhibit, #_18 Exhibit, #_19 Exhibit, #_20 Exhibit, #_21 Exhibit, #_22 Certificate/Proof of Service) (Punzalan, Mark) (Filed on 12/19/2011) Modified on 12/20/2011 (bw, COURT STAFF). (Entered: 12/19/2011) |

Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
Mark Punzalan (State Bar No. 247599)
mpunzalan@finkelsteinthompson.com
Danielle A. Stoumbos (State Bar No. 264784)
dstoumbos@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Counsel for Plaintiff Dao Phong

FILED

2011 DEC 14  P 3: 24

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CAL. SAN JOSE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DAO PHONG, an individual, on behalf of herself
and all others similarly situated,

Plaintiff,

vs.

CARRIER IQ, INC.; and HTC AMERICA, INC.,

Defendants.

Case No. CV 11 06333   HRL

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Dao Phong ("Plaintiff"), individually and on behalf of all others similarly situated,
alleges as follows based on her counsel's investigation and her personal experience:

## INTRODUCTION

1.      Plaintiff brings this action for actual damages, equitable relief (including restitution,
injunctive relief, and disgorgement of profits), civil penalties, and all other available relief on behalf of
herself and all similarly-situated individuals and entities in the United States who, within four years of
the filing of this litigation, bought a phone manufactured by Defendant HTC America, Inc. ("HTC")
embedded with technology created and employed by Defendant Carrier IQ, Inc. ("Carrier IQ") (the
"Class").



2.     All of the claims asserted herein arise out of Carrier IQ and HTC's misconduct in connection with the Carrier IQ "rootkit" software application that is installed in more than 140 million mobile phones. Based on information and belief, Plaintiff and Class members were not informed of the presence of Carrier IQ software on their phones at the time of purchase.

3.     According to a recent analysis conducted by computer security researcher Trevor Eckhart, Carrier IQ software tracks and collects information related to every keystroke performed by the mobile phone user without disclosing this invasive technology to users. Carrier IQ software tracks and collects a wealth of private information these users perform on their phones such as when users turn their phones on and off, what phone numbers users dial, the contents of users' text messages, the websites users visit, the search terms users input into browsers, and the locations of users' phones. Based on information and belief, Carrier IQ then intentionally divulges information from mobile phone users to its clients, which include Handset Manufacturers such as HTC.

4.     As alleged herein, Carrier IQ's conduct violates the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* (the "Wiretap Act"); the Stored Communications Act of 1986 ("SCA"), 18 U.S.C. §§ 2701, *et seq.*; California's Computer Crime Law ("CCCL"), Cal. Penal Code § 502, *et seq.*; and California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*

## THE PARTIES

5.     Plaintiff Dao Phong is a citizen and resident of San Francisco, California. Plaintiff purchased an HTC Evo mobile phone manufactured by Defendant HTC and activated and maintained cellular service for this phone with Sprint. As a result of the misconduct alleged herein, Plaintiff has suffered injury in fact and has lost money or property.

6.     Defendant Carrier IQ is a Delaware corporation with its principal place of business located at 1200 Villa Street, Suite 200, Mountain View, California 94041. Based on information and belief, Carrier manufactures and supports a "rootkit" software application that is installed in mobile phones by manufacturers.

7.     Defendant HTC America, Inc. is a Washington corporation with its principal place of business located at 811 1st Ave., Suite 530, Seattle Washington 98104.

//

- 2 -

CLASS ACTION COMPLAINT

1

<u>**JURISDICTION**</u>

2    8.    Pursuant to 28 U.S.C. 1331, this Court has original jurisdiction over this lawsuit arising

3    under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, *et seq.* This Court also has

4    subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this

5    is a class action in which: (1) there are 100 or more members in the Plaintiff's proposed class; (2) at

6    least some members of the proposed class have a different citizenship from one or more Defendants; and

7    (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

8    9.    This Court also has personal jurisdiction because Defendants have purposefully availed

9    themselves of the privilege of conducting business activities by advertising, contracting, and conducting

10   services within the State of California and have generally maintained systematic and continuous

11   business contacts with the State of California. Defendant Carrier IQ is also headquartered in California.

12

<u>**VENUE AND INTRADISTRICT ASSIGNMENT**</u>

13   10.    Venue is proper in the Northern District of California and in the San Jose Division,

14   pursuant to 28 U.S.C. section 1391 subsections (b) and (c), and Civil L.R. 3-2 subsections (c) and (e). A

15   substantial part of the events giving rise to the claims at issue in this litigation occurred in this District

16   and Division because Defendants advertised, contracted, and conducted its services in this District and

17   Division. Additionally, Defendant Carrier IQ is present in this Judicial District and Division and

18   transacts business in this Judicial District and Division.

19

<u>**FACTUAL ALLEGATIONS**</u>

20   11.    Carrier IQ manufactures and supports a "rootkit" software application that is installed in

21   mobile phones by manufacturers such as HTC. According to Carrier IQ, its software application is

22   installed on over 140 million handsets and mobile phones.

23   12.    On its website, Carrier IQ markets itself as "the only company embedding diagnostic

24   software in millions of subscribers'. phones" and purports to track "Actionable Intelligence" on mobile

25   phones. The Company markets itself to wireless carriers and handset manufacturers as the only

26   company that "collects, correlates and aggregates data" in mobile phones "for near real-time system

27   monitoring and business intelligence." Carrier IQ also states that its software performs these functions

28   "with no visible impact to [] customers."

- 3 -

13.     A recent analysis performed by computer security researcher Trevor Eckhart reveals that Carrier IQ's software performs functions that are extremely intrusive to users' privacy. In a video posted on YouTube, Mr. Eckhart demonstrates that Carrier IQ software can log every keystroke that the user performs on her mobile phone.[1] The Eckhart video reveals that for the 140 million phones embedded with the Carrier IQ software, Carriers IQ can track and collect a wealth of information by tracking these keystrokes. For instance, Carrier IQ can collect information when users turn their phones on and off, the phone numbers they dial, the contents of their text messages, the websites they visit, the search terms they input into browsers, and their phones' locations. Carrier IQ can also collect these data even when such data are supposed to be transmitted securely, e.g., by HyperText Transfer Protocol over Secure Socket Layer ("https").[2] Moreover, Carrier IQ can collect data for the location of the users' phone even when the user has expressly denied location access to the phone's location.

14.     Based on information and belief, neither Carrier IQ or HTC disclose to mobile phone users that Carrier IQ software is embedded in their phone and that the software tracks and collects users' actions. Based on information and belief, Carrier IQ software does not make itself readily apparent to a user and does not show up in a phone's list of active processes. Even if a technologically-savvy user is able to find out that Carrier IQ is running, users are not given an option to shut down the software.

15.     Based on information and belief, once Carrier IQ collects these data from mobile phone users, it provides this information to its clients, which include Handset Manufacturers such as Defendant HTC. As the company states on its website, Carrier IQ "give[s] Wireless Carriers and Handset Manufacturers unprecedented insight into their customers' mobile experience." Carrier IQ further states that it provides "real-time data direct from [...] customers' handsets." Wireless carriers AT&T Inc., T-Mobile, and Sprint (Plaintiff's wireless carrier) have admitted that Carrier IQ is present on their phones.

16.     After news outlets reported on Eckhart's analysis of Carrier IQ, Carrier IQ issued a statement denying that its software tracked usage or recorded keystrokes. This statement, however, is

---

[1] The full video is available at http://www.youtube.com/user/TrevorEckhart#p/u/0/T17XQI_AYNo (last visited Dec. 1, 2011).

[2] http://en.wikipedia.org/wiki/HTTP_Secure

CLASS ACTION COMPLAINT

1  apparently not only contradicted by the Company's own website representations but by the company's
2  own patent application for its software, in which the company describes its technology as a "method for
3  collecting data at a server coupled to a communications network, comprising: transmitting to a device a
4  data collection profile... wherein the set of data relates to an end user's interaction with the device...
5  [and] wherein the interaction with the device comprises the end user's pressing of keys on the device."

6       17.    According to recent news reports, after Mr. Eckhart publicly expressed concerns over
7  Carrier IQ's capabilities, Carrier IQ sent a cease-and-desist letter threatening a lawsuit.  Carrier IQ
8  withdrew this threat and publicly apologized after a non-profit group intervened on Mr. Eckhart's
9  behalf.  Since news reports were released regarding Carrier IQ's tracking of users' mobile phones,
10  Senator Al Franken  (D-MN) also opened a probe into Carrier IQ.  Senator Franken described the
11  allegations surrounding Carrier IQ as "deeply troubling" and said that Congress should act "quickly" to
12  protect consumers' privacy.

13  **STATUTES OF LIMITATION**

14       18.    **Discovery Rule.**  The causes of action alleged herein accrued upon discovery of Carrier
15  IQ's wrongful conduct.  Because telephone users could not readily determine their phones contained
16  Carrier IQ software and Carrier took steps to actively conceal them, Plaintiff and members of the Class
17  did not discover and could not have discovered Carrier IQ's wrongful conduct through reasonable and
18  diligent investigation.  Moreover, reasonable and diligent investigation into Carrier IQ's wrongful
19  conduct did not and could not reveal a factual basis for a cause of action based on Carrier IQ's
20  nondisclosure or concealment of its actions.

21  **CLASS ACTION ALLEGATIONS**

22       19.    Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly
23  situated as members of a proposed plaintiff Class pursuant to Federal Rule of Civil Procedure 23.  This
24  action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance and
25  superiority requirements of those provisions.

26       20.    The Class is initially defined as:
27      *All persons and entities residing in the United States who purchased an HTC device embedded*
28      *with Carrier IQ software.*

21.     Excluded from the Class are (1) HTC and Carrier IQ, any entity in which HTC or Carrier IQ have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors, and (2) the judge to whom this case is assigned and any member of the judge's immediate family.

### Numerosity and Ascertainability

22.     On information and belief, the Class is comprised of millions of people, making joinder impractical.  As of December 2, 2011, Carrier IQ's website purports that Carrier IQ software is embedded in more than 141 million handsets.  Many of these handsets are persons who purchased an HTC device.

23.     The Class is composed of an easily ascertainable, self-identifying set of individuals and entities who bought an HTC phone embedded with Carrier IQ technology in the four years leading up to this litigation.  Discovery will be used to populate the list of members of the Class.

### Community of Interest

24.     There is a well-defined community of interest among the Class members, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

### Typicality

25.     The claims of the Representative Plaintiff are typical of the claims of the Class, in that the Representative Plaintiff, like all members of the Class, bought an HTC phone embedded with Carrier IQ software.  The factual bases of the misconduct alleged herein are common to all Class members and represent a common thread of fraudulent misconduct resulting in injury to all members of the Class.

### Predominance of Common Issues

26.     There are numerous questions of law and fact common to all Class members, and those questions predominate over any questions that may affect only individual Class members.

27.     The predominant questions include the following:

        a.      Whether Defendants conducted the common business practice of collecting, tracking, and sharing with third parties the private mobile phone actions performed by users;

-6-

b.  Whether Defendants failed to disclose to Plaintiff and the Class that its software collected, tracked, and shared with third parties their private mobile phone actions;

c.  Whether Defendants knew and/or were reckless in not knowing of the unlawful nature of their conduct;

d.  Whether Defendants had a duty to Plaintiff and the Class to disclose their wrongful conduct;

e.  Whether Defendants' conduct violated the The Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, the Stored Communications Act of 1986 ("SCA"), 18 U.S.C. § 2711(1), and California's Computer Crime Law, Cal. Penal Code § 502; and

f.  Whether Defendants' active concealment of and/or failure to disclose the true nature of its conduct was likely to mislead or deceive, and was therefore fraudulent, within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

### Adequacy

28.  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving privacy issues and the claims alleged herein.

29.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor her Counsel have interests adverse to those of the Class.

### Superiority

30.  Absent class treatment, Plaintiff and members of the Class will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.

31.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Without a class action, individual Class members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights. Because of the modest economic value of the individual Class members' claims, few if any could seek their rightful legal recourse in an individual action. Absent a class action, Class members would

CLASS ACTION COMPLAINT

1  continue to incur harm without remedy, while Defendants would continue to reap the benefits of its

2  misconduct.

3       32.    The consideration of common questions of fact and law will conserve judicial resources

4  and promote a fair and consistent resolution of these claims.

5  **FIRST CAUSE OF ACTION**

6  **(Violation of the Wiretap Act)**

7       33.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

8       34.    The Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* (the "Wiretap

9  Act") broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images,

10  sounds, data, or intelligence of any nature transmitted in whole or in party by a wire, radio,

11  electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…"

12  18 U.S.C. § 2510(12).

13       35.    Pursuant to the Wiretap Act, Defendants operate an "electronic communications service"

14  as defined in 18 U.S.C. § 2510(15).

15       36.    The Wiretap Act broadly defines the contents of a communication. Pursuant to the

16  Wiretap Act, "contents" of a communication, when used with respect to any wire, oral, or electronic

17  communications, include any information concerning the substance, purport, or meaning of that

18  communication. 18 U.S.C. § 2510(8). "Contents," when used with respect to any wire or oral

19  communication, includes any information concerning the identity of the parties to such communication

20  or the existence, substance, purport, or meaning of that communication.  The definition thus includes all

21  aspects of the communication itself. No aspect, including the identity of the parties, the substance of the

22  communication between them, or the fact of the communication itself, is excluded. The privacy of the

23  communication to be protected is intended to be comprehensive.

24       37.    The Wiretap Act prevents an electronic communications service operator from

25  intentionally divulging the contents of any communication while in transmission on that service to any

26  person or entity other than an addressee or intended recipient of such communication. 18 U.S.C. §

27  2511(3)(a).  Plaintiff and Class members are "person[s] whose … electronic communication[s] [are]

28  disclosed… or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520(a).

    When users perform such functions on their phone as turning their phones on and off, dialing phone

- 8 -

1  numbers, sending text messages, visiting websites, users are unknowingly sending electronic

2  communications to Defendants.  Users do not expect and do not consent to any disclosure of the

3  activities to their phone to Defendants or to any third parties to whom Defendants makes this

4  information available.

5      38.    Based on information and belief, Defendants intentionally divulge the electronic

6  communications of mobile phone users to third parties.  By divulging these communications and other

7  user information to third parties without user consent, Defendants intentionally violated 18 U.S.C. §

8  2511(3)(a).

9      39.    Each incident in which Defendants divulged the electronic communications of mobile

10  phone users is a separate and distinct violation of the ECPA. Plaintiff and members of the Class

11  therefore seek remedies as provided for by 18 U.S.C. § 2520, including such preliminary and other

12  equitable or declaratory relief as may be appropriate, damages consistent with subsection (c) of that

13  section to be proven at trial, punitive damages to be proven at trial, and attorneys' fees and other

14  litigation costs reasonably incurred.

15      40.    Plaintiff and the Class, pursuant to 18 U.S.C. § 2520(2), are entitled to preliminary,

16  equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 a day

17  for each day of violation, actual and punitive damages, reasonable attorneys' fees, and Defendants'

18  profits obtained from the violations described herein.

19                    **SECOND CAUSE OF ACTION**

20              **(Violations of the Stored Communications Act)**

21      41.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

22      42.    The Stored Communications Act of 1986 ("SCA") incorporates the Wiretap Act's

23  definition of an "electronic communication service." 18 U.S.C. § 2711(1). As set forth above,

24  Defendants are electronic communications service providers within the meaning of the ECPA and is

25  therefore also subject to the restrictions contained in the SCA governing electronic communications

26  service providers.  The SCA also incorporates the Wiretap Act's broad definition of "electronic

27  communication" and "electronic storage." 18 U.S.C. § 2711(1). Pursuant to the Wiretap Act and the

28  SCA, "electronic storage" means any "temporary storage of a wire or electronic communication

CLASS ACTION COMPLAINT

1  incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17)(A). This type of electronic

2  storage includes communications in intermediate electronic storage that have not yet been delivered to

3  their intended recipient.

4       43.    The SCA prohibits any electronic communications service provider from divulging to

5  any person or entity the contents of a communication while in electronic storage by that service. 18

6  U.S.C. § 2702(a)(1). Based on information and belief, Defendants provide this information to third

7  parties. When users perform functions on their phones such as making a phone call, sending a text

8  message, or browsing the internet, users do not expect, intend and consent for Carrier IQ to collect and

9  track this information or pass along the communications to a third party as a handset manufacturer.

10  Based on information and belief, Defendants provide users' information regarding electronic

11  communications to third parties in violation of 18 U.S.C. § 2702(a)(1). By disclosing these

12  communications, Defendants violated 18 U.S.C. § 2702(a)(1).

13       44.    The SCA definition of "electronic storage" also includes "storage of [a wire or electronic]

14  communication by an electronic communication service for purposes of backup protection of such

15  communication." 18 U.S.C. § 2510(17)(B). The information that Defendants collect from users via

16  electronic communications are electronically stored by Defendants for backup purposes.

17       45.    The SCA, at 18 U.S.C. § 2702(a)(2), provides that "a person or entity providing a remote

18  communication service to the public shall not knowingly divulge to any person or entity the contents of

19  any communication which is carrier or maintained on that service (A) on behalf of, and received by

20  means of electronic transmission…a subscriber or customer of such service; (B) solely for the purpose

21  of providing storage…to such subscriber or customer, if the provider is not authorized to access the

22  contents of any such communications for purposes of providing any services other than storage or

23  computer processing."

24       46.    Plaintiff and Class members are "person[s] aggrieved by [a] violation of [the SCA] in

25  which the conduct constituting the violation is engaged in with a knowing or intentional state or

26  mind…" within the meaning of 18 U.S.C. § 2707(a).

27  //

28  //

47.     Each incident in which Defendants divulged users' stored communications to a third party is a separate and distinct violation of the SCA, subject to the remedies provided under the SCA, and specifically pursuant to 18 U.S.C. § 2707(a).

48.     Plaintiff and the Class therefore seek remedies as provided for by 18 U.S.C. § 2707(b) and (c), including such preliminary and other equitable or declaratory relief as may be appropriate, damages consistent with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial, and attorneys' fees and other litigation costs reasonably incurred.

49.     Plaintiff and the Class, pursuant to 18 U.S.C. § 2707(c), are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of no less than $1,000 per violation, actual and punitive damages, reasonable attorneys' fees, and Defendants' profits obtained from the violations described herein.

## THIRD CAUSE OF ACTION

### Violation of California's Computer Crime Law ("CCCL"), Cal. Penal Code § 502

50.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

51.     Defendants knowingly accessed and without permission used any data, computer, computer system, or computer network in order to execute a scheme or artifice to deceive and/or to wrongfully control or obtain money, property, or data in violation of Cal. Penal Code § 502(c)(1).

52.     Defendants did so by accessing and sharing with wireless carriers and handset manufacturers the mobile phone actions of Plaintiff and Class members in order to deceive and/or to wrongfully profit by collecting, tracking and disclosing users' information.

53.     Defendants knowingly accessed and without permission took, copied, or made use of Plaintiff and Class members' information regarding actions performed on their mobile phones in violation of § 502(c)(2).

54.     Defendants knowingly and without permission used or caused to be used computer services by impermissibly accessing, collecting, and transmitting Plaintiffs' and Class members' personal information in violation of § 502(c)(3).

- 11 -

55.     Defendants knowingly and without permission provided or assisted in providing a means of accessing a computer, computer system, or computer network by creating a system that allowed third parties to impermissibly access, collect, and transmit Plaintiffs' and Class members' private mobile phone actions in violation of § 502(c)(6).

56.     Defendants knowingly and without permission accessed or caused to be accessed Plaintiff and Class members' computers and/or computer networks by impermissibly divulging Plaintiffs' and Class members' personal information to advertisers in violation of § 502(c)(7). Defendants knowingly and without permission introduced a computer contaminant, as defined in § 502(b)(10), by introducing computer instructions designed to record or transmit to third parties Plaintiff and the Class' private actions performed on their phones on Defendants' computer networks without the intent or permission of Plaintiff or the Class in violation of § 502(c)(8). These instructions usurped the normal operations of the relevant computers, which by normal operation would not transmit the private mobile phone information of Plaintiff and/or the Class members.

57.     As a direct and proximate result of Defendants' violation of § 502, Defendants caused loss to Plaintiff and the Class members in an amount to be proven at trial. Plaintiff and the Class are entitled to the recovery of attorneys' fees pursuant to § 502(e).

58.     Plaintiff and Class members have also suffered irreparable injury as a result of Defendants' unlawful conduct, including the collection and sharing of their personal mobile phone information. Additionally, because the stolen information cannot be returned, the harm from this breach is ongoing and compounding. Accordingly, Plaintiff and the Class have no adequate remedy at law, entitling them to injunctive relief.

## FOURTH CAUSE OF ACTION

### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.*

59.     Plaintiff incorporates the foregoing allegations as if fully set forth herein. California Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits acts of "unfair competition." The UCL defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Thus,

under the UCL, there are three categories of unfair competition: conduct that is unlawful, conduct that is unfair, and conduct that is fraudulent.

60.　Defendants violated the UCL by engaging in conduct that violated each of the three prongs of the statute.

61.　Defendants' practice of, among other things, collecting and tracking keystrokes by users and disclosing them to third parties is unlawful because it violates, among other things, the Wiretap Act, the SCA, and CCCL, as alleged above.

62.　Defendants engaged in unfair business practices by, among other things:

　　g.　Engaging in conduct that causes a substantial injury to consumers, specifically by disclosing their private mobile information to third parties. Defendants' practices are not outweighed by any countervailing benefits to consumers or to competition. Consumers could not have reasonably avoided this injury.

　　h.　Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and other members of the Class; and

　　i.　Engaging in conduct that undermines or violates the stated policies underlying the SCA, Wiretap Act, and CCCL.

63.　Defendants engaged in fraudulent business practices by concealing and/or failing to disclose the true nature and characteristics of its collection, tracking, and disclosure of private mobile phone information. Defendants had a duty to disclose such information by virtue of their exclusive knowledge, among other things.

64.　As a direct and proximate result of Defendants' violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, Plaintiff suffered injury in fact and lost money or property, in that she paid money to purchase her phone. Plaintiff and the Class members are entitled to monetary relief, including restitution of all amounts that Defendants billed and collected, as well as attorneys fees under Cal. Code of Civ. P. § 1021.5. Further, as a result of Defendants' violation of the UCL, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and the Class or to disgorge its ill-gotten profits pursuant to Cal. Bus. & Prof. Code § 17203.

- 13 -

CLASS ACTION COMPLAINT

65.   Plaintiff and the Class members are entitled to equitable relief, including declaratory relief and a permanent injunction enjoining Defendants from continuing their unlawful, unfair, and fraudulent billing practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief and judgment against Defendant as follows:

A.   Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as representative of the Class, and designating her counsel as counsel for the Class;

B.   Awarding Plaintiff and the Class compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

C.   Awarding Plaintiff and the Class statutory damages;

D.   Requiring Defendants to make restitution and/or disgorgement;

E.   Imposition of a constructive trust for the benefit of Plaintiff and the Class on all monies wrongfully taken or received by Defendants;

F.   Equitable and declaratory relief, and an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

G.   Awarding Plaintiff and the Class the costs of prosecuting this action, including expert witness fees;

H.   Awarding Plaintiff and the Class reasonable attorney's fees;

I.   Awarding pre-judgment and post-judgment interest; and

J.   Granting other relief as this Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims so triable.

DATED: December 14, 2011          **FINKELSTEIN THOMPSON LLP**

By: _____
        Mark Punzalan

- 14 -

CLASS ACTION COMPLAINT

1
2

Rosemary M. Rivas
Danielle A. Stoumbos
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Counsel for Plaintiff Dao Phong

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT



# Exhibit 4:

## *Siegel v. Carrier IQ, Inc., et al.*

MASON

# United States District Court
## Northern District of Illinois − CM/ECF LIVE, Ver 4.2 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:11−cv−08791

Siegel v. Carrier IQ, Inc. et al
Assigned to: Honorable Ronald A. Guzman
Cause: 28:1331 Federal Question

Date Filed: 12/12/2011
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Michael Siegel**
*inidividually and on behalf of all others similarly situated*

represented by **Larry D. Drury**
Larry D. Drury, Ltd.
100 N. LaSalle St.
Suite 1010
Chicago, IL 60602
(312) 346−7950
Email: ldrurylaw@aol.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Carrier IQ, Inc.**
*a California Corporation*

**Defendant**

**Sprint−Nextel Corporation**
*a Kansas Corporation*

**Defendant**

**Samsung Electronics America Inc**
*a New York Corporation*

**Defendant**

**HTC America, Inc.**
*a Texas Corporation*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/12/2011 | 1 | COMPLAINT filed by Michael Siegel; Jury Demand. Filing fee $ 350, receipt number 0752−6647654.(Drury, Larry) (Entered: 12/12/2011) |
| 12/12/2011 | 2 | CIVIL Cover Sheet (Drury, Larry) (Entered: 12/12/2011) |
| 12/12/2011 | 3 | ATTORNEY Appearance for Plaintiff Michael Siegel by Larry D. Drury (Drury, Larry) (Entered: 12/12/2011) |
| 12/12/2011 |   | CASE ASSIGNED to the Honorable Ronald A. Guzman. Designated as Magistrate Judge the Honorable Michael T. Mason. (ef, ) (Entered: 12/12/2011) |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SIEGEL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No.   11-cv-8791 |
| v. | ) ) | |
| CARRIER IQ, INC., a California Corporation, SPRINT-NEXTEL CORPORATION, a Kansas Corporation, SAMSUNG ELECTRONICS AMERICA, INC., a New York Corporation, and HTC AMERICA, INC., a Texas Corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | Jury Trial Demanded |

## CLASS ACTION COMPLAINT

NOW COMES PLAINTIFF, Michael Siegel, by and through his attorneys, Larry D. Drury, Ltd., and complains of the Defendants, Carrier IQ, Inc., Sprint-Nextel Corporation, Samsung Electronics America, Inc., and HTC America, Inc., as follows:

### Nature of the Action

1. This case arises from the Defendants' creation, use and implementation of software hidden in consumers' cellular devices that surreptitiously logs and transmits especially sensitive information from the device to the mobile phone carriers, without the knowledge or consent of the consumer and in violation of federal and state privacy laws.

### Jurisdiction & Venue

2. This Court has personal jurisdiction over all parties because all Defendants conduct business in this District, and the Plaintiff resides in this District. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under federal statutes, i.e., the Federal Wiretap Act, 18 U.S.C. §2511, the Stored Electronic Communications Act, 18 U.S.C.

§2701 and the Computer Fraud and Abuse Act, 18 U.S.C. §1020, and pursuant to 28 U.S.C.

§1332(d) because the amount in controversy exceeds $5,000,000.00.

    3.  Venue is proper in this District because all conduct business in this District, and the

claims from which this lawsuit arises occurred within this District.

## Parties

    4.  Plaintiff, Michael Siegel (hereinafter "Plaintiff"), is an individual who resides in the

County of Lake, State of Illinois.

    5.  Carrier IQ, Inc., (hereinafter "Carrier IQ"). is a California corporation with its principal

place of business in Mountain View, CA.

    6.  Sprint-Nextel Corporation (hereinafter "Sprint") is a Kansas Corporation with its

principal place of business in Overland Park, KS.

    7.  Samsung Electronics America, Inc., (hereinafter "Samsung"), is a New York Corporation

with its principal place of business in Ridgefield Park, NJ.

    8.  HTC America, Inc., (hereinafter "HTC"), is a Texas corporation with its principal place

of business in Bellevue, WA.

## Facts Common to All Counts

    9.  Carrier IQ developed, marketed, and sold 'rootkit[1]' software (hereinafter "Spy Software")

designed to collect and/or record data from consumers' mobile cellular devices.  Its software is

designed to provide wireless carriers and device makers with access to the mobile device while

actively hiding its presence from the device's user.

---

[1] Rootkit software is software that enables continued privileged access to a computer while actively hiding its presence from administrators by subverting standard operating system functionality or other applications.  Once a Rootkit is installed, it allows an attacker to mask the ongoing intrusion and maintain privileged access to the computer by circumventing normal authentication and authorization mechanisms.

10. Carrier IQ claims to be the market leader in "mobile service intelligence" rootkit software.

11. The Defendant carriers and device manufacturers, Sprint, Samsung and HTC, pre-install Carrier IQ's Spy Software on cellular mobile devices used by its consumers.  The Spy Software is a hard-to-detect and hard-to-remove application that conducts surreptitious and highly intrusive tracking of personal data including, but not limited to, a user's location, Web browsing history and habits, videos watched, text messages read, keys typed (known as 'keystroke logging'), and all other activities of the user.

12. The Defendants have designed and installed the Spy Software to run when the phone is switched on, and to continue to 'spy' on the user until the phone is switched off.

13. The United States Senate Committee on the Judiciary has labeled the Defendants' use of the Spy Software as "a potentially very serious matter" that "may violate federal privacy laws, including the Electronic Communications Privacy Act and the Computer Fraud and Abuse Act".

14. The Plaintiff is a customer of Sprint and a user of phones manufactured by HTC and Samsung which, on information and belief, include the Spy Software.

15. The Defendants undertook no steps to inform or otherwise notify the Plaintiff and Class that:

    a.    his HTC and Samsung phones had Carrier IQ's Spy Software pre-installed and operational;

    b.    his every movement was being collected, tracked, recorded, monitored and transmitted; and

     c.     his use of the HTC and Samsung phones, including Web history, private

               text messages, keys typed and videos watched, was being collected,

               tracked, recorded, monitored and transmitted.

16. The Plaintiff and Class did not consent to or otherwise authorize the Defendants to

engage in the aforesaid conduct, to pre-install and operate Spy Software on their mobile devices,

or to monitor, track, record and transmit their movements and private use data.

17. As a result of the Defendants' aforesaid conduct, the Plaintiff and Class have suffered

damages including, but not limited to, the cost of and service charges for the use and operation of

said phones.

### Facts Common to the Class

18. The Plaintiff brings these claims on behalf of himself and a class[2] of similarly situated

individuals who, from 2001 to the date of judgment in this case, had a wireless contract for

cellular service with Sprint, and who used at least one cell phone manufactured and/or

distributed by at least one of the Defendant manufacturers, HTC and/or Samsung, that contained

Carrier IQ's software.

19. The Class is comprised of thousands of class members, making the joinder of such cases

impracticable.

20. Disposition of the claims as a class action will provide substantial benefits to the parties,

the class, and the Court, including ensuring efficient and uniform proceedings.

---

[2] Excluded from the Class are the Defendants, any and all of the Defendants' agents, subsidiaries, parents, successors, predecessors, and/or any entity which the Defendants or any of its parents or subsidiaries have a controlling interest in and their current and former employees, officers, and directors, any Judge to whom this case is assigned and that Judge's immediate family, any and all persons who execute and file a timely request for exclusion, and the legal representatives, successors, or assigns of any such excluded person.

21. Certification of this case as a class action will reduce the possibility of repetitious litigation involving, potentially, thousands of class members.

22. The rights of each member of the Class were violated in a similar fashion based upon the Defendants' practice and policy of using pre-installed and activated Spy Software to surreptitiously and intrusively collect, track, record, monitor and transmit their consumers' personal data including, but not limited to, the user's location, Web browsing history and habits, videos watched, text messages read, keys typed, and all other activities of the user

23. Plaintiff is a member of the class he seeks to represent, and will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interest antagonistic to or that irreconcilably conflicts with those of any other members of the Class.

24. Plaintiff has retained counsel who are highly competent and experienced in the prosecution of class-action litigation.

25. A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiff's and the other Class members' claims.

26. Questions of law and fact common to the Class exist and predominate over any questions that may affect individual members, including but not limited to:

    a. Whether Sprint concealed from its consumers and/or notified its consumers of the presence of pre-installed Carrier IQ Spy Software on their mobile cellular devices;

    b. Whether HTC and Samsung concealed from its consumers and/or notified its consumers of the presence of the pre-installed Carrier IQ Spy Software on their mobile cellular devices;

c. Whether the Defendants collected, tracked, recorded, monitored and/or transmitted their consumers' data without their consumers' consent or knowledge;

d. Whether the Defendants' conduct violated the Federal Wiretap Act, 18 U.S.C. §2511;

e. Whether the Defendants' conduct violated the Stored Electronic Communications Act, 18 U.S.C. §2701;

f. Whether the Defendants' conduct violated the Computer Fraud & Abuse Act, 18 U.S.C. §1030.

g. Whether the Defendants' conduct rises to the level of an invasion of privacy and/or misappropriation of private information; and

h. Whether the Defendants committed a trespass to chattel by their aforesaid conduct.

## Count I

### Violation of the Federal Wiretap Act, 18 U.S.C. §2511

27. Plaintiff and the Class re-allege and incorporate by reference the allegations contained in ¶¶1-26 above, as if fully restated in this Count I.

28. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, prohibits the willful interception of any wire, oral, or electronic communication, and provides a private right of action to any person whose wire, oral or electronic communication is intercepted. 18 U.S.C. §2520(a).

29. Defendants installed Carrier IQ's Spy Software on Plaintiff's and the Class' mobile

cellular devices for purposes of intercepting records of their users' phone communications and

locations, and did so without the knowledge or consent of the Plaintiff and Class members.

30. The data that the Defendants intentionally intercepted are "communications" within the

meaning of the Wiretap Act.

31. The Defendants' placement of the Spy Software on users' phones, and the Defendants'

interception of the users' personal electronic communications, were done intentionally.

32. Plaintiffs are 'persons' whose electronic communications were intercepted within the

meaning of the Wiretap Act. 18 U.S.C. §2520.

33. Pursuant to the Wiretap Act, Plaintiff and the Class are entitled to preliminary, equitable

and declaratory relief, in addition to statutory damages of the greater of $10,000.00 or $100/day

for each day of the violation, plus actual and punitive damages, reasonable attorneys' fees, and

disgorgement of any profits earned by the Defendants as a result of the above described

violation.

## Count II

## <u>Violation of the Stored Electronic Communications Act, 18 U.S.C. §2701</u>

34. Plaintiff and the Class re-allege and incorporate by reference the allegations contained in

¶¶1-33 above, as if fully restated in this Count II.

35. The Stored Electronic Communications Act ("SECA") permits a cause of action to be

brought against a person who intentionally accesses without authorization a facility through

which an electronic communication is provided, or who intentionally exceeds an authorization to

access that facility, and thereby obtains, alters or prevents authorized access to a wire or

electronic communication while it is in store in such a system. 18 U.S.C. §2701.

36. The SECA defines "electronic storage" as "any temporary, immediate storage of a wire or electronic communication incidental to the electronic transmission thereof."

37. The Defendants intentionally placed software on users' phones that accessed their electronically stored communications without authorization, and in doing so violated the SECA.

38. The Plaintiff and Class members were harmed by the Defendants' violations, and are entitled to statutory, actual and compensatory damages, injunctive relief, punitive damages, and reasonable attorneys' fees.

### Count III
### Violation of The Computer Fraud and Abuse Act, 18 U.S.C. §1030

39. Plaintiff and the Class re-allege and incorporate by reference the allegations contained in ¶¶1-38 above, as if fully restated in this Count III.

40. Plaintiff's and the Class' cellular phones are "computers" within the meaning of the Computer Fraud & Abuse Act (CFAA), and are used for interstate commerce or communication.

41. The Defendants intentionally and knowingly accessed the Plaintiff's and Class' cellular phones without authorization or by exceeding authorized access to said phones, and in doing so obtained information from a protected "computer" within the meaning of the CFAA.

42. The Defendants' violated the privacy rights of the Plaintiff and the Class by their aforesaid conduct.

43. In committing the aforesaid acts, the Defendants violated the CFAA and caused Plaintiff and the Class to suffer irreparable injury. Unless retrained from doing so, the Defendants may continue to commit such acts.

44. Should the Court find that the Plaintiff's and Class' remedies at law are not adequate to compensate them for these wrongs, the Court may award injunctive relief as provided for by 18 U.S.C. §1030(g).

**Count IV**
**Invasion of Privacy and Misappropriation of Confidential Information**

45. Plaintiff re-alleges paragraphs 1 through 44 of this Complaint as if fully set forth herein in this Count IV.

46. Plaintiff and the Class have a legally protected privacy interest in their confidential and private communications and data, and have a reasonable expectation of privacy in such information. This right of privacy includes the right to not have their confidential and private communications and data collected, tracked, recorded, monitored and/or transmitted to some third-party or other unintended recipient.

47. As alleged herein, Defendants collected, tracked, recorded, monitored and/or transmitted confidential and private communications and data of the Plaintiff and the Class without their knowledge, authorization or consent. This unauthorized collecting, tracking, recording, monitoring and transmission of such private facts and information is one that is highly offensive or objectionable to a reasonable person of ordinary sensibilities. Moreover, the collecting, tracking, recording, monitoring and transmission of such private facts and information, as alleged herein, does not include information which is of a legitimate public concern.

48. As a result of the Defendants' unlawful conduct, as alleged herein, the privacy rights of Plaintiff and the Class have been violated, and Plaintiff and the Class have been harmed as a result thereof.

**Count V**
**Trespass To Chattel**

49. Plaintiff re-alleges paragraphs 1 through 48 of this Complaint as if fully set forth herein in this Count V.

50. The Defendants' placed its Spy Software onto the mobile cellular devices of the Plaintiff and Class for purposes of collecting, tracking, recording, monitoring and transmitting their private information as alleged above.

51. The Spy Software was pre-installed and made to be operational and functioning without any notice to the Plaintiff and Class, and without the Plaintiff's and Class' consent.

52. The Defendants' conduct constitutes a 'taking' of the Plaintiff's and Class' mobile cellular devices and/or of the Plaintiff's and Class' private and confidential information contained thereon.

**Prayer for Relief**

WHEREFORE, Plaintiff prays that this Court:

    a.  Certify this matter as a class action and appoint Plaintiff as Class Representative, and designate Plaintiff's counsel as class counsel;

    b.  Declare that the Defendants' conduct is in violation of the Federal Wiretap Act, 18 U.S.C. §2511;

    c.  Declare that the Defendants' conduct is in violation of the Stored Electronic Communications Act, 18 U.S.C. §2701;

    d.  Declare that the Defendants' conduct is in violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030;

    e.  Find that the Defendants invaded the Plaintiff's and Class' privacy and misappropriated their private information and data;

10

f.  Find that the Defendants committed a trespass to chattel;

g.  Require the Defendants to pay actual, compensatory, and punitive damages for

their conduct as alleged herein;

h.  Award reasonable attorneys' fees and costs; and

i.  Grant such other relief as this Court deems just and appropriate.

Plaintiff demands trial by jury on all counts.

Dated:  December 12, 2011                Michael Siegel, individually and on behalf of all
                                         others similarly situated,

                                         _____s/ Larry D. Drury_____
                                         Larry D. Drury
                                         Attorney for the Plaintiff and the Class

Larry D. Drury
James R. Rowe
Larry D. Drury, Ltd.
100 N. LaSalle St., Ste. 1010
Chicago, IL 60602
(312) 346-7950
0681024



# Exhibit 5:

## *Cerrone v. Carrier IQ, Inc., et al.*

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:11-cv-05994-RRM-JMA

Cerrone v. Carrier IQ, Inc. et al  
Assigned to: Judge Roslynn R. Mauskopf  
Referred to: Magistrate Judge Joan M. Azrack  
Cause: 28:1331 Fed. Question  
**Plaintiff**

Date Filed: 12/08/2011  
Jury Demand: Plaintiff  
Nature of Suit: 440 Civil Rights: Other  
Jurisdiction: Federal Question

**Kristina Cerrone**  
*individually and on behalf of all others*  
*similarly situated*

represented by **Michael M. Weinkowitz**  
Levin Fishbein Sedran &Berman  
510 Walnut Street  
Suite 500  
Philadelphia, PA 19106  
215−592−1500  
Fax: 215−592−4663  
Email: mweinkowitz@lfsblaw.com  
*LEAD ATTORNEY*  
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Carrier IQ, Inc.**

**Defendant**

**HTC, Inc.**

**Defendant**

**HTC America, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/08/2011 | 1 | COMPLAINT against All Defendants Disclosure Statement on Civil Cover Sheet completed −no,, filed by Kristina Cerrone. (Attachments: #1 Civil Cover Sheet) (Bowens, Priscilla) (Entered: 12/13/2011) |
| 12/08/2011 | | FILING FEE: $ 350, receipt number 4653037324 (Bowens, Priscilla) (Entered: 12/13/2011) |
| 12/08/2011 | | Summons Issued as to All Defendants. (Bowens, Priscilla) (Entered: 12/13/2011) |
| 12/16/2011 | | SCHEDULING ORDER: An Initial Conference will be held in Courtroom 6E, 225 Cadman Plaza East, before Magistrate Judge Azrack on Frebruary 21, 2012, at 1:00 PM. All counsel must be present and are advised to review Judge Azrack's revised Individual Rules, which are available on the District Court's web site, prior to the conference. ***Plaintiff's counsel is directed to confirm with defendant's counsel that all necessary participants are aware of this conference***. Any request for an adjournment must be made in the form of a letter motion filed on ECF at least forty−eight (48) hours before the scheduled conference and must indicate which parties consent to the adjournment. Ordered by Magistrate Judge Joan M. Azrack on 12/16/2011. (Beauchamp, Peter) (Entered: 12/16/2011) |

PRESS ●●Y

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

KRISTINA CERRONE, individually, and )
on behalf of all others similarly situated )      Case No.
                                  )
      **Plaintiff,**             )
                                    )      **JURY TRIAL DEMANDED**
**vs.**                                       )

CARRIER IQ, INC. , HTC, INC., and HTC )
AMERICA, INC.,                                                )
                                      )
      **Defendants.**             )

11 - 5994

M●●●RF. J.

AZRA●●, M.J.

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ DEC - 8 2011 ★
BROOKLYN OFFICE

## COMPLAINT

COMES NOW Plaintiff, individually, and on behalf of all others similarly situated, by and through their undersigned counsel, on information and belief, and for their Complaint against Defendants Carrier IQ, Inc. and HTC state as follows:

1.    Defendants have unlawfully intercepted private electronic communications emanating from private mobile phones, handsets and smart phones.  This practice violates Federal Law.

### PARTIES, JURISDICTION AND VENUE

2.    Kristina Cerrone is a natural person and citizen and resident of the State of New York.

3.    All references to "Plaintiff(s)" throughout this Complaint are made on behalf of the named Plaintiff(s) and the proposed plaintiff class(es), and vice versa.

4.     This Court has subject matter jurisdiction over this action and Defendants pursuant to 28 U.S.C. § 1331 because this action arises under federal statutes, namely the Federal Wiretap Act, 18 U.S.C. § 2511, *et seq.* (the "Wiretap Act").

5.     Diversity jurisdiction also arises under CAFA, 28 U.S.C. § 1332(d).

6.     The amount in controversy in this action, as defined by 28 U.S.C. § 1332(d)(6), exceeds $5,000,000 exclusive of costs and interest.

7.     Defendant, Carrier IQ, Inc. (hereinafter referred to as "CIQ") is a citizen of California as defined by 28 U.S.C. § 1332(c) with its principal place of business in California.

8.     Defendants HTC, Inc. and HTC America (collectively referred to as "HTC") are citizens of Washington, with their principle place of business in Bellevue, Washington.

9.     Defendants are residents of the Eastern District of New York as they have ongoing and systematic contacts with residents of the Eastern District of New York. Defendants have, at all material times, conducted business in the Eastern District of New York. Moreover, Defendants have sufficient minimum contacts with the State of New York such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

10.    When reference in this Complaint is made to any act or omission of Defendants, it should be deemed to mean that the officers, directors, agents, employees, or representatives of Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the

2

management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

## STATEMENT OF FACTS

11.    Defendant, CIQ is the leading provider of mobile services intelligence solutions to the wireless industry.

12.    Defendant, CIQ claims on their website: "As the only embedded analytics company to support millions of devices simultaneously, we give wireless carriers and handset manufacturers unprecedented insight into their customers' mobile experience."

13.    Defendant, CIQ uses software in mobile phones to measure performance and user experience with no visible notice or impact to the user.

14.    Defendant, CIQ's data processing center collects the data for near real-time monitoring and intelligence.

15.    Defendant, CIQ is the only company in the industry embedding diagnostic software in millions of mobile phones, having done so in over 130 million phones globally.

16.    Defendant CIQ states on their website "Identify exactly how your customers interact with services and which ones they use.  See which content they consume, EVEN OFFLINE" (caps added).

17.    They further state on their website that their software answers business critical questions including "How do users respond to mobile advertising."

18.    Their website further states that their software features include "View application and device feature usage, such as camera, music, messaging, browser and TV."

19.    Defendant CIQ further states that their services give "uniquely powerful insight into mobile service quality and USER BEHAVIOR" (caps added), allowing the customer to "identify new business opportunities."

20.    Defendant further states that their software "uses data directly from the mobile phone itself to give a precise view of how users interact with both their phones and the services delivered through them, EVEN IF THE PHONE IS NOT COMMUNICATING WITH THE NETWORK....Identify exactly how your customers interact with services and which ones they use.    SEE WHICH CONTENT THEY CONSUME, EVEN OFFLINE" (caps added).

21.    Privacy concerns surrounding Carrier IQ initially arose after Trevor Eckhart, a security researcher, posted a video which seemingly demonstrated Carrier IQ's keystroke logging, even offline.

22.    Carrier IQ's patent application #20110106942 contains claims regarding the collection of keystroke data, describing their product as a "method of collecting data...wherein the data relates to an end user's interaction with the device...wherein the interaction with the device comprises the end user's pressing of keys on the device."

23.    A CIQ representative has been quoted in response to the privacy concerns as follows:

Andrew Coward-Chief marketing officer

4

"We're as surprised as anybody to see all that information flowing. It raises a lot of questions for the industry-and not (only) for Carrier IQ." CARRIER IQ: WE'RE AS SURPRISED AS YOU: CNNMoney.com 12/02/11

"We do recognize the power and value of this data. We're very aware that this information is sensitive. It's a treasure trove....We're seeing URLS and we can capture that information." CARRIER IQ ADMITS HOLDING TREASURE TROVE OF CONSUMER DATA, BUT NOT KEYSTROKES: Wired.com 12/02/2011

In an interview with Wired.com Coward said "probably yes" when asked whether Carrier IQ could read mobile users' text messages. CRITICS LINE UP TO BASH MAKER OF SECRET PHONE-MONITORING SOFTWARE: Wired.com 12/01/11

24. Defendant, CIQ captures and records keystroke data entered on the mobile device and other data.

25. Defendant, HTC produces mobile phones and handsets, including "Android" smart phones.

26. The CIQ software is embedded in HTC Android phones.

27. The information collected by CIQ is transmitted to various service providers, including Sprint and AT&T.

28. Until August 2011, Plaintiff owned an HTC Android phone. Plaintiff used her phone to electronically send over her cellular phone network various types of private data. This data was not readily accessible to the general public. She did not know that Defendants were surreptitiously monitoring and collecting this data, nor did she give them permission to do so.

29.     Defendants intercepted, recorded and collected information concerning the

substance, purport, or meaning of the electronic communications transmitted without the

authorization of the parties to those communications.

30.     Until August 2011, Plaintiff used and maintained an HTC cellular phone.

31.     Plaintiff and Class Members, as defined below, were unaware of

Defendants' wrongful conduct, and unable to discover it until December 2011, as

Defendants conduct by nature was secret and concealed.

## CLASS ACTION ALLEGATIONS

32.     This action is brought as a class action by Plaintiff on behalf of herself and

on behalf of all those similarly situated pursuant to Rule 23(a) and 23(b)(1), (2), and (3)

of the Federal Rules of Civil Procedure. The proposed class is defined as follows:

> All United States residents who operate a cellular phone
> device manufactured by HTC and from which Carrier IQ, Inc.
> collected electronic communications (the "Class" or "Class
> Members").

> Specifically excluded from the class are: any Judge
> conducting proceedings in this action and their parents,
> spouses and children as well as any other member of their
> family residing in the judge's household; counsel of record in
> this action; the legal representatives, heirs, successors and
> assigns of any excluded person.

33.     The exact number of the members of the class (or sub-classes) is not

presently known, but is so numerous that joinder of individual members in this action is

impracticable. The exact number of the members of the class (or sub-classes) can only be

ascertained through discovery, because such information is in the exclusive control of

Defendants. However, based on the nature of the activities alleged herein, Plaintiff

6

believes that the members of the class (or sub-classes) number the millions and are geographically dispersed throughout the United States. The addresses of the members of the class (or sub-classes) are readily obtainable from the Defendants and their agents and on information and belief are maintained in the computer database of Defendants and are easily retrievable.

34.    Plaintiff will fairly and adequately protect the interests of the class (or sub-classes) and has retained counsel that are experienced and capable in class action litigation. Plaintiff understands and appreciates her duties to the class (or sub-classes) under Fed. R. Civ. P. 23 and are committed to vigorously protecting the rights of absent members of the class (or sub-classes).

35.    Plaintiff is asserting claims that are typical of the claims of each member of the class (or sub-classes) she seeks to represent, in that the claims of all members of the class (or sub-classes), including Plaintiff, depend upon a showing that the Defendants violated federal law. All claims alleged on behalf of the class (or sub-classes) flow from this conduct as well. Further, there is no conflict between Plaintiff and other members of the class (or sub-classes) with respect to this action.

36.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. Questions of law and fact arising out of Defendants' conduct are common to all members of the class (or sub-classes), and such common issues of law and act predominate over any questions affecting only individual members of the class (or sub-classes).

37.     Common issues of law and fact include, but are not limited to, the following:

      a.    Whether the data collected from Plaintiff's cellular phone devices are electronic communications protected by the Federal Wiretap Act;

      b.    Whether Defendants' interception of data collected from Plaintiff's devices was intentional within the meaning of the Federal Wiretap Act;

      c.    The proper measure of damages under the Federal Wiretap Act.

38.     The relief sought is common to the entirety of the class (or sub-classes).

39.     Defendants have acted on grounds generally applicable to the class (or sub-classes), thereby making final injunctive relief or corresponding injunctive relief appropriate with respect to the class (or sub-classes) as a whole.

40.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members would create a risk of adjudication with respect to individual members which would establish incompatible standards of conduct for the Defendants.

41.     This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class (or sub-classes) would create a risk of adjudications with respect to individual members of each class (or sub-classes) which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

42. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

(i) significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

(ii) the size of the individual damage claims of most members of the class (or sub-classes) is too small to make individual litigation an economically viable alternative, such that few members of the class (or sub-classes) have any interest in individually controlling the prosecution of a separate action;

(iii) without the representation provided by Plaintiff herein, few, if any, members of the class (or sub-classes) will receive legal representation or redress for their injuries;

(iv) class treatment is required for optimal deterrence;

(v) despite the relatively small size of the claims of many individual members of the class (or sub-classes), their aggregate volume coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with respective individual litigation;

(vi) no unusual difficulties are likely to be encountered in the management of this class action;

(vii) Plaintiff and members of the class (or sub-classes) have all suffered irreparable harm and damages as a result of Defendants' unlawful and wrongful conduct.

43. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of the individual members of the class (or sub-classes), and result in judicial consistency.

## COUNT I

44. Plaintiff incorporates the allegations contained in Paragraphs 1 through 41 as if fully set out herein.

45. The Omnibus Crime Control and Safe Streets Act of 1968, also known as the Federal Wiretap Act, 18 U.S.C. § 2511(1)(e) provides:

> [A]ny person who-- ... intentionally intercepts, endeavors to intercept, ... any wire, oral, or electronic communication; ... shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

46. At all times relevant hereto, Plaintiff and Class Members were persons entitled to the protection of 18 U.S.C. § 2511 as they were individuals who were party to electronic communications.

47. On information and belief, Defendants intercepted information concerning the substance, purport, or meaning of Plaintiff's electronic communications on more than one occasion.

48. The Federal Wiretap Act also provides that:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity ... which engaged in that violation such relief as may be appropriate.

> In an action under this section, appropriate relief includes -- ... (2) damages under subsection (c) and punitive damages in appropriate cases; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred ... [T]he court may assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B)

statutory damages of whichever is the greater of $100 a day
for each violation or $10,000.

18 U.S.C. § 2520

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment in their

favor and against Defendants as follows:

a.   Ordering that this action be maintained as a class action pursuant to
     Rule 23 of the Federal Rules of Civil Procedure; and

b.   Declaring that Defendants' collection of electronic communications
     violates 18 U.S.C. § 2511; and

c.   Awarding Plaintiff and Class Members statutory damages pursuant
     to 18 U.S.C. § 2520, including punitive damages, costs of suit, and
     attorneys' fees; and

d.   Injunctive and declaratory relief as deemed appropriate.

Respectfully submitted,

Date:  December 8, 2011

_____
Michael M. Weinkowitz

LEVIN, FISHBEIN, SEDRAN & BERMAN
Michael M. Weinkowitz
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215)592-1500
Facscimile: (215)592-4663
Email: cschaffer@lfsblaw.com
       mweikowitz@lfsblaw.com

RODDY KLEIN & RYAN
Gary Klein
Shennan Kavanagh
Kevin Costello
727 Atlantic Avenue

11

Boston, MA  02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:  (617) 357-5030
Email: klein@roddykleinryan.com
       kavanagh@roddykleinryan.com
       costello@roddykleinryan.com

HOLLAND, GROVES, SCHNELLER
& STOLZE, LLC
Eric D. Holland, #6207110
Steven J. Stolze, #6203254
Steven L. Groves, #6211737
300 N Tucker, Suite 801
St. Louis, Missouri 63101
Telephone: 314.241.8111
Facsimile: 314.241.5554
Email: eholland@allfela.com
       stevenstolze@sbcglobal.net
       sgroves@allfela.com

BOLEN, ROBINSON & ELLIS, LLP
Jon D. Robinson
Christopher M. Ellis
Shane M. Mendenhall
202 South Franklin Street, 2nd Floor
Decatur, Illinois 62523
Telephone: 217.429.4296
Facsimile: 217.329.0034
Email: jrobinson@brelaw.com
cellis@brelaw.com
smendenhall@brelaw.com



# Exhibit 6:

# *Accident Investigative Services, Inc. v. Carrier IQ, Inc., et al.*

SPECIAL

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:11−cv−07542−TJS

| | |
|---|---|
| ACCIDENT INVESTIGATIVE SERVICES, INC. v. CARRIER IQ, INC. et al<br>Assigned to: HONORABLE TIMOTHY J. SAVAGE<br>Cause: 18:2511 Wiretapping | Date Filed: 12/08/2011<br>Jury Demand: Plaintiff<br>Nature of Suit: 440 Civil Rights: Other<br>Jurisdiction: Federal Question |

**Plaintiff**

**ACCIDENT INVESTIGATIVE**
**SERVICES, INC.**
*INDIVIDUALLY, AND ON BEHALF OF*
*ALL OTHERS SIMILARLY SITUATED*

represented by **CHARLES E. SCHAFFER**
LEVIN, FISHBEIN, SEDRAN
&BERMAN
510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106
215−592−1500
Email: cschaffer@lfsblaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CARRIER IQ, INC.**

**Defendant**

**HTC, INC.**

**Defendant**

**HTC AMERICA, INC.**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/08/2011 | 1 | COMPLAINT against CARRIER IQ, INC., HTC AMERICA, INC., HTC, INC. ( Filing fee $ 350 receipt number 054341.), filed by ACCIDENT INVESTIGATIVE SERVICES, INC..(mima, ) (Entered: 12/08/2011) |
| 12/08/2011 | | Summons Issued as to CARRIER IQ, INC., HTC AMERICA, INC., HTC, INC.. Forwarded To: Counsel on December 8, 2011 (mima, ) (Entered: 12/08/2011) |
| 12/08/2011 | | DEMAND for Trial by Jury by ACCIDENT INVESTIGATIVE SERVICES, INC.. (mima, ) (Entered: 12/08/2011) |

JS 44 (Rev. 12/07)

Case 3:11-cv-03483-M Document 1-23 Filed 1 age of 153 PageID 174
Case M... N... -3483 Document 1-23 Filed 1age of 153 of

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ACCIDENT INVESTIGATIVE SERVICES, INC.,
individually, and on behalf of all others similarly situated

**DEFENDANTS**
CARRIER IQ, INC., HTC, INC., & HTC AMERICA, INC.

**(b)** County of Residence of First Listed Plaintiff  Montgomery County PA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Cook County, IL
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Charles E. Schaffer, Levin, Fishbein, Sedran & Berman, 510
Walnut Street, Suite 500, Philadelphia, PA 19106 (215) 592-1500

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box)

☐ 1  U.S. Government
Plaintiff

X 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item
III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | X 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

X 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated
or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. Section 2511, 28 U.S.C. Sections 1331 and 1332(d)

Brief description of cause:
Violation of Wiretap Act by illegally gathering electronic data

## VII. REQUESTED IN COMPLAINT:
X CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
IN excess of $5,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  X Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
12/08/2011

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**    **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Accident Investigative Services, Inc., individually, and on behalf of all others similarly situated | : | CIVIL ACTION |
| v. | : | |
| Carrier IQ, Inc., HTC, Inc. and HTC America, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( ✓ )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| | | |
|---|---|---|
| 12/08/2011 | Charles E. Schaffer | Plaintiff |
| Date | Attorney-at-law | Attorney for |
| (215) 592-1500 | (215) 592-4663 | CSchaffer@lfsblaw.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)         The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)         In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)         The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)         Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)         Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ___222 Easton Road, Glenside, PA 19038___

Address of Defendant: ___200 West Adams Street, Chicago, IL 60606___

Place of Accident, Incident or Transaction: ___Pennsylvania___

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

  (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes ☐  No X

Does this case involve multidistrict litigation possibilities?      Yes X  No ☐

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

      Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

      Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

      Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

      Yes ☐  No ☐

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. X All other Federal Question Cases
    (Please specify) - Violation of Wiretap Act by illegally gathering electronic data

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. X All other Diversity Cases
    (Please specify) - Violation of Wiretap Act by illegally gathering electronic data

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, ___Charles E. Schaffer___ counsel of record do hereby certify:

  X Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

  X Relief other than monetary damages is sought.

DATE: ___12/08/2011___      _____      ___76259___

                               Attorney-at-Law           Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___12/08/2011___      _____      ___76259___

                               Attorney-at-Law           Attorney I.D.#